Mark S. Lee (SBN: 94103)
mark.lee@rimonlaw.com
RIMON, P.C.
2029 Century Park East, Suite 400N
Los Angeles, CA   90067
Telephone/Facsimile: 310.561.5776

Kendra L. Orr (SBN: 256729)
Kendra.orr@rimonlaw.com
RIMON, P.C.
One Embarcadero Center, Suite 400
San Francisco, CA   94111
Telephone/Facsimile: 415.683.5472

Bert H. Deixler (SBN 70614)
bdeixler@kbkfirm.com
Sara E. Moses (SBN 291491)
smoses@kbkfirm.com
Patrick J. Somers (SBN 318766)
psomers@kbkfirm.com
KENDALL BRILL & KELLY LLP
10100 Santa Monica Boulevard, Suite 1725
Los Angeles, California   90067
Telephone: (310) 556-2700
Facsimile: (310) 556-2705

Attorneys for Plaintiff NIRVANA, L.L.C.

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NIRVANA, L.L.C., a Washington Limited Liability Company,<br><br>              Plaintiffs,<br><br>       v.<br><br>MARC JACOBS INTERNATIONAL L.L.C., a Delaware Limited Liability Company; SAKS INCORPORATED, d/b/a SAKS FIFTH AVENUE, a Tennessee Corporation; NEIMAN MARCUS GROUP LIMITED, L.L.C., a Delaware Limited Liability Company; and Does 1 through 10,<br><br>              Defendants. | Case No.: 2:18-cv-10743-JAK-SK<br><br>**NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT ON COPYRIGHT OWNERSHIP; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF.**<br><br>(Filed concurrently with Declarations of Krist Novoselic, Allen Draher, Lee Johnson, Robin Sloane Seibert and Mark S. Lee and Statement of Uncontroverted Facts and Conclusions of Law in Support Thereof)<br><br>Date:    March 22, 2021<br>Time:   8:30 a.m.<br>Courtroom: Courtroom 10B<br><br>The Honorable John A. Kronstadt |

1    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2    Please take notice that on March 22, 2021 at 8:30 a.m., in the courtroom of the

3    Honorable John A. Kronstadt, located at 350 W 1st Street, Los Angeles, CA

4    90012-4565, Courtroom 10B, Plaintiff Nirvana, L.L.C. ("Nirvana") will and hereby

5    does move for partial summary judgment that it owns a valid  copyright in the

6    "Happy Face" t-shirt design that is shown in Exhibit 1 to Nirvana's complaint as a

7    matter of law.[1]

8        Said motion is made pursuant to Federal Rule of Civil Procedure 56 on the

9    grounds that (1) said "Happy Face" t-shirt design was registered for copyright in the

10   name of Nirvana, Inc. within five years of publication, and is therefore presumed

11   valid; (2) Nirvana, Inc. assigned its copyright in the "Happy Face" t-shirt design to

12   Plaintiff Nirvana; (3) Defendants have produced no evidence sufficient to overcome

13   that presumption of validity or materially dispute Nirvana's copyright ownership of

14   the "Happy Face" t-shirt design; and (4) all potential copyright owners have

15   acknowledged, in writing, that Nirvana owns that copyright, conclusively

16   establishing Nirvana's copyright ownership as a matter of law.

17       The motion is based upon this notice of motion and motion, the concurrently

18   filed declarations of Krist Novoselic, Allen Draher, Lee Johnson, John Silva, Robin

19   Sloane Seibert, and Mark S. Lee in support thereof,  as well as the exhibits

20   submitted therewith, upon the records and pleadings submitted herein, of which the

21   Court is respectfully requested to take judicial notice, and upon such other and

22   further matters as may be presented at any hearing on this motion.  This motion is

23   made after the meeting of counsel that took place on December 6, 2019 pursuant to

24   Local Rule 7-3.

25

26   _____

27   [1] This action was previously stayed as to Defendant Neiman Marcus Group Limited
28   L.L.C, ("Neiman") when it filed for bankruptcy. (Dkt. No. 90.) Nirvana does not
     move for summary judgement against Neiman for that reason.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT

Respectfully submitted,

DATED: October 5, 2020

RIMON, P.C.
KENDALL BRILL & KELLY LLP

By: /s/ Mark S. Lee

Mark S. Lee (SBN: 94103)
mark.lee@rimonlaw.com
RIMON, P.C.
2029 Century Park East, Suite 400N
Los Angeles, CA 90067
Telephone/Facsimile: 310.375.3811

Kendra L. Orr (SBN: 256729)
Kendra.orr@rimonlaw.com
RIMON, P.C.
One Embarcadero Center, Suite 400
San Francisco, CA 94111
Telephone/Facs2imile: 415.683.5472

Bert H. Deixler (SBN 70614)
bdeixler@kbkfirm.com
Sara E. Moses (SBN 291491)
smoses@kbkfirm.com
Patrick J. Somers (SBN 318766)
psomers@kbkfirm.com
KENDALL BRILL & KELLY LLP
10100 Santa Monica Boulevard, Suite 1725
Los Angeles, California 90067
Telephone: (310) 556-2700
Facsimile: (310) 556-2705

Attorneys for *Plaintiff*
NIRVANA, L.L.C.

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ....................................................................................1

    A.    Nirvana Sues Defendants for Copyright Infringement and Other
        Wrongs. ..........................................................................................1

    B.    Defendants Dispute Nirvana's Copyright Ownership. .........................2

    C.    Background Concerning Nirvana's Copyright Ownership of the
        "Happy Face" T-shirt Design. ................................................................2

    D.    Nirvana's Chain of Title to the "Happy Face" Copyright
        Registration. ..........................................................................................4

    E.    Robert Fisher Recently Claims to Have Created the
        "Happy Face" T-shirt. ............................................................................4

II.   NIRVANA OWNS A VALID COPYRIGHT IN THE "HAPPY FACE" T-
    SHIRT DESIGN AS A MATTER OF LAW ....................................................5

    A.    The 1993 Copyright Registration is Entitled to a Presumption of
        Validity and Factual Accuracy, ............................................................5

    B.    All Evidence Confirms That Nirvana Presently Owns the
        Copyright at Issue. ................................................................................8

    C.    Fisher's Recent Claim Cannot Defeat Partial Summary Judgment. ......9

    D.    Defendants' Other Arguments About the Validity of the
        "Happy Face" Registration Cannot Defeat Summary Judgment. ........17

        (1)    Even if Incorrect, the 1993 Registration's Designation as a
              "Work Made for Hire" Cannot invalidate It. .............................18

        (2)    Alleged Varied Publication Dates Cannot Invalidate the
              Registration. ............................................................................20

        (3)    Defendants' "Undisclosed Derivative Work" Argument
              Lacks Merit ..............................................................................22

        (4)    Nirvana's "Happy Face" T-shirt Contains Protectable
              Expression. ..............................................................................22

III.  CONCLUSION ........................................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*,
944 F.2d 1446 (9th Cir. 1991) ............................................................................ 21

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ............................................................................................. 8

*Billy–Bob Teeth, Inc. v. Novelty, Inc.*,
329 F.3d 586 (7th Cir. 2003) ............................................................................. 16

*Classical Silk, Inc. v. Dolan Group, Inc.*,
2016 WL 7638113 (C.D. Cal. February 2, 2016) ...................................... 7, 8, 9

*Eden Toys, Inc. v. Floralee Undergarment Co., Inc.*,
697 2d 27, 36 (2d Cir.1982) .............................................................................. 16

*Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*,
122 F.3d 1211 (9th Cir.1997) .............................................................................. 6

*Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*,
925 F.3d 1140 (9th Cir. 2019) ........................................................................... 18

*Imperial Residential Design, Inc .v. Palms Dev. Grp., Inc.*,
70 F.3d 96 (11th Cir. 1995) ............................................................................... 16

*Jedson Eng'g, Inc. v. Spirit Const. Svs., Inc.*,
720 F. Supp. 2d 904 (S.D. Oh. 2010) ............................................................... 18

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*,
345 F.3d 1140 (9th Cir. 2003) ............................................................................. 6

*Magnuson v. Video Yesteryear*,
85 F. 3d 1424 (9th Cir. 1996) ........................................................................... 16

*Metcalf v. Bochco*,
294 F. 3d. 1069 (9th Cir. 2003) ........................................................................ 24

*Nirvana, L.L.C. v. Marc Jacobs, Inc.*,
2019 WL 7817082 (C.D. Cal. November 8, 2019) ........................................... 24

*Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers*,
   971 F.2d 347 (9th Cir.1987) ................................................................. 8

*Rottlund Co. v. Pinnacle Corp.*,
   2004 WL 1879983 (D. Minn. 2004) .............................................. 18, 19

*Siegel v. Warner Bros. Entm't Inc.*,
   542 F. Supp. 2d 1098 (C.D. Cal. 2008) ................................................ 8

*Society of Holy Transfiguration Monastery, Inc. v. Gregory*,
   689 F.3d 29 (1st Cir. 2012), cert. denied, 133 S. Ct. 1315, 185 L.
   Ed. 2d 195 (2013) ............................................................................. 21

*Sony Music Entertainment v. Cox Communications, Inc.*,
   426 F. Supp 3d 217 (E. D. Va. 2019) ........................................... 18, 19

*Three Boys Music Corp. v. Bolton*,
   212 F.3d. 477 (9th Cir. 2000) ............................................................ 24

*Ticketmaster L.L.C. v. Prestige Entertainment West, Inc.*,
   315 F.Supp.3d 1147 (C.D. Cal. 2018) .................................................. 6

*U.S. Auto Parts Network, Inc., v. Part Geek, LLC*,
   692 F.3d 1009 (9th Cir. 2012) ........................................................... 11

*United Fabrics Intern., Inc. v. C&J Wear, Inc.*,
   630 F.3d 1255 (9th Cir. 2011) ......................................................... 6, 7

*Williams v. Gaye*,
   895 F.3d 1106 (9th Cir. 2018) ............................................................ 5

**Statutes**

17 U.S.C. §101 ........................................................................................ 20

17 U.S.C. §201(b) ................................................................................... 11

17 U.S.C. § 302 ........................................................................................ 6

17 U.S.C. § 410(c) .................................................................................... 6

**Other Authorities**

37 C.F.R. §§ 202.1, 313.4(C) ................................................................. 20

Federal Rules of Evidence Rule 902 ........................................................ 8

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT

Federal Rules of Evidence Rule 807 ........................................................... 9

H.R. REP. NO. 1476, 94th Cong., 2d Sess. 156-57, reprinted in 1976
U.S.C.C.A.N. 5773-3 ........................................................................ 6

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

Defendants argue that Plaintiff Nirvana, L.L.C. ("Nirvana") does not own a valid copyright in a "Happy Face" t-shirt design to avoid liability for their copyright infringement of it.  However, notwithstanding a third party's recent claim to have created the "Smiley Face" design, Nirvana owns a valid copyright in that t-shirt as a matter of law because (i) its copyright registration is entitled to a presumption of validity, and (ii) no evidence materially disputes Nirvana's current ownership of that copyright.  Nirvana moves for partial summary judgment that it owns a valid copyright in the work Defendants are alleged to have infringed as a matter of law for the reasons described below.

**A.    Nirvana Sues Defendants for Copyright Infringement and Other Wrongs.**

Nirvana's complaint alleges that Defendants infringed Nirvana's copyright in a "Happy Face" t-shirt design by creating and selling a confusingly similar t-shirt and other merchandise:

 

(Complaint, Dkt. No. 1, ¶¶ 14, 20.)[2]

---

[2] Nirvana's complaint also alleges trademark infringement and unfair competition under the Lanham Act and state law based on Defendants' misconduct.  (, Dkt. No. 1, ¶¶ 28-32.)  Those claims are not a subject of this motion.

### B.     Defendants Dispute Nirvana's Copyright Ownership.

Defendants moved to dismiss Nirvana's complaint on the ground that, inter alia, Nirvana does not own a valid copyright in its "Happy Face" t-shirt design. (Dkt. No. 26.)  This Court denied that motion (Dkt. No. 60), but Defendants disputed Nirvana's ownership again in their Answer and Counterclaim.  (Dkt. No. 65 p.7-8, and Dkt. No. 66, ¶¶ 11-39.)[3]

### C.     Background Concerning Nirvana's Copyright Ownership of the "Happy Face" T-shirt Design.

In the late 1980s and early 1990s, Nirvana was a musical group that informally acted as a general partnership under Washington law. (Declaration of Krist Novoselic ["Novoselic Decl."] ¶¶ 2-3, 6, 10; Declaration of Allen Draher ["Draher Decl."] ¶ 3.) As they grew more successful. the members of that group formed a corporation called Nirvana, Inc. in January 1990 to handle the group's musical affairs, touring business and merchandising. (Novoselic Decl. ¶¶ 6-7; Draher Decl. ¶ 3; Ex. 1.)

Kurt Cobain created the visual art used on t-shirts and other merchandise the band sold at concerts during this time, including a t-shirt that used the name "Nirvana" in the "Onyx" typestyle on its top front, depicted a spiral circle meant to depict Dante's "Seven Circles of Hell" immediately below "Nirvana" on the front of the t-shirt, and on its back displayed profane and controversial language printed in the same "Onyx" typestyle. (Novoselic Decl. ¶¶4-5, Ex.3; Declaration of John Silva ["Silva Decl."], ¶¶ 4-6; Ex.3.)

In April 1991, Kurt Cobain, Krist Novoselic and Dave Grohl of Nirvana

---

[3] Defendants' counterclaim alleges that Nirvana's copyright is invalid because what it calls Nirvana's "X-Eye Smiley Face…[is] not subject to copyright protection," because Nirvana's "Happy Face" registration "covers multiple different works published separately at different times," and because the registration "does not disclose the registered work as derivative of an earlier, underlying work." (Dkt. No. 66, ¶¶ 23, 32-36.) All of those claims are meritless for the reasons described infra.

signed a recording agreement with the David Geffen Company, which is now owned by UMG Recordings, Inc. ("DGC" or "Geffen").  (Novoselic Decl. ¶ 11.) Beginning in July 1991, "Happy Face" t-shirts that were meant to be more acceptable to radio stations and retailers than the previous "Seven Circles of Hell" t-shirt were created and sent to radio stations to promote Nirvana's upcoming "Nevermind" album release. (Novoselic Decl.  ¶ 15; Silva Decl. ¶¶ 5-6; Ex. 3.)  The "Smiley Face" design from the "Happy Face" t-shirt was also used on a flyer for the "Smells Like Teen Spirit" video shoot, and on a private "Nevermind" release party invitation, in August and September 1991. (Novoselic Decl. ¶ 16-19; Lee Decl. ¶ 7, Ex.15 pp.105:24-106:8, 111:10-23 and Ex. 7, 12 and 13 thereto.)  In September 1991, Geffen released the group's single "Smells Like Teen Spirit" and the "Nevermind" album, and both were very successful.  (Novoselic Decl. ¶ 21; Draher Decl. ¶7.)

On or about October 2, 1991, Nirvana entered into a merchandising agreement with Giant Merchandising, Inc. ["Giant"], and Giant publicly released the "Happy Face" t-shirt on or about November 1991, along with the "Seven Circles of Hell" t-shirt and other merchandise. (Novoselic Decl. ¶ 21; Silva Decl. ¶ 9, Ex.3.) Nirvana, Inc. and its successor, Plaintiff Nirvana, L.L.C., have continuously exploited the "Smiley Face" design since that time, selling tens of millions of dollars of "Happy Face" t-shirts and other "Smiley Face" merchandise in recent years. (Novoselic Decl. ¶ 21; Silva Decl. ¶ 10.)

Nirvana, Inc. filed the copyright registration for the "Happy Face" t-shirt design in 1993, stating it was a work made for hire.  (Draher Decl. ¶ 12, Novoselic Decl. ¶¶ 23-25, Ex. 8; Complaint, Dkt. No. 1, Ex. 1.) Nirvana and Nirvana's record label Geffen always believed that Kurt Cobain created the "Smiley Face" design on the front of the Happy Face" t-shirt as he did the "Seven Circles of Hell" t-shirt, and that he did so on a "work made for hire" basis as an employee of Nirvana, Inc. (Novoselic Decl. ¶¶ 23-25; Draher Decl. ¶¶ 7, 11; Silva Decl. ¶¶ 7-8, 11, 13-16;

Declaration of Robin Sloane Seibert ["Seibert Decl."]¶¶ 5-7; Declaration of Mark S. Lee ["Lee Decl.'] ¶ 8, Ex. 16 pp. 50:23-51:20; 54:19-55:4, 55:13-24.)

### D.   Nirvana's Chain of Title to the "Happy Face" Copyright Registration.

With that background understanding, Plaintiff Nirvana, L.L.C.'s present ownership of the "Happy Face" copyright registration is evidenced by the following "chain of title" documents:

1) The "Happy Face" copyright registration filed by Nirvana, Inc. in 1993. (Draher Decl. ¶ 12 and Ex. 8; Dkt No. 1, Ex 1, pp 17-24);

2) The 1997 written assignment of the "Happy Face" copyright registration from Nirvana, Inc. to Nirvana, a general partnership consisting of the estate of Kurt Cobain and its heirs Courtney Love and Frances Bean Cobain, Krist Novoselic, and Dave Grohl. (Draher Decl. ¶ 14 and Ex. 9; Dkt. No. 1, pp. 19-22);

3) The 1997 written assignment of the "Happy Face" copyright registration from Nirvana, a general partnership, to Nirvana, L.L.C., the Plaintiff in this action (Draher Decl. ¶14 and Ex.10; Dkt. No. 1, pp.23-25;); and

4) Written Acknowledgments retroactively documenting the assignment of whatever interests various potential claimants may have had in the "Happy Face" t-shirt to Plaintiff Nirvana, L.L.C. Those potential claimants are Krist Novoselic, Dave Grohl, the statutory heirs of Kurt Cobain (namely, Courtney Love and Frances Bean Cobain), and Nirvana's record label Geffen. (Novoselic Dec, ¶ 29; Lee Decl. ¶ 5 and Exs. 11 and 12.)

### E.   Robert Fisher Recently Claims to Have Created the "Happy Face" T-shirt.

A third party named Robert Fisher ("Fisher") sent an email on November 27, 2019, which asserted to Nirvana time that he, rather than Kurt Cobain, created the "Happy Face" t-shirt and "Smiley Face" design the t-shirt in July 1991. (Lee Decl. ¶ 7, Ex.15 pp. 83:11-84:8 and Ex. 11 thereto; Ex. 17.)  Fisher had worked as an art

1  director at Geffen in 1991, and was assigned to work with Nirvana. (Seibert Decl. ¶
2  3.)  In that same email, Fisher called Marc Jacob's actions in this litigation "BS" and
3  said "if you need me for anything let me know." (Id.) However, he more recently
4  has claimed for the first time in 29 years that he, rather than Nirvana, owns the
5  copyright in the "Smiley Face" logo because he created it. (Motion to Intervene,
6  Dkt. No. 95.)

7       Nirvana believes Fisher's recent claim is inaccurate. (Silva Decl. ¶¶ 8, 11,
8  15.)   However, that claim does not affect Nirvana's ownership of the "Happy
9  Face" copyright even if it is credited, because the undisputed facts show that if he
10  created it, which Nirvana denies, he did so within the course and scope of his
11  employment at Geffen, and thus that the copyright in that design would have been
12  initially owned by Geffen on a work-made-for-hire basis. (Seibert Decl. ¶ 7.)
13  Geffen, in turn, has always acknowledged that Nirvana owns the copyright in the
14  "Happy Face" t-shirt and "Smiley Face" design, and upon learning of Defendants'
15  attempt to dispute Nirvana's ownership herein, acknowledged and conveyed its
16  rights in that design to Nirvana.  (Seibert Decl. ¶ 6-7; Lee Decl. ¶ 5 and Ex. 12.)

17       Thus, regardless whether the "Smiley Face" design portion of the "Happy
18  Face" t-shirt was created by Kurt Cobain or Robert Fisher, the undisputed facts
19  show that copyright in the "Happy Face" t-shirt and "Smiley Face" design within it
20  is presently owned by Nirvana,  as described  more fully below.

21 **II.   NIRVANA OWNS A VALID COPYRIGHT IN THE "HAPPY FACE"**
22 **T-SHIRT DESIGN AS A MATTER OF LAW**

23       Nirvana must prove that it owns a valid copyright in the infringed work to
24  prevail on its copyright infringement claim.  *Williams v. Gaye*, 895 F.3d 1106, 1119
25  (9th Cir. 2018).  Nirvana moves for partial summary judgment that it owns a valid
26  copyright in the "Happy Face" copyright registration as a matter of law.

27       **A.   The 1993 Copyright Registration is Entitled to a Presumption of**
28           **Validity and Factual Accuracy,**

Registration of a copyright within five years of the copyright's first

-5-

1  publication constitutes prima facie evidence that the copyright is valid copyright,
2  and "shift[s] to the defendant the burden to prove the invalidity of the ... copyright"
3  in an infringement proceeding 17 U.S.C. § 410(c); *Entm't Research Group, Inc. v.*
4  *Genesis Creative Group, Inc.,* 122 F.3d 1211, 1217 (9th Cir.1997). "To rebut the
5  presumption, an infringement defendant must … offer some evidence or proof to
6  dispute or deny the plaintiff's prima facie case of infringement." *Id.* Thus*,* Nirvana,
7  Inc's 1993 "Happy Face" copyright presumptively establishes that Nirvana, Inc. was
8  the original owner of a valid copyright in the "Happy Face" t-shirt design.

9          Sound policy supports these statutory presumptions. Copyright protection for
10  works such as the "Happy Face" registration here generally last 70 years or more
11  after the death of the author. 17 U.S.C. § 302. Such extended protection increases
12  the risk that relevant documents or witnesses (such as Kurt Cobain) will be lost
13  through the passage of time. "The plaintiff should not ordinarily be forced in the
14  first instance to prove all of the multitude of facts that underlie the validity of the
15  copyright unless the defendant, by effectively challenging them, shifts the burden of
16  doing so to the plaintiff." H.R. REP. NO. 1476, 94th Cong., 2d Sess. 156-57,
17  reprinted in 1976 U.S.C.C.A.N. 5773-3. Recognizing a presumption of validity is
18  the best way to arrange the equities when a party who has registered a work in
19  compliance with copyright law sues an infringer who has violated it.

20          The Ninth Circuit has long recognized that a copyright registration creates a
21  presumption of validity and factual accuracy for these reasons. See, e.g., *Lamps*
22  *Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1144 (9th Cir. 2003)
23  (copyright registration "constitutes prima facie evidence of the validity of the
24  copyright and the facts stated on the certificate, including the fact that the plaintiff
25  owns a copyright"); *Ticketmaster L.L.C. v. Prestige Entertainment West, Inc*., 315
26  F.Supp.3d 1147, 1161 (C.D. Cal. 2018) (same); see also, Ninth Circuit Model Jury
27  Instruction 17.5.  Those presumptions are rebuttable as mentioned above, but only
28  with evidence, as opposed to conjecture, speculation, or argument.

For example, *United Fabrics Intern., Inc. v. C&J Wear, Inc.,* 630 F.3d 1255, 1257-58 (9th Cir. 2011), reversed a summary judgment for defendant because plaintiff submitted a copyright registration and defendant produced no evidence to rebut it. The Ninth Circuit stated:

> "Macy's argues that United failed to establish the chain of title to the underlying artwork and therefore does not have a valid copyright. But Macy's skips a step; nowhere does it set forth facts that rebut the presumption of validity to which United's copyright is entitled, and Macy's does not even argue that it has rebutted that presumption… By repeatedly mentioning that [Plaintiff] United provided 'no evidence,' we are skeptical that [Defendant] Macy's understands that it bears the burden of providing 'some evidence' of invalidity.
>
> "[Plaintiff] United did not have to produce any evidence. As the copyright claimant, United is presumed to own a valid copyright, 17 U.S.C. § 410(c), and the facts stated therein, including the chain of title in the source artwork, are entitled to the presumption of truth."

*United Fabrics Intern., Inc. v. C&J Wear, Inc.,* supra, 630 F.3d at 1257-58.

Similarly, *Classical Silk, Inc. v. Dolan Group, Inc.,* 2016 WL 7638113 (C.D. Cal. February 2, 2016), granted summary judgment for plaintiff because of the presumption of validity inherent in two copyright registrations, one by a predecessor owner and one by the assignee plaintiff, despite a lack of contemporaneous documentation that the predecessor owner had effectively assigned the underlying copyright to the assignee plaintiff before suit was filed. The Court stated:

> "… Defendants argue that Plaintiff has not submitted enough evidence to prove that it purchased [copyright registration number] LMC278 from the original author, but they do not attack the validity

-7-

of the registration itself... These arguments fail to meet Defendants'
burden because they criticize only the authenticity of Plaintiff's
evidence rather than attempting to rebut the presumption imposed by
Plaintiff's copyright registration."

*Classical Silk, Inc. v. Dolan Group, Inc.,* supra, 2016 WL 7638113 at **7.**

Thus, Defendants can defeat summary judgment only by presenting
admissible evidence that raises a material issue of fact Nirvana's copyright
ownership.  It cannot do so as shown below.

**B.      All Evidence Confirms That Nirvana Presently Owns the
Copyright at Issue.**

Copyright law's statutory presumption aside, the "Happy Face" copyright
registration, assignment and acknowledgment documents and other evidence
support partial summary judgment for Nirvana.

On a motion for summary judgment, "the moving party bears the initial
burden to demonstrate the absence of a genuine issue of fact for trial. *Anderson v.
Liberty Lobby, Inc*., 477 U.S. 242, 248, 251–52, 256 (1986). However, once the
moving party has met its initial burden, the burden shifts to the non-moving party to
show a genuine issue for trial … *Anderson*, 477 U.S. at 248, 251–52; *Owens v.
Local No. 169, Assoc. of W. Pulp and Paper Workers*, 971 F.2d 347, 355 (9th
Cir.1987); *Classical Silk, Inc. v. Dolan Group, Inc.,* supra, 2016 WL 7638113 at *3**.**

Here, Nirvana has met its initial burden of producing evidence that it owns a
valid copyright in the "Happy Face" registration as described above. The "Happy
Face" registration, and subsequent copyright assignment documents filed with the
Copyright Office, are "self-authenticating under Rule 902 of the Federal Rules of
Evidence." *Classical Silk, Inc. v. Dolan Grp., Inc.,* 2016  WL 7638113, at *1, n.2;
*see also Siegel v. Warner Bros. Entm't Inc.*, 542 F. Supp. 2d 1098, 1121 (C.D. Cal.
2008) (admitting copyright registration certificates as self-authenticating on

summary judgment). "They are also admissible under the catch-all hearsay exception in Rule 807 of the Federal Rules of Evidence[.]" *Classical Silk, Inc. v. Dolan Grp., Inc.*, 2016 WL 7638113, at *1, n.2.

The good faith nature of that copyright registration is confirmed by Nirvana member Krist Novoselic, Nirvana corporate lawyer Allen Draher, and Nirvana manager and 30(b)(6) witness John Silva, all of whom were personally involved with Nirvana in different capacities in 1991 and 1993, and all of whom declare that the information in the 1993 Copyright Registration is true and correct to the best of their knowledge. (Novoselic Decl. ¶¶ 23-25; Draher Decl. ¶¶ 7, 11; Silva Decl. ¶¶ 7-8, 11, 13-16.) After his deposition, Draher even located additional evidence that Kurt Cobain created the "Smiley Face" design. (Draher Decl. ¶ 12, Ex. 13.)

Thus, Defendants can only defeat summary judgment by producing evidence sufficient to overcome the statutory presumption of validity and materially dispute Nirvana's ownership evidence. Fisher's recent ownership claim notwithstanding, Defendants have no such evidence here as shown below.

**C.    Fisher's Recent Claim Cannot Defeat Partial Summary Judgment.**

Fisher's recent claim to have created the "Smiley Face" Design on the front of the "Happy Face" t-shirt obviously disputes Nirvana's evidence that Kurt Cobain created the "Smiley Face" design.  However, that dispute does not create a material issue of fact to defeat summary judgment that Nirvana owns the "Happy Face" t-shirt copyright, because regardless whether Kurt Cobain or Robert Fisher created it, undisputed facts show that Nirvana now owns that copyright as a matter of law. This is so for three reasons.

First, Nirvana owns that copyright if Kurt Cobain created the "Smiley Face" design, because he did so on a "work made for hire" basis for predecessor Nirvana,

Inc.[4] Nirvana has substantial reason to believe that Kurt Cobain created the "Smiley Face" design, and all available evidence indicates that he did so within the course and scope of his employment as the President, Director, and "Employee No. 1" of Nirvana, Inc., to promote Nirvana and its release of the "Nevermind" album.[5]  In

---

[4]  Although they did not see Kurt Cobain create the "Smiley Face" design, bandmate Krist Novoselic, lawyer Allen Draher, and manager John Silva  all believed that Kurt Cobain did so because: 1) Kurt Cobain was a talented visual artist who in the late 1980s and early 1990s created visual art for the band "Nirvana" when needed; 2) Kurt Cobain created the artwork used on t-shirts Nirvana sold at its live shows before it entered into a merchandising agreement with Giant in October 1991; 3) the "Smiley Face" design on the "Happy Face" t-shirt is consistent with Kurt Cobain's artistic style; and 4) the "Smiley Face" on the "Happy Face" t-shirt is similar to the artwork on another t-shirt Kurt Cobain had previously created called the "Seven Circles of Hell" t-shirt. (Novoselic Decl. ¶¶ 5, 15, Ex. 3; Draher Decl. ¶ 10; Silva Decl. ¶¶ 5-6.) After his deposition, Draher even located an early Cobain drawing which he believes depicts an early version of the "Smiley Face" design. (Draher Decl. ¶ 10, Ex. 13.)  Finally, Robin Sloane Seibert, Fisher's supervisor in 1991 who was personally involved in supervising creation of the graphic art Geffen commissioned for Nirvana at the time, testified that "virtually all of the ideas for all of the graphics and videos Geffen used for Nirvana came from Kurt Cobain," and that "[g]iven Kurt's involvement… I always credited the 'Smiley Face' design to Kurt and the band, and believed Nirvana owned the rights in that design." (Seibert Decl. ¶6-7.) Another Geffen employee who worked with Fisher at Geffen and was involved in distributing the "Happy Face" t-shirts to radio stations in August 1991 was "confident" the "Happy Face" t-shirt and "Smiley Face" design "originated with Kurt Cobain." (Lee Decl. ¶ 8, Ex. 16 pp.50:23-51:20; 54:19-55:4, 55:13-24.)

[5]Kurt Cobain was the president and a director of Nirvana, Inc. when it was created in 1990. (Novoselic Decl. ¶ 8; Draher Decl. ¶ 3; Ex.1.) Nirvana, Inc.'s corporate business records state and business manager testifies that Kurt Cobain was Nirvana, Inc.'s "Employee No. 1," and that money was withheld from him for tax purposes. (Novoselic Decl. ¶¶ 7-8; Declaration of Lee Johnson ["Johnson Dec."] ¶¶ 2-3; Ex 2.)  And, the Nirvana "Smiley Face" design was first used, and thus apparently created, for the purpose of promoting Nirvana and its music in July or August of 1991, work obviously within the course and scope of Kurt Cobain's responsibilities

---

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT

that circumstance, "the employer… is considered the author and owns the copyright unless the parties have expressly agreed otherwise in a written instrument signed by them." 17 U.S.C. §201(b), as quoted in *U.S. Auto Parts Network, Inc., v. Part Geek, LLC*, 692 F.3d 1009, 1015 (9th Cir. 2012). Thus, under these facts Kurt Cobain created the "Smiley Face" design on a "work made for hire" basis, exactly as stated in the 1993 Copyright Registration.

Second, while Nirvana believes that Fisher's recent claim to have created the "Smiley Face" design is inaccurate for the reasons stated above, that factual dispute does not affect Nirvana's copyright ownership because the circumstances in which Fisher admits he allegedly created it establish that copyright in the "Smiley Face" design would have first been owned by Geffen rather than Fisher, on a "work made for hire" basis.

The Ninth Circuit  has "adopted…[a] three-prong test for determining when a work is made by an employee within the scope of employment: (a) it [that is, the work] is of the kind [the employee] is employed to perform; (b) it occurs substantially within the authorized time and space limits; and (c) it is actuated, at least in part, by a purpose to serve the employer." *U.S. Auto Parts Network, Inc., v. Part Geek, LLC*, supra, 692 F.3d at 1015 (internal quotations and parenthesis omitted). Fisher's own admissions establish that alleged creation of the "Smiley Face" qualifies is a "work made for hire" under these criteria:

(A) Fisher admits that creating graphic art to promote Geffen musical artists like Nirvana was the kind of work he was employed by Geffen to perform. Fisher admits that in 1991 he worked on the staff of Geffen as an "art director," and that his

---

as a member of Nirvana and president, director, and employee of Nirvana, Inc. (Novoselic Decl. ¶¶ 15-19, 25, Ex.4-5; Johnson Decl. ¶¶ 2-3; Lee Decl.¶  7 and Ex. 15 pp. 50:2-20,72:1-9,105:24-106:8, 111:10-23 and Exs. 7, 9, 11, and 12 thereto.)

duties in that position included creating album and other graphic art to promote Geffen musical artists. (Lee Decl. ¶ 7, Ex. 15 pp 152:13-20, 36:23-37:14.) Fisher admits that he did his work for Geffen in service of the artists signed to Geffen at the time. (Lee Decl. ¶ 7, Ex. 15 pp. 176-177.)  He admits that, although creating promotional t-shirts for Geffen artists like Nirvana was not a "main" focus of his work at Geffen, he did such work for Nirvana and other Geffen artists during the years he worked there, and that if management asked him to create graphic art for t-shirts, he would do so . (Lee Decl. ¶ 7, Ex. 15 pp. 75:6-8, 76:2-23, 164:16-20, 165:22-166:5; 205:3-207:1.)[6]  He admits that Geffen usually made t-shirts for promotional purposes, and that when he was told to make the "Happy Face" t-shirt, he understood it was to be used for promotional and retail purposes. (Lee Decl. ¶ 7, Ex. 15, pp. 71:7-9, 166:7-167:3, 167:23-168:13.) He admits working at, and for, Geffen when he created the "Happy Face" t-shirt, that it was "his job" to do that, that he was paid a salary by Geffen when he claims to have created the "Smiley Face" design, that Nirvana did not pay him for that work, and that he never asked to be paid by Nirvana for work he did for them. ((Lee Decl. ¶ 7, Ex. 15, pp. 61:25-62:2, 169:3-8, 176-177, 182:4-8, 193:21-195:19, 217:13-218:11.)

Fisher admits that upon its creation, the "Happy Face" t-shirt and "Smiley Face" design were, at Geffen's direction and expense, immediately used to promote Nirvana and the "Nevermind" album in August and September 1991. (Lee Decl. ¶ 7, Ex. 15 pp. 50:2-20, 72:1-9, 73:19-25, 105:24-106:8, 111:10-23, 153:23-154:9, 168:14-25 and Exs 7, 9, 11, 12  and 13 thereto.)  Fisher provided quotation sheets and other Geffen materials which showed that Geffen ordered and paid for 1400 "Happy Face" t-shirts to be produced to send to radio stations, that the "Smiley Face" design was used on a promotional flyer for the "Smells Like Teen Spirit"

---

[6] Fisher also testified that he did "side projects" when he worked at Geffen, but that none of them related to t-shirt designs. (Lee Decl. ¶ 7, Ex. 15, pp 75:11-22)

video shoot, and that it was used on a poster and invitations for the "Nevermind" launch party, all of which were paid for by Geffen, and on two of which he placed Geffen's "DGC" logo at Geffen's direction. (Lee Decl. ¶ 7, Ex. 15 pp. 52:24-53:14, 168:14-25, and Ex,7, 12, and 13 thereto.) Fisher's alleged creation of the "Smiley Face" design thus was the kind of work he was employed by Geffen to perform, and Geffen paid Fisher to perform it.[7]

(B) Fisher's alleged creation of the "Smiley Face" design and "Happy Face" t-shirt took place within "recognized time and space limits." Fisher doesn't remember where he was when he claims he created the "Smiley Face" drawing itself, but admits that he "probably" created the "Happy Face" t-shirt design it at his office at Geffen, and that he definitely used Geffen's equipment to complete the design by "blowing up" his initial "Smiley Face" drawing to create the "rough edges" used on the t-shirt and other promotional items. ((Lee Decl. ¶ 7, Ex. 15 pp. 48:4-8, 49:1-3, 49:11-17, 68:16-69:7, 172:22173:9, 174:1-4, 175:6-13.) This establishes that his claimed creation of the "Smiley Face" design took place "within authorized time and space limits."

(C) Fisher's alleged creation was actuated, at least in part, to further Geffen's purposes of promoting its release of the "Nevermind" album and the "Smells Like

---

[7] Although he didn't remember who asked him to create the "Happy Face" t-shirt, and only "guesses" and "assumes" Nirvana's management asked him to create it and knew he did so (Lee Decl. ¶ 7, Ex. 15 pp. 70:23-26, 72:22-74:18), Fisher apparently bases his new copyright ownership claim on his "guess" that Nirvana's manager John Silva, rather than someone from Geffen, told him to create the "Happy Face" t-shirt. (Lee Decl. ¶ 7, Ex. 15 pp. 70:23-26,159:10.) However, both Nirvana manager John Silva and Geffen employees Mark Kates and Robin Sloane agree that any such request by Silva would have been made at Geffen's direction, and thus that the "Happy Face" t-shirt design would have been a work commissioned by Geffen and owned by Geffen to the extent Fisher created it. (Silva Decl. ¶¶ 6, 13-15; Seibert Decl. ¶¶3-4, 6-7.)

Teen Spirit" single from that album. Fisher admits that (i) as soon as he claims to have created the "Smiley Face" design, Geffen directed him to have 1400 t-shirts made so they could be sent to radio stations around the country to promote the upcoming release of the "Nevermind" album; (i) Fisher used the "Smiley Face" design on a flyer he says he created to hand out to Nirvana fans coming out of a Nirvana concert, to invite them to come and be cast members in the "Smells Like Teen Spirit" video shoot, and (iii) Fisher used the "Smiley Face" design again on a poster he says he created that announced a private party to celebrate the release of Nirvana's "Nevermind" album. ((Lee Decl. ¶ 8, Ex. 15 pp. 52:24-53:14, 168:14-25 and Exs. 7, 9, 12, and 13 thereto.)  Fisher admits that Geffen paid for those promotional uses and that, at Geffen's direction, he put Geffen's "DGC" logo on the t-shirt and invitations.  (Lee Decl. ¶ 7, Ex. 15 pp. 50:2-20, 67:12-23, 68:20-23, 180:4-10 and Exs. 7, 9, and 13 thereto.)  Such promotional efforts obviously served Geffen's purpose of selling the Nirvana music Geffen was releasing in September 1991.

Other evidence and admissions further establish that Fisher's alleged creation of the "Smiley Face" design took place within the course and scope of his employment at Geffen.  Fisher admitted through is attorney that the "Smiley Face" design was a work made for hire, and that he would so testify if Nirvana paid him before he was deposed. (Moses Decl. ¶¶ 4-5 and Ex. 18.) His attorneys' initial claim that the Smiley Face was not a work for hire because it was created when Fisher was in art school before he began work at Geffen is patently meritless, if not ridiculous, because the "Smiley Face" design he drew in art school looks nothing like the "Smiley Face" design that is on the "Happy Face" t-shirt. (Cf. Lee Decl. ¶ 7, Ex. 15 pp. 54:22-55:24 and Exs. 8 and 9 thereto.)  Fisher testified in deposition that he didn't recall whether he signed a written employment agreement with Geffen when he began work there, but his supervisor at the time, Robin Sloane Seibert, declares that the "Smiley Face" design was commissioned by Geffen, which in 1991 had a

-14-

1   policy that all graphic art it commissioned was owned by Geffen, as stated in all of

2   its employment and independent contractor agreements.  (Seibert Decl. ¶¶ 4-7.)  A

3   Geffen executive responsible for promoting the "Nevermind" album release

4   identified the "Happy Face" t-shirt as "an item that was produced in conjunction

5   with the album I was promoting." (Lee Decl. ¶ 8, Ex. 16 pp. 50:23-51:20; 54:19-

6   55:4, 55:13-24.) The same executive testified that in 1991 he worked under an

7   employment agreement with Geffen in which the results and proceeds of everything

8   he did was owned by Geffen, and he understood all Geffen employees had

9   agreements with similar provisions. (Lee Decl. ¶ 8, Ex. 16 pp. 56:20-58:3, 59:20-

10   60:2 and Employment Agreement referenced therein.)

11       Fisher admitted that he knew Nirvana began exploiting the "Happy Face" t-

12   shirt with its "Smiley Face" design in 1991 or 1992, but that he never objected to

13   that use nor claimed to Nirvana that he owned a copyright interest in that design

14   until 2020, 29 years after Nirvana began exploiting it. (Lee Decl. ¶ 7, Ex. 15 pp.

15   183:13-184:11, 184:16-185:3, 218:12-16.) Fisher admitted that in the 12 years he

16   worked at Geffen, he never claimed to Kurt Cobain nor anyone else with Nirvana or

17   Geffen that he had any personal copyright interest in the "Smiley Face" design. (Lee

18   Decl. ¶ 7, Ex.15, pp 185:12-22.)  Fisher admitted that over that same 12-year period

19   he never claimed to own any copyright interest in any other graphic art he created

20   while he was at Geffen. (Lee Decl. ¶ 7, Ex.15, pp. 205:10-207:1, 207:4-8.) He

21   admitted he did not do that because everything else he did at Geffen was

22   commissioned by and paid for by Geffen. (Lee Decl. ¶ 7, Ex. 15, pp.  216:9-217:9.)

23       Third, any argument that someone other than Nirvana owns the "Smiley

24   Face" design because Robert Fisher claims to have created it has been mooted by

25   the Geffen Acknowledgement, which confirms Nirvana's ownership and

26   retroactively documents any previous oral copyright grants in that work.  Upon

27   learning of Defendants' attempts to dispute Nirvana's copyright ownership by

28   disputing that Kurt Cobain created the "Happy Face" t-shirt as a work made for hire,

-15-

1    or claiming the Robert Fisher created it, Nirvana's heirs and Geffen retroactively

2    documented and assigned those rights to Nirvana as shown below. (Novoselic Decl.

3    ¶ 29; Lee Decl. ¶ 5 and Exs. 11 and 12.)[8]  Such retroactive agreements preclude

4    third parties such as Defendants from disputing those rights as a matter of law.

5          Courts disfavor infringers who, like Defendants, try to avoid liability for their

6    infringement by disputing copyright title when all potential copyright owners agree

7    that plaintiff owns the copyright that defendants infringe.  Ninth Circuit and other

8    case law has long held that third party infringers lack standing to dispute copyright

9    ownership even if a grantee plaintiff did not document the copyright grant

10   establishing ownership until after suit is filed.  *Magnuson v. Video Yesteryear*, 85 F.

11   3d 1424, 1428-29 (9th Cir. 1996) ("a prior oral grant that is confirmed by a later

12   writing becomes valid as of the time of the oral grant, even if the writing is

13   subsequent to the initiation of litigation on the copyright infringement"); *Billy–Bob*

14   *Teeth, Inc. v. Novelty, Inc*., 329 F.3d 586, 592-93 (7th Cir. 2003) ("where there is no

15   dispute between the copyright owner and the transferee about the status of the

16   copyright, 'it would be unusual and unwarranted to permit a third-party infringer to

17   invoke section 204(a) to avoid suit for copyright infringement'"); *Imperial*

18   *Residential Design, Inc .v. Palms Dev. Grp., Inc*., 70 F.3d 96, 99 (11th Cir. 1995)("a

19   copyright owner's later execution of a writing which confirms an earlier oral

20   agreement validates the transfer ab initio"); *Eden Toys, Inc. v. Floralee*

21   *Undergarment Co., Inc.,* 697 2d 27, 36 (2d Cir.1982) ("[S]ince the purpose of the

22   provision [requiring a writing] is to protect copyright holders from persons

23

24

25   [8] Depending on which theoretical alternative one advocates, those claimants are
     Kurt Cobain's widow and daughter Courtney Love and Frances Bean Cobain;
26   surviving Nirvana members Krist Novoselic and Dave Grohl; Nirvana, L.L.C.; and
     Geffen, Robert Fisher's employer and the record label for Nirvana when the "Happy
27   Face" t-shirt design was created.

28

mistakenly or fraudulently claiming oral licenses, the 'note or memorandum of the transfer' need not be made at the time when the license is initiated; the requirement is satisfied by the copyright owner's later execution of a writing which confirms the agreement…")

Here, all potential owners of the "Happy Face" copyright registration agree in written Acknowledgments that "all written grants and assignments needed to perfect Nirvana, L.L.C.'s ownership of said rights have been made," and "to the extent necessary, are made by this acknowledgment and agreement…[,]" and state that they "retroactively grant[] and assign[] all right, title and interest in and to the 'Smiley Face' design" to Nirvana." (Novoselic Decl. ¶ 29, Lee Decl. ¶ 5 and Exs.11 and 12.)

Thus, even if Kurt Cobain did not create the "Smiley Face" design as a work made for hire; even if Robert Fisher of Geffen created the "Happy Face" t-shirt and "Smiley Face" design rather than Kurt Cobain; even if contemporaneous documentation "commissioning" the work made for hire by Cobain or Fisher or transferring it to Nirvana were required but not extant; and even if Nirvana, Inc. and Nirvana, L.L.C. relied on an earlier oral grant by Cobain's heirs or Geffen, the recently executed Acknowledgments moot those issues and conclusively establish Nirvana's copyright ownership of the "Happy Face" registration as a matter of law.

**D.    Defendants' Other Arguments About the Validity of the "Happy Face" Registration Cannot Defeat Summary Judgment.**

Defendants have also asserted that that Nirvana's "Happy Face"  copyright registration is invalid because  (i) its description of the "Happy Face" design as a "work made for hire" is inaccurate; (ii) there are "varied first publication dates" for elements within it; (iii) the "Happy Face" t-shirt is an unacknowledged derivative work, which it did not disclose in its registration; and (iv) the "Smiley Face" design within the "Happy Face" t-shirt lacks protectable expression and does not qualify for copyright protection. (Cf. Dkt. No. 1 ¶13-14, Dkt. No. 65 p.7-8, and Dkt. No. 66, ¶¶

-17-

11-39.)  Those arguments cannot defeat summary judgment as shown below.

### (1) Even if Incorrect, the 1993 Registration's Designation as a "Work Made for Hire" Cannot invalidate It.

The fact that the copyright registration at issue describes the "Happy Face" t-shirt as a "work made for hire" does not create an issue of fact on copyright validity for several reasons.

First, Nirvana's "work made for hire" designation would not invalidate the registration even if it were inaccurate, because there is no evidence that any such error was material or made with knowledge of its inaccuracy.   To invalidate a copyright registration, "the inaccurate information must have been included in the application ... with knowledge that it was inaccurate and [that] the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." *Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, 925 F.3d 1140, 1146 (9th Cir. 2019) (internal citation and quotation marks omitted). "Neither innocent misstatements, nor deliberate, but nonmaterial misstatements, will overcome the presumption of validity." *Jedson Eng'g, Inc. v. Spirit Const. Svs., Inc.*, 720 F. Supp. 2d 904, 914 (S.D. Oh. 2010).

Misstatements about "work made for hire" status have been held immaterial when ownership was established by assignment, because the misstatement did not affect ownership status. For example, *Sony Music Entertainment v. Cox Communications, Inc.*, 426 F. Supp 3d 217 (E. D. Va. 2019), granted plaintiff summary judgment on copyright ownership based on the statutory presumption of validity despite the erroneous designation of the works as "made for hire," because defendant did not meet its burden of proving that the alleged errors were material. Similarly, *Rottlund Co. v. Pinnacle Corp.,* 2004 WL 1879983, *13-*14 (D. Minn. 2004), rejected defendants' motion for summary judgment to invalidate copyright registrations based on inaccurate designation of the works at issue as " made for hire" because plaintiff acquired the copyright by assignmen and "thus. the allegedly

1   erroneous work for hire designation is immaterial and caused no prejudice to

2   Defendants"). Id.

3          Innocent misstatements about "work made for hire" status also have been held

4   insufficient to overcome the presumption of validity in a copyright registration or

5   preclude summary judgment on ownership, because the parties making them lacked

6   the knowledge of falsity or fraudulent intent needed to invalidate a copyright

7   registration.  *Sony Music Entertainment v. Cox Communications, Inc.*, supra

8   (misstatement about work made for hire status did not preclude summary judgment

9   because it was innocent); *Rottlund Co. v. Pinnacle Corp.,* 2004 WL 1879983, *13-

10  *14, supra (erroneous work made for hire designation immaterial because it was

11  made without fraudulent intent).

12         Here, the undisputed facts and applicable law conclusively negate any claim

13  that the "work made for hire" designation was either material or made with

14  knowledge of falsity. Kurt Cobain bandmate and friend Novoselic, Nirvan'a

15  attorney Draher, and Nirvana's manager John Silva, who were all personally

16  involved with Nirvana when the "Happy Face" t-shirt was created and the copyright

17  registration was filed with the Copyright Office in 1993, all believed that everything

18  stated in the copyright registration was accurate, and had and have no knowledge of

19  any inaccuracy in that registration (except for a knowledge of Fisher's recent

20  claims). (Novoselic Decl. ¶¶ 23-25; Draher Decl. ¶¶ 7, 11; Silva Decl. ¶¶ 7-8, 11,

21  13-16.)  Further, even if they and other Nirvana representatives were mistaken about

22  the "Happy Face" t-shirt's status as a work made for hire created by Kurt Cobain,

23  such a "mistake" was not material because, in that circumstance, Nirvana acquired

24  the copyright at issue by assignment from Geffen. (Ex. 12.) "Thus, the allegedly

25  erroneous work for hire designation is immaterial and caused no prejudice to

26  Defendants." *Rottlund Co. v. Pinnacle Corp., supra,* 2004 WL 1879983 at *14.

27

28

### (2) Alleged Varied Publication Dates Cannot Invalidate the Registration.

Defendants' previous argument that "varied first publication dates" of three "works" within the 1993 "Happy Face" Registration invalidate it (Dkt Nos. 65,66) lacks merit for a least four reasons.[9]

First, the "publication" dates are not "varied" because the "Happy Face" t-shirt was first published on or about November 1, 1991 as stated in the copyright registration, when Giant Merchandising began selling the T-shirt to the public for the first time. The factual predicate for Defendants' argument therefore collapses.

Second, Defendants' claims to earlier publication lack merit. "'Publication' is the distribution of copies or phonorecords of a work *to the public* by sale or other transfer of ownership, or by rental, lease, or lending…" 17 U.S.C. §101 (definition of "publication;" emphasis added). Here, the "Happy Face" t-shirt's distribution to radio stations to promote "Nevermind," the "Smiley Face" design's inclusion on flyers to potential video shoot cast members, and on an invitation to a private "Nevermind" release party, were all one-time releases to specific groups for limited purposes. (Novoselic Decl. ¶ 15-19; Lee Decl. ¶ 7, Ex.15 pp.105:24-106:8, 111:10-

---

[9] The three alleged "works" are (i) the name "Nirvana" on the top front of the t-shirt; (ii) the "Smiley Face" design immediately below "Nirvana" on the front of the t-shirt; and (iii) the text on the back of the t-shirt. Because the band name "Nirvana" that appears on the "Happy Face" t-shirt was used before the t-shirt was published, Defendants have argued that it is a work with an earlier publication date than the t-shirt. (See Dkt. No. 26.)  However, claiming that "Nirvana" is a "work" is nonsensical, because the single word and band name "Nirvana" is not copyrightable as a matter of law. See 37 C.F.R. §§ 202.1, 313.4(C) (words, short phrases and band names not copyrightable). Nirvana therefore could not have been "published" as a copyrightable "work," as even Defendants admit elsewhere. See Dkt. No. 66, ¶16-18 (Defendants admit that "Nirvana" not copyrightable).  Otherwise, literally every literary work would have "varied publication dates" that would invalidate its copyright registration, because every word in every literary work has been "published" before in previous literary works.

23 and Ex. 7, 12 and 13 thereto.)  There was no *general* release *to the public* through those efforts, and thus no "publication" at that time under the copyright statute. Since the "Smiley Face" design was unpublished before the "Happy Face" t-shirt was first published when it was distributed to the public in November 1991, there are no "varied publication dates," and the publication date in Nirvana's 1993 copyright registration is accurate.

Third, even if the pre-November 1991 uses were somehow considered "publication" directly contrary to the copyright statute, any such earlier publication would at most be a non-divestive "limited publication," because the "Happy Face" t-shirt and the "Smiley Face" design from that t-shirt were displayed and distributed for limited times and purposes to select groups of people, i.e., radio station owners, potential video shoot cast members, and private party attendees.  "[A] publication is 'limited' ... when tangible copies of the work are distributed both (1) to a 'definitely selected group,' and (2) for a limited purpose, without the right of further reproduction, distribution or sale.").  *Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1452 (9th Cir. 1991); see also, *Society of Holy Transfiguration Monastery, Inc. v. Gregory,* 689 F.3d 29 (1st Cir. 2012), cert. denied, 133 S. Ct. 1315, 185 L. Ed. 2d 195 (2013) ("limited publication" occurs when tangible copies of the work are distributed to a limited class of persons for a limited purpose.)

Fourth, Defendants' argument misunderstands how copyright law applies to the registered t-shirt. Of the three pre-publication uses, the distribution of "Happy Face" t-shirts to around 1400 radio stations comes the closest to qualifying as "publication"  because it involve the "widest," though still limited, distribution of the three pre-publication uses.  Even this first so-called "publication" of the "Happy Face" t-shirt involved a "publication" of the complete work, thus making

Defendants' "varying publication dates" argument factually impossible.[10]  Since there are no "varied publication dates" under even this scenario, Defendants' argument is moot.

### (3)   Defendants' "Undisclosed Derivative Work" Argument Lacks Merit

Defendants' counterclaim inaccurately asserts that Nirvana alleges that the "Happy Face" t-shirt is a derivative work, and that Nirvana's failure to disclose that derivative status in its "Happy Face" copyright registration invalidates it. (see Dkt. No. 66, ¶¶ 33-34.) That argument lacks merit for the simple reason that Nirvana has not made such an allegation.

Instead, Nirvana argued in the alternative in its opposition to Defendants' unsuccessful motion to dismiss that its "Happy Face" t-shirt would have qualified for copyright protection as a derivative work if there had been "varied publication dates" for the different elements of it as Defendants had argued there were in their motion to dismiss. (Dkt. No. 32 pp. 6-10.)  Those arguments are correct, as Defendants' motion to dismiss misapplied the "varied publication dates" case law it cited. However, as the evidence establishes there are no "varied publication dates" as described above, that argument is moot.

### (4)   Nirvana's "Happy Face" T-shirt Contains Protectable Expression.

Defendants' argument that the copyright in Nirvana's "Happy Face" t-shirt design is invalid because it contains no protectable expression (Dkt. No. 66, ¶35) lacks merit because that design contains protectable expression as a matter of law, for several reasons.

First, Nirvana's "Smiley Face" design on the front of the "Happy Face" t-shirt contains protectable expression. While a relatively simple line drawing, there are

---

innumerable ways the idea of a "Smiley Face" could be drawn, and this Court can take judicial notice of the fact that most "Smiley Face" images look very different from Nirvana's. The Nirvana "Smiley Face" design reflects original expression, as comparisons of the Nirvana "Smiley Face" with other common "Smiley Face" images taken from Wikipedia demonstrates:

**Nirvana's Image**              **Wikipedia Images**

                      

(Complaint ¶14)                   ([https://en.wikipedia.org/wiki/Smiley](https://en.wikipedia.org/wiki/Smiley))

(Lee Decl. ¶ 10.)

As can be seen above, the Nirvana "Smiley Face" image includes original expression in the slightly asymmetrical "circle" shape of the face; the large and relatively wide-set placement of the eyes; the distinctive "squiggle" of the mouth; and, the use, placement and shape of the tongue that sticks out from the right side of the mouth.  These original elements alone make the "Happy Face" t-shirt registration valid, as they demonstrate that the registration protects original expression.

Second, the "Happy Face" t-shirt combines those original elements with original text on the back of the t-shirt, as well as  other individually unprotectable elements in the t-shirt, such as the yellow lines of the figure drawn on a black background, the use and typestyle of the text "Nirvana" above the "Smiley Face" image on the Nirvana t-shirt, and the text on the back of the "Happy Face" t-shirt. The original combination of these individually protectable elements with other, individually unprotectable elements of color and line further demonstrate that the

1  "Happy Face" copyright registration contains protectable expression and is valid.

2  See *Metcalf v. Bochco*, 294 F. 3d. 1069, 1074 (9th Cir. 2003) (original combination

3  of individually protectable elements protectable by copyright law); *Three Boys*

4  *Music Corp. v. Bolton*, 212 F.3d. 477, 285 (9th Cir. 2000) (copying of original

5  combination of individually unprotectable elements supported copyright

6  infringement verdict).

7        Third, this Court already ruled that the "Happy Face" t-shirt possesses the

8  protectable expression of a valid copyrighted work when it denied Defendants'

9  motion to dismiss on this ground, noting that both elements in the Nirvana "Smiley

10  Face" design alone and their combination in an original way with the other

11  individually unprotectable elements described above supported the validity of

12  Nirvana's copyright registration.  See *Nirvana, L.L.C. v. Marc Jacobs, Inc.*, 2019

13  WL 7817082, *12 (C.D. Cal. November 8, 2019); Court's Order denying Motion to

14  Dismiss, Dkt. No. 60.)

15        Summary judgment should be entered for Nirvana on this issue in these

16  circumstances.

17  **III.   CONCLUSION**

18        Nirvana's motion for partial summary judgment that it owns a valid copyright

19  in the "Happy Face" copyright registration should be granted for all the reasons

20  described above.

21

22

23

24

25

26

27

28

1

2   DATED: October 5, 2020                Respectfully submitted,

3                                         RIMON, P.C.
4                                         KENDALL BRILL & KELLY LLP

5

6                                         By: /s/ Mark S. Lee
7                                              Mark S. Lee (SBN: 94103)
                                               mark.lee@rimonlaw.com
8                                              RIMON, P.C.
9                                              2029 Century Park East, Suite 400N
                                               Los Angeles, CA   90067
10                                             Telephone/Facsimile: 310.375.3811

11                                             Bert H. Deixler (SBN 70614)
12                                             bdeixler@kbkfirm.com
                                               Sara E. Moses (SBN 291491)
13                                             smoses@kbkfirm.com
14                                             Patrick J. Somers (SBN 318766)
                                               psomers@kbkfirm.com
15                                             KENDALL BRILL & KELLY LLP
16                                             10100 Santa Monica Boulevard, Suite 1725
                                               Los Angeles, California   90067
17                                             Telephone: (310) 556-2700
18                                             Facsimile: (310) 556-2705

19                                             Attorneys for *Plaintiffs*
20                                             NIRVANA, L.L.C.

21

22

23

24

25

26

27

28