**KELLEY DRYE & WARREN LLP**
Andrew W. Homer (State Bar No. 259852)
ahomer@kelleydrye.com
Tahir L. Boykins (State Bar No. 323441)
tboykins@kelleydrye.com
1800 Century Park East, Suite 600
Los Angeles, California 90067
Telephone: (310) 712-6100
Facsimile: (310) 712-6199

**KELLEY DRYE & WARREN LLP**
Michael J. Zinna (*pro hac vice*)
mzinna@kelleydrye.com
Whitney M. Smith (*pro hac vice*)
wsmith@kelleydrye.com
Kerianne Losier (*pro hac vice*)
klosier@kelleydrye.com
Stephanie A. Grob (*pro hac vice*)
sgrob@kelleydrye.com
101 Park Avenue
New York, New York 10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7897

*Attorneys for Defendants and Counterclaim Plaintiffs*
*Marc Jacobs International, LLC,*
*Saks Incorporated, d/b/a Saks Fifth Avenue, and*
*Neiman Marcus Group Limited, LLC*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NIRVANA, L.L.C., | Case No.: 2:18-cv-10743-JAK-SK |
| Plaintiff, | |
| v. | **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| MARC JACOBS INTERNATIONAL L.L.C., et al., | |
| Defendants. | |
| MARC JACOBS INTERNATIONAL L.L.C., et al., | Honorable John A. Kronstadt |
| Counterclaim Plaintiffs, | |
| v. | Hearing Date: April 5, 2021 |
| NIRVANA, L.L.C., | Hearing Time: 8:30 a.m. |
| Counterclaim Defendant. | Courtroom: 10B |

4810-7493-9343v.8

1   TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2   Please take notice that on April 5, 2021 at 8:30 a.m., in the courtroom of the

3   Honorable John A. Kronstadt, located at 350 W 1st Street, Los Angeles, CA 90012,

4   Courtroom 10B, Defendants and Counterclaim Plaintiffs Marc Jacobs International,

5   LLC and Saks Incorporated, d/b/a Saks Fifth Avenue ("Saks") (together,

6   "Defendants" unless otherwise specifically designated)[1] will and hereby do move

7   for summary judgment in their favor on all claims of action in the Complaint and

8   also request summary judgment in their favor on their Counterclaim of copyright

9   invalidity, all pursuant to Federal Rule of Civil Procedure 56/

10  The motion is based upon this notice of motion and motion, the concurrently

11  filed declarations of Michael Zinna, as well as the exhibits submitted therewith, and

12  upon such other and further matters as may be presented at any hearing on this

13  motion. This motion is made pursuant to Local Rule 7-3. Counsel met and

14  conferred on October 28, 2020.

15

16

17

18

19

20

21

22

---

23  [1] On May 7, 2020, Neiman Marcus Group LTD LLC ("NMG") and its debtor
affiliates filed petitions for chapter 11 bankruptcy, which initiated the bankruptcy

24  cases captioned In re Neiman Marcus Group LTD LLC, et al., Case No. 20-32519
(DRJ) (Bankr. S.D. Tex.) Nirvana LLC was scheduled on the Reorganized Debtors'

25  Schedules as a contingent and unliquidated claim. Nirvana LLC did not file a proof
of claim. Article I.A.32 of the bankruptcy plan states that "[a]ny claim that has been

26  . . . listed in the Schedules as contingent, unliquidated, or disputed, and for which
no proof of claim is or has been timely filed . . . shall be expunged without further

27  action by the Debtors and without further notice to any party or action, approval, or
order."  Thus, Nirvana LLC's claims against NMG were expunged as of Sept. 25,

28  2020, and Nirvana LLC is barred from asserting its claim against those entities.

---

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON
COPYRIGHT VALIDITY

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED:  November 2, 2020

KELLEY DRYE & WARREN LLP
Michael J. Zinna (*pro hac vice*)
Whitney M. Smith (*pro hac vice*)
Kerianne Losier (*pro hac vice*)
Stephanie A. Grob (*pro hac vice*)
Andrew W. Homer
Tahir L. Boykins

By  */s/ Michael J. Zinna*
          Michael J. Zinna

*Attorneys for Defendants and Counterclaim Plaintiffs Marc Jacobs International, LLC; Saks Incorporated, d/b/a Saks Fifth Avenue; and Neiman Marcus Group Limited, LLC*

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON COPYRIGHT VALIDITY

# TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................... 1

II.   STATEMENT OF UNDISPUTED FACTS ............................................... 3

      A.    Procedural Background ....................................................................... 3

      B.    Factual Background ............................................................................. 3

III.  ARGUMENT ............................................................................................. 5

      A.    Summary Judgment Standard .............................................................. 5

      B.    The Court Should Dismiss Nirvana's Claims Predicated on the
            '166 Registration Because the '166 Registration is Invalid as a
            Matter of Law ....................................................................................... 5

            1.    The Author Listed on the '166 Registration is Inaccurate;
                  It Follows that the Work for Hire Designation and
                  Copyright Claimant are Both Also Inaccurate ........................... 6

                  a.    The Author Listed on the '166 Registration is
                        Incorrect ......................................................................... 7

                  b.    Nirvana, Inc ................................................................... 8

                  c.    The Copyright Office Would Have Refused
                        Registration .................................................................... 8

      C.    The Court Should Dismiss Nirvana's Claims Predicated on the
            '166 Registration Because Nirvana Does Not Own the '166
            Registration ....................................................................................... 11

      D.    The Court Should Dismiss Nirvana's Claims Predicated on the
            '166 Registration Because there is No Substantial Similarity
            Between the Accused Products and the Registered Work ................. 13

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON
COPYRIGHT VALIDITY

## TABLE OF CONTENTS

IV.  THE ALLEGED TRADEMARK IS NOT VALID OR
     PROTECTABLE ........................................................................ 16

     A.  The Disputed Smiley Is Not Protectable Because It Does Not
         Function As a Trademark ............................................................ 17

         1.  Consumers Do Not Associate The Disputed Smiley With
             The Plaintiff or Any Other Single Anonymous Source ........... 18

         2.  Plaintiff Uses The Disputed Smiley, a Variation of a
             Ubiquitous and Commonly Understood Symbol, as Mere
             Ornamentation ........................................................................ 20

     B.  The Disputed Smiley Is Not Inherently Distinctive and Has Not
         Acquired Distinctiveness Among Consumers ................................... 23

V.   EVEN IF PLAINTIFF'S ALLEGED TRADEMARK WAS
     PROTECTABLE, THERE IS NO EVIDENCE OF CONSUMER
     CONFUSION, AND THEREFORE NO INFRINGEMENT ....................... 29

     A.  Nirvana's Alleged Mark is Weak ...................................................... 31

     B.  Marc Jacobs and Nirvana Goods Are Not Sold in Proximity in
         the Marketplace ............................................................................... 33

     C.  The Parties' Respective Designations Are Not Similar ...................... 35

     D.  There is No Evidence of Actual Consumer Confusion ...................... 36

     E.  The Parties' Respective Marketing Channels Differ .......................... 37

     F.  Customers of Marc Jacobs Products Are Highly Sophisticated
         and Exercise a High Degree of Care in Making Purchasing
         Decisions ........................................................................................ 38

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON
COPYRIGHT VALIDITY

## TABLE OF CONTENTS

G.    There Is No Evidence of Intent to Profit By Confusing
      Consumers ........................................................................40

H.    There Is No Evidence That The Parties Will Expand to Compete
      in the Same Market .........................................................41

VI.   NIRVANA'S CLAIMS UNDER CALIFORNIA COMMON LAW
      SIMILARLY FAIL ...........................................................41

VII.  THIS IS AN EXCEPTIONAL CASE UNDER THE LANHAM ACT,
      AND DEFENDANTS SHOULD BE AWARDED THEIR
      ATTORNEYS' FEES........................................................42

VIII. CONCLUSION ....................................................................42

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aliotti v. R. Dakin & Co.*,
    831 F.2d 898 (9th Cir. 1987) ............................................................... 14

*Allstate Ins. Co. v. Kia Motors Am., Inc.*,
    784 Fed. Appx. 507 (9th Cir. Sept. 6, 2019) ....................................... 29

*Allstate Ins. Co. v. Kia Motors Am., Inc.*,
    No. CV 16-6108 SJO, 2017 U.S. Dist. LEXIS 211399 (C.D. Cal.
    Dec. 22, 2017) ...................................................................................... 31

*AMF Inc. v. Sleekcraft Boats*,
    599 F.2d 341 (9th Cir. 1979) ......................................................*passim*

*Amusement Art, LLC v. Life Is Beautiful, LLC*,
    No. 2-14-cv-08290-DDP-JPR, 2016 WL 6998566, 2016 U.S. Dist.
    LEXIS 165429 (C.D. Cal. Nov. 29, 2016) .................................... 16, 23

*In re Astro-Gods Inc.*,
    223 USPQ 621 (T.T.A.B. 1984) ........................................................... 22

*Black v. Irving Materials, Inc.*,
    398 F. Supp. 3d 592 (N.D. Cal. 2019) ................................................. 18

*by Eclipse Assocs. Ltd. v. Data Gen. Corp.*,
    894 F.2d 1114 (9th Cir. 1990) ............................................................. 32

*Cairns v. Franklin Mint Co.*,
    24 F. Supp.2d 1013 (C.D. Cal. 1998) .................................................. 31

*Cavalier v. Random House, Inc.*,
    297 F.3d 815 (9th Cir. 2002) ............................................................... 13

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .................................................................... 4, 5, 6

*Cohn v. Petsmart, Inc.*,
    281 F.3d 837 (9th Cir. 2002) ............................................................... 36

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON
COPYRIGHT VALIDITY

*Cont'l Lab. Prods. v. Medax Int'l, Inc.*,
    114 F. Supp. 2d 992 (S.D. Cal. 2000) ................................................................ 28

*Corbello v. Devito*,
    2015 U.S. Dist. LEXIS 132726 (D. Nev. Sep. 29, 2015) ................................... 14

*D.C. One Wholesaler, Inc. v. Chien*,
    120 U.S.P.Q.2D (BNA) 1710 (T.T.A.B. Oct. 4, 2016) ...................................... 23

*Data East USA, Inc. v. Epyx, Inc.*,
    862 F.2d 204 (9th Cir. 1988) .............................................................................. 14

*In re Dimitri's Inc.*,
    9 USPQ2d 1666 (T.T.A.B. 1988) ...................................................................... 22

*DisputeSuite.com, LLC v. CreditUmbrella Inc.*
    2015 US Dist. LEXIS 187068 (C.D. Cal. Jan. 16, 2015) ............................ 14, 15

*E&J Gallo Winery v. Gallo Cattle Co.*,
    967 F.2d 1280 (9th Cir. 1992) ............................................................................ 38

*Echo Drain v. Newsted*,
    307 F. Supp. 2d 1116 (C.D. Cal. 2003) ............................................................. 25

*Ellison v. Robertson*,
    357 F.3d 1072 (9th Cir. 2004) .............................................................................. 4

*Express, LLC v. Forever 21, Inc.*,
    No. CV 09-4514 ODW, 2010 U.S. Dist. LEXIS 91705 (C.D. Cal.
    Sep. 2, 2010) ................................................................................................ 24, 28

*In re Gen. Tire & Rubber Co.*,
    404 F.2d 1396 (C.C.P.A. 1969) ......................................................................... 21

*Glass v. Sue*,
    CV 09-08570-RGK, 2010 WL 4274581, 2010 U.S. Dist. LEXIS
    117598 (C.D. Cal. October 22, 2010) .................................................... 16, 17, 29

*Gold Value Int't Textile, Inc. v. Sanctuary Clothing, LLC*,
    2017 U.S. Dist. LEXIS 181296 (C.D. Cal. 2017) ...................................... 6, 8, 10

*Grupke v. Linda Lori Sportswear, Inc.*,
    921 F. Supp. 987 (E.D.N.Y. 1996) .................................................................... 22

*Harper House, Inc. v. Thomas Nelson, Inc.*,
    889 F.2d 197 (9th Cir. 1989) ........................................................................ 14, 15

*Icebreaker Ltd. v. Gilmar S.P.A.*,
    911 F.Supp.2d 1099 (D. Or. 2012) ............................................................... 36, 38

*Ink v. Mga Entm't*,
    No. 04CV1035 ....................................................................................................... 22

*James R. Glidewell Dental Ceramics v. Keating Dental Arts, Inc.*,
    No. 11-cv-1309, 2013 WL 655314, 2013 U.S. Dist. LEXIS 24824
    (C.D. Cal. Feb. 21, 2013) ..................................................................................... 30

*JL Bev. CO. LLC v. Beam, Inc.*,
    318 F. Supp. 3d 1188 (D. Nev. 2018) .................................................................. 31

*Johnson & Johnson v. Actavis Group HF*,
    No. 06 CV 8209-DLC, 2008 WL 228061 (S.D.N.Y. Feb. 21, 2008) ............... 27

*Kookai, S.A., v. Shabo*,
    950 F.Supp. 605 (S.D.N.Y. 1997) ....................................................................... 38

*Lee v. Mike's Novelties, Inc.*,
    No. CV 10-2225-VBF, 2011 U.S. Dist. LEXIS 161851 (C.D. Cal.
    August 2, 2011) ............................................................................................... 16, 25

*Lindy Pen Co. v. Bic Pen Corp.*,
    725 F.2d 1240 (9th Cir. 1984) ......................................................................... 35, 39

*Lipoplus, Inc. v. Kohan*,
    No. CV 18-10220 PSG, 2019 U.S. Dist. LEXIS 229382 (C.D. Cal.
    Dec. 19, 2019) ......................................................................................... 33, 34, 35

*In re Lululemon Athletica Can. Inc.*,
    105 U.S.P.Q.2D (BNA) 1684 (T.T.A.B. Jan. 11, 2013) ................................... 20

*M2 Software, Inc. v. Madacy Entm't*,
    421 F.3d 1073 (9th Cir. 2005) ....................................................... 29, 30, 32, 39

*Marcus v. ABC Signature Studios, Inc.*
    279 F. Supp. 3d 1056 (C.D. Cal. 2017) ........................................................ 5, 13

*Marya v. Warner/Chappel Music, Inc.*
    131 F.Supp. 3d 975 (C.D. Cal. 2015) ............................................................. 5, 8

-vi-

*Masquerade Novelty, Inc. v. Unique Indus., Inc*.
  912 F.2d 663 (3rd Cir. 1990) ............................................................... 5

*Mattel Inc. v. Walking Mt. Prods.*,
  353 F.3d 792 (9th Cir. 2003) ............................................................. 17

*In re Melville Corp.*,
  228 U.S.P.Q. (BNA) 970 (T.T.A.B. Jan. 9, 1986) ............................. 21

*Milbank Tweed Hadley & McCloy LLP v. Milbank Holding Corp*.,
  2007 U.S. Dist. LEXIS 97934 (C.D. Cal. February 23, 2007) .................. 16, 26

*Miss World (UK), Ltd. v. Mrs. Am. Pageants, Inc.*,
  856 F.2d 1445 (9th Cir. 1988) ........................................................... 32

*Moose Creek, Inc. v. Abercrombie & Fitch Co.*,
  331 F. Supp. 2d 1214 (C.D. Cal. 2004) .............................................. 31

*Multi Time Mach., Inc. v. Amazon.com, Inc.*,
  804 F.3d 930 (9th Cir. 2015) ............................................................. 38

*MZ Wallace Inc. v. Fuller*,
  No. 18cv2265(DLC), 2018 U.S. Dist. LEXIS 214754 (S.D.N.Y.
  Dec. 20, 2018) ................................................................................... 25

*Nabisco, Inc. v. PF Brands, Inc.*,
  191 F.3d 208 (2d Cir. 1999) .............................................................. 36

In re Neiman Marcus Group LTD LLC, et al., Case No. 20-32519
  (DRJ) (Bankr. S.D. Tex.) ...................................................................... 1

*Network Automation, Inc. v. Advanced Sys. Concepts*,
  638 F.3d 1137 (9th Cir. 2011) ........................................................... 33

*Network Automation, Inc. v. Hewlett-Packard Co.*,
  No. 08-cv-4675-JFW, 2009 WL 5908719, 2009 U.S. Dist. LEXIS
  125835 (C.D. Cal. Sept. 14, 2009) .................................................... 25

*Nikon, Inc. v. Ikon Corp*.,
  1992 U.S. Dist. LEXIS 6299 (S.D.N.Y. May 1, 1992) ..................... 20

*Novadaq Techs. v. Karl Storz GMBH & Co. K.G.*,
  No. 14-cv-04853-PSG, 2015 U.S. Dist. LEXIS 170423 (N.D. Cal.
  Dec. 18, 2015) ................................................................................... 31

4810-7493-9345v.8
DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON
COPYRIGHT VALIDITY

*Oculu, LLC v. Oculus VR, Inc.*,
    No. SACV 14-0196 ...................................................................................30, 36

*Olander Enters. Inc. v. Spencer Gifts, LLC*,
    812 F. Supp. 2d 1070 (C.D. Cal. 2001)...........................................................5

*In re Peace Love World Live, LLC*,
    127 USPQ2d 1400 (T.T.A.B. 2018).................................................................21

*Petrella v. Metro Goldwyn Mayer, Inc.*
    572 U.S. 663 (2014) ........................................................................................11

*Playboy Eters, Inc. v. Netscape Comm's Corp.*,
    55 F. Supp.2d 1070 (C.D. Cal. 1999) *aff'd* 202 F.3d 278 (9th Cir.
    1999) ................................................................................................................30

*Reed Elsevier, Inc. v. Muchnick*,
    559 U.S. 154, 130 S. Ct. 1237, 176 L.Ed.2d 18 (2010) ..................................5

*Reeves v. Gen. Nutrition Ctrs.*,
    No. SA CV10-01653 JAK, 2012 WL 13018362, 2012 U.S. Dist.
    LEXIS 200682 (C.D. Cal. Apr. 2, 2012) (Kronstadt, J.)............................31, 32

*Reserve Media, Inc. v. Efficient Frontiers, Inc.*,
    No. CV 15-05072, 2017 U.S. Dist. LEXIS 4878 (C.D. Cal. January
    11, 2017) ...............................................................................................16, 17, 26

*Rise Basketball Skill Dev., LLC v. K Mart Corp.*,
    No. 16-cv-04895-WHO, 2017 U.S. Dist. LEXIS 179695 (N.D. Cal.
    Oct. 27, 2017) ...........................................................................................37, 40

*Rock & Roll Religion, Inc. v. Cels Enters., Inc.*,
    No. CV09-5258 ...........................................................................................*passim*

*Rubber Stamp Mgmt. v. Kalmbach Publ'g Co.*,
    No. C06-0277RSM, 2007 U.S. Dist. LEXIS 33367 (W.D. Wash.
    May 4, 2007).....................................................................................................26

*Saks & Co. v. Hill*,
    843 F. Supp. 620 (S.D. Cal. 1993) ..................................................................38

*Seal Shield, Ltd. Liab. Co. v. Otter Prods., Ltd. Liab. Co.*,
    680 Fed. Appx. 560 (9th Cir. 2017) .................................................................18

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON
COPYRIGHT VALIDITY

4810-7493-9345.v.8

*Seal Shield, Ltd. Liab. Co. v. Otter Prods., Ltd. Liab. Co.*,
    No. 13-cv-2736-CAB (NLS), 2014 U.S. Dist. LEXIS 185778 (S.D.
    Cal. Nov. 3, 2014) *aff'd* 680 Fed. Appx. 560 (9th Cir. 2017)............................16

*Silas v. Home Box Office, Inc.*
    201 F. Supp 3d 1158 (C.D. Cal. 2016)................................................13

*Smith v. Wal-Mart Stores, Inc.*,
    537 F. Supp. 2d 1302 (N.D. Ga. March 20, 2008)..........................................20

*In re Soccer Sport Supply Co.*,
    507 F.2d 1400 (C.C.P.A. 1975)................................................24

*Surfvivor Media, Inc. v. Survivor Prods.*,
    406 F.3d 625 (9th Cir. 2005)................................................40

*Surgicenters of Am., Inc. v. Med. Dental Surgeries, Co.*,
    601 F.2d 1011 (9th Cir. 1979)................................................16

*Tie Tech, Inc. v. Kinedyne Corp.*,
    296 F.3d 778 (9th Cir. July 11, 2002) ................................................18

*Toho Co. v. Sears, Roebuck & Co.*,
    645 F.2d 788 (9th Cir. 1981)................................................16, 39

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
    505 U.S. 763 (1992) ................................................17

*Unicolors, Inc. v. Urban Outfitters, Inc.*
    853 F.3d 980 (9th Cir. 2017)................................................9

*United Fabrics Int'l, Inc. v. C&J Wear, Inc.*
    630 F.3d 1255 (9th Cir. 2011)................................................5

*Vision Sports, Inc. v. Melville Corp.*,
    888 F.2d 609 (9th Cir. 1989)................................................18

*Walter v. Mattel, Inc.*,
    210 F.3d 1108 (9th Cir. 2000)................................................29, 30

*Yankee Spirits, Inc. v. Gasbarro*,
    CIVIL NO.96-10967PBS, 1998 U.S. Dist. LEXIS 22159 (D. Mass.
    May 26, 1998)................................................19

-ix-

*Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc.*,
    419 F.3d 925 (9th Cir. 2005) .............................................................................. 16

**Statutes**

15 U.S.C. §1125(a) ......................................................................................... 30

15 U.S.C. § 1127 ............................................................................................ 17

17 U.S.C. 411(a) .............................................................................................. 5

17 U.S.C. § 101 *et seq.* ................................................................................... 3

17 U.S.C §§ 408(a), 411(a) ............................................................................. 5

17 U.S.C. § 410(c) ........................................................................................... 5

17 U.S.C. §501(b) .......................................................................................... 11

17 USC 101, 201(b) ....................................................................................... 11

17 USC 201(b) ............................................................................................... 11

17 USC 204(a) ............................................................................................... 11

Lanham Act ........................................................................................ 1, 2, 29, 34

Lanham Act (15 U.S.C. §1125(a) *et seq.*) ...................................................... 3

**Other Authorities**

Fed. R. Civ. P. 56(a) ....................................................................................... 4

Federal Rule of Civil Procedure 56 ................................................................ 1

*L.A. Printex* ...................................................................................................... 9

Rule 11 ......................................................................................................... 2, 9

Rule 30(b)(6) .................................................................................................. 26

4810-7493-9343v.8

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON
COPYRIGHT VALIDITY

1

2    Pursuant to Federal Rule of Civil Procedure 56, Defendants Marc Jacobs

3  International, LLC ("MJI") and Saks Incorporated, d/b/a Saks Fifth Avenue

4  ("Saks") (together, "Defendants" unless otherwise specifically designated)[2] move

5  for summary judgment dismissing all of Plaintiff's claims in this action with

6  prejudice, in their entirety, as a matter of law, and granting Defendants'

7  counterclaim for declaratory relief, in its entirety, as a matter of law.

8  ## I.    INTRODUCTION

9    It is ironic how much trouble a smile can cause.  Plaintiff Nirvana, L.L.C.

10  ("Plaintiff") initiated this action on December 28, 2018, alleging that MJI, Saks and

11  NMG infringed a copyrighted tee shirt design (the "Registered Work") and

12  unregistered common law trademark  ☺  (the "Disputed Smiley") purportedly

13  owned by Plaintiff, through their sales of a sweatshirt, tee shirt and socks that

14  contain a graphic of a smiley face with an "M" and "J" for eyes.  The Complaint

15  alleges that this activity constitutes copyright infringement, false designation of

16  origin under the Lanham Act, and trademark infringement and unfair competition

17  under California common law.  Each of Plaintiff's claims should be dismissed on

18  summary judgement for several reasons.

19    *First*, the copyright claim is barred for failure to satisfy the preconditions of a

20  valid copyright registration.  Many of the statements in the registration are false.

21  The name of the author is wrong.  The name of the copyright claimant is wrong.

22

23  _____

[2] On May 7, 2020, Neiman Marcus Group LTD LLC ("NMG") and its debtor

24  affiliates filed petitions for chapter 11 bankruptcy, which initiated the bankruptcy

cases captioned In re Neiman Marcus Group LTD LLC, et al., Case No. 20-32519

25  (DRJ) (Bankr. S.D. Tex.) Nirvana LLC was scheduled on the Reorganized Debtors'

Schedules as a contingent and unliquidated claim. Nirvana LLC did not file a proof

26  of claim. Article I.A.32 of the bankruptcy plan states that "[a]ny claim that has been

. . . listed in the Schedules as contingent, unliquidated, or disputed, and for which

27  no proof of claim is or has been timely filed . . . shall be expunged without further

action by the Debtors and without further notice to any party or action, approval, or

28  order."  Thus, Nirvana LLC's claims against NMG were expunged as of Sept. 25,

2020, and Nirvana LLC is barred from asserting its claim against those entities.

1    The designation as a "work made for hire" is wrong.  The publication date is

2    wrong.  Had the Copyright Office known about these errors, it would not have

3    issued the registration in the form it is currently in, so the registration as it stands is

4    invalid.  Even if the registration could stand, the copyright claim should be

5    dismissed because the registration is not owned by Plaintiff.  This entire case starts

6    from the false premise that Mr. Kurt Cobain created the tee shirt design that is the

7    subject of the registration.  However, the evidence in the record shows that the

8    creator of the registered tee shirt design is art director Mr. Robert Fisher, who was

9    not an employee of Plaintiff's processor Nirvana, Inc., the copyright claimant listed

10   on the registration, and who has sworn that he did not transfer his rights anyone.

11   There is no written or oral agreement that says otherwise. Finally, the copyright

12   claim should be dismissed because there is no substantial similarity between the

13   protectable expression of the Registered Work and the smiley face with "M" and

14   "J" eyes used by Defendants.

15        *Second*, the Lanham Act claim should be dismissed for several independent

16   reasons.  Plaintiff purports to own an unregistered trademark in the Disputed

17   Smiley that is part of the Registered Work.  But the Disputed Smiley is not

18   protectable because it is a ubiquitous symbol that consumers do not associate it

19   with Plaintiff or a single anonymous source, Plaintiff uses the Disputed Smiley as

20   mere ornamentation, and the designation has no inherent or acquired

21   distinctiveness. Even if the Disputed Smiley was protectable, there is no evidence

22   of confusion, so there can be no finding of infringement.

23        Plaintiff's remaining claims under California common law are premised on

24   the same conduct underlying the infringement claims under federal law, and should

25   similarly fail.

26         This lawsuit has been advanced in bad faith since the beginning. Plaintiff has

27   scrambled to fix factual problems and secure rights that it did not have (but should

28   have had) at the inception of the case, even past the close of fact discovery, as

4810-7493-9343v.8

1 detailed in Defendants' Rule 11 motion filed contemporaneously herewith.

2 Defendants respectfully submit that summary judgment should be granted in

3 Defendants' favor on all claims, as well as on Defendants' counterclaim for a

4 declaration that the alleged registration is invalid.

5 **II.    STATEMENT OF UNDISPUTED FACTS**

6        A comprehensive recitation of the material facts in this case which are

7 not in dispute is contained in the concurrently filed Statement of

8 Uncontroverted Facts and Conclusions of Law ("SUF"). The citations to SUF

9 throughout this memorandum of points and authorities refer to the facts and

10 supporting evidence set forth in Defendants' Statement of Uncontroverted

11 Facts and Conclusions of Law which Defendants incorporate by reference.

12       A.    Procedural Background

13       Plaintiff commenced this action on December 28, 2018, alleging claims of

14 copyright infringement, under 17 U.S.C. § 101 *et seq.*, false designation of origin

15 under the Lanham Act (15 U.S.C. §1125(a) *et seq.*), trademark infringement under

16 California common law and unfair competition under California common law

17 against all of the Defendants. SUF 5.

18       On November 26, 2019, Defendants filed their Answer and separately filed a

19 Counterclaim seeking a declaration that the registration at issue in this action is

20 invalid, and an order directing the Register of Copyrights to cancel the registration.

21 SUF 6.

22       B.    Factual Background

23       Plaintiff's copyright cause of action is predicated on the claim that Plaintiff

24 owns U. S. Copyright Reg. No. VA 0000564166 (the "'166 Registration"), which

25 covers the Registered Work, the complete tee shirt design shown below:

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON
COPYRIGHT VALIDITY
4810-7493-9343v.8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



SUF 7.

Plaintiff also claims that the '166 Registration covers the X-Eyes Smiley Face contained in the '166 Registration, which it sometimes calls the "Smiley Face design and logo" or "Happy Face" (also referred to herein as the "Disputed Smiley").  SUF 8.  The Accused Products in this case are a sweatshirt, tee shirt and socks that only allegedly misappropriate two features of the Registered Work: the roughly circular outline and the squiggly mouth of the Disputed Smiley. SUF 9.

Plaintiff also claims to own common law trademark rights in the Disputed Smiley Face. SUF 10.

Mr. Robert Fisher is a graphic artist who has submitted a sworn declaration and sworn deposition testimony stating that he is the creator and owner of the Registered Work.  SUF 11.  Mr. Fisher has also detailed with specificity at his deposition and in motion papers the process he used to create the Disputed Smiley and materials he used. SUF 12.  He has produced documents evidencing the fruits of this labors on this project, including what he calls the original Xerox blow-up of the Disputed Smiley.  SUF 13.

No witness who has testified in this case purports to have first-hand knowledge that anyone other than Mr. Fisher created the Registered Work. SUF 14.

III.   **ARGUMENT**

  A. Summary Judgment Standard

   Summary judgment should be granted where "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).  As explained by the Supreme Court, summary judgement is "not … a disfavored procedural shortcut, but … an integral part of the Federal Rules," designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp.* 477 U.S. 327.

   Summary judgement is appropriate where a claimant "fail[s] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.  In other words, a failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and makes summary judgment proper. *Id.* at 323.

  B. The Court Should Dismiss Nirvana's Claims Predicated on the '166 Registration Because the '166 Registration is Invalid as a Matter of Law

   To establish a claim for copyright infringement, a plaintiff must show that it is (1) the owner (2) of a valid copyright and (3) the defendant copied original elements of the work which are protectable by copyright.  17 U.S.C. 411(a); *see also Marcus v. ABC Signature Studios, Inc*. 279 F. Supp. 3d 1056, 1064 (C.D. Cal. 2017); *Olander Enters. Inc. v. Spencer Gifts, LLC*, 812 F. Supp. 2d 1070, 1074-75 (C.D. Cal. 2001).   Here, there is no genuine issue of material fact regarding any of these elements.

   A copyright registration is a precondition to filing an action for copyright infringement.  17 U.S.C §§ 408(a), 411(a); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157, 130 S. Ct. 1237, 176 L.Ed.2d 18 (2010).  A copyright registration

certificate shall constitute *prima face* evidence of the validity of the copyright and of the facts stated in the certificate. 17 U.S.C. § 410(c). Once a claimant has shown that it has a certificate of registration, the burden of proof shifts to the opposing party who must offer some evidence of proof to dispute or deny the claimant's *prima face* case. *See Marya v. Warner/Chappel Music, Inc*. 131 F.Supp. 3d 975, 985 (C.D. Cal. 2015)(*citing United Fabrics Int'l, Inc. v. C&J Wear, Inc*. 630 F.3d 1255, 1257 (9th Cir. 2011)). The presumption "is not an insurmountable one, and merely shifts to the [challenger] the burden to prove the invalidity of the [ ] copyrights." *Id.* But when there is a material mistake in the registration, the presumption of validity is rebutted, if not voided altogether. *Id*.; *see also Masquerade Novelty, Inc. v. Unique Indus., Inc*. 912 F.2d 663, 668 (3rd Cir. 1990). A certificate of registration satisfies the registration requirement regardless of whether the certificate contains inaccurate information unless (1) the inaccurate information was included in the application for copyright registration with knowledge that it was inaccurate and (2) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration. *Gold Value Int't Textile, Inc. v. Sanctuary Clothing, LLC*, 2017 U.S. Dist. LEXIS 181296, *5-6 (C.D. Cal. 2017). The registrant must then come forth with evidence to support its claim and create a genuine issue for trial. *See Celotex Corp*. 477 U.S. at 324.

      1.    *The Author Listed on the '166 Registration is Inaccurate; It Follows that the Work for Hire Designation and Copyright Claimant are Both Also Inaccurate*

      The author on the '166 Registration is listed as Nirvana, Inc. SUF 15. The '166 Registration also states on its face that it is a "work made for hire." SUF 16. This is because Nirvana, Inc. claimed to have received rights in the '166 Registration from Kurt Cobain, its (alleged) employee and the (alleged) creator of

the Registered Work.  SUF 17.  But Mr. Cobain is not the creator of the Registered Work. SUF 18.

a.    **The Author Listed on the '166 Registration is Incorrect**

On February 3, 2020, Plaintiff produced documents showing that Robert Fisher, not Kurt Cobain, is the creator of the Registered Work and its X-Eyes Smiley Face. SUF 19.  Mr. Fisher's relationship to Plaintiff and the band Nirvana hardly makes this a shocking revelation.  Mr. Fisher began creating artwork for the band Nirvana almost 30 years ago while working with Geffen Records, Nirvana's record label at the time.  SUF 20.  It is not disputed that Mr. Fisher created artwork for use in connection with Nirvana's albums and promotional materials in 1991, when the Registered Work was created.  SUF 21.

Mr. Fisher emailed Mr. Michael Meisel of Nirvana's management company on Nov. 27, 2019 stating pointedly, "I'm the one that drew the smiley face logo." SUF 22.   In a separate email to Mr. Meisel, Mr. Fisher attached what he called "the original Xerox blowup" of the X-Eyes Smiley Face. SUF 23.  Mr. Fisher also submitted a sworn declaration in this case that he is the creator of the Registered Work and that he has not transferred his rights to any third party.  SUF 24.  He testified to the same during his deposition. SUF 25.

There is no evidence in the record to create a genuine issue of material fact regarding Mr. Fisher's status as the creator of the Registered Work.  The record is devoid of any testimony from anyone who claims to have first-hand knowledge that Mr. Cobain (or anyone other than Robert Fisher) created the Registered Work or its Disputed Smiley.  SUF 26.  Every single person who was asked this question said that they did not, in fact, have first-hand knowledge of creation by Mr. Cobain. SUF 27.  The best Plaintiff has been able to do is proffer declarations from several individuals that say, essentially, that they know Mr. Cobain was a gifted artist. SUF 28.  Even in the absence of other evidence, these statements would not create a

genuine issue of fact regarding the creator of the Registered Work, but they certainly cannot create a genuine issue of fact here, in the face of Robert Fisher's sworn testimony, sworn declaration and documentary evidence that show he is the creator and owner of the Disputed Smiley.  SUF 29.

At the least, Mr. Fisher's testimony, declaration and documents rebut the presumption of validity that the '166 Registration would initially be afforded. Defendants do not have the burden of proof on the issue of authorship, so they may discharge their initial burden by pointing to affirmative evidence negating Plaintiff's authorship claim. *Marya v. Warner/Chappel Music*, 131 F. Supp 3d. 975, 988 (2015).  Plaintiff has the burden of proof because Plaintiff must show that its interest can be traced back to the true author.  *See id.*

### b.    **Nirvana, Inc. Had Knowledge of the Inaccuracy**

Mr. Fisher testified that he supplied the artwork contained in the Registered Work to Nirvana's representative (and 30(b)(6) witness in this case) John Silva at the time of creation in 1991.  SUF 30.  Mr. Silva does not dispute Mr. Fisher's statement that the artwork was provided by Mr. Fisher to Mr. Silva or a representative of his company.  SUF 31.

### c.    **The Copyright Office Would Have Refused Registration**

The Copyright Office would have refused registration here because the error was not the type of immaterial mistake that could be remedied by a supplemental registration.  This Court has found the misnaming of an author on a copyright registration to be a "facial and material mistake in the registration certificate." *Marya v. Warner/Chappel Music, Inc*. 131 F. Supp 3d 975, 987 (C.D. Cal. 2015).

The gravity of the mistake here was also similar to the error in the registration that was at issue in *Gold Value*. There, this Court found that a registration of a published work as part of an unpublished collection was invalid. *Gold Value Int't Textile, Inc. v. Sanctuary Clothing, LLC*, 2017 U.S. Dist. LEXIS

181296 (C.D. Cal. 2017). The Court asked the Register of Copyrights whether it would have rejected the registration-in-suit if "the Register of Copyrights had known that, although Plaintiff had characterized the work as an unpublished collection that included the 1461 Design, Plaintiff previously had published the 1461 Design …?" *Id.* at 4 – 5. The Register responded that it would have denied registration. *Id.* at 5. The Court noted that this was well reasoned, in that the response was consistent with Copyright Office guidelines with respect to correcting mistakes, which states, "a supplemental registration is not appropriate if the work was registered as unpublished when it was actually published at the time of registration." The decisions in similar cases has often hinged on whether supplemental registration was available and sought. *See e.g., Unicolors, Inc. v. Urban Outfitters, Inc*. 853 F.3d 980, 984 (9th Cir. 2017)(holding that Copyright Office would not have rejected registration of an error where it approved a request to correct the inadvertent exclusion); *L.A. Printex Indus., Inc. v. Aeropostale, Inc*. 676 F.3d 841 (9th Cir. 2012) (removing published designs from unpublished collection did not invalidate the registration as to the unpublished-designs-in-suit because registrant worked with the Copyright Office to correct the error and was issued a supplemental registration).

Here, a supplemental registration would not be available because a supplemental registration cannot be used to reflect a transfer of rights in the work. *See* Copyright Compendium III § 1802.7(B). A change to the author would create a transfer of rights, because those rights would no longer rest with Nirvana, Inc. or its predecessors; they would rest with Robert Fisher. In any event, no supplemental registration was sought by Plaintiff here to correct the errors created by misnaming the author as Nirvana, Inc. Nor could Plaintiff take such an action without creating other problems for itself. If Plaintiff tried to change the author to Robert Fisher, Plaintiff would have no standing because Mr. Fisher claims that he has not

1    transferred rights in the Registered Work to anyone. SUF 33.[3]

2         Because the author listed on the '166 Registration is wrong, it follows that

3    two other key components of the registration are also faulty.  The registration states

4    that the work is a work made for hire, but it is not – there can be no work for hire

5    from Mr. Cobain to Nirvana, Inc. as alleged in the Complaint if Mr. Cobain is not

6    the creator of the Registered Work.  The registration also states that the copyright

7    claimant is Nirvana, Inc., which it never would have been if the author was listed

8    correctly as Robert Fisher, because Mr. Fisher would have been the claimant.  SUF

9    34.  Separately, the publication date is also wrong.  The '166 Registration lists the

10   first date of publication as November 1, 1991.  SUF 35.  Mr. Mark Kates testified

11   that a tee shirt containing the entire Registered Work was distributed to radio

12   station disk jockeys in August, 1991.  SUF 36. Thus, four key facts contained in the

13   '166 Registration: the author of the work, the claimant of the work, whether the

14   work was a work for hire, and the publication date were all *wrong*. To allow

15   registrations with this many fundamental errors to stand without repercussions

16   would undercut the public policy of submitting accurate documents to the

17   Copyright Office.  Plaintiff's member Mr. Krist Novoselic claims that Nirvana,

18   "always wanted everything filed with the U.S. Copyright Office to be completely

19   accurate because that was the right thing to do and because filing documents that

20   are inaccurate with government agencies can only cause problems we did not or do

21   not want or need." SUF 37. Yet this was not done.

22        Accordingly, because the Copyright Office would have refused registration[4]

23

24   [3] Such a move by Plaintiff would also be an admission that would impact Plaintiff negatively in responding to Defendants' Rule 11 motion.

25   [4] Defendants respectfully suggest that the Court follow the course of action it

26   employed in *Gold Value*, and ask the Register of Copyrights whether it would have refused registration if it was aware of the inaccuracies.  Questions to the Register of Copyrights could include: (1) Would the Register have rejected Reg. No.

27   VA00000564166 if, at the time of application, it knew that the author listed in the registration was inaccurate, and that the correct author had not transferred his rights

28   to the copyright claimant, thereby creating an ownership issue that could not be

due to these errors, the final factor is met and the '166 Registration should be deemed invalid.

C.   The Court Should Dismiss Nirvana's Claims Predicated on the '166 Registration Because Nirvana Does Not Own the '166 Registration

Assuming *arguendo* that the '166 Registration is not invalid, it still does not belong to the Plaintiff.

The starting point of any copyright infringement inquiry is whether the Plaintiff is the owner of the asserted copyright registration.  Only "the legal or beneficial owner of an exclusive right under a copyright is entitled … to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. §501(b).  Copyright ownership vests initially in the author of the work. 17 U.S.C § 201(b).  Ownership may also vest as a work for hire if it is: (1) a work prepared by an employee within the scope of his or her employment; or (2) a work specifically ordered or commissioned for use as a contribution to a collective work …  if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire. 17 U.S.C. §§ 101, 201(b).  Although copyright ownership rights may be transferred, "[a] transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owners dully authorized agent." 17 U.S.C. § 204(a); *see Petrella v. Metro Goldwyn Mayer, Inc*. 572 U.S. 663, 668 (2014).

The '166 Registration states on its face that it is a work made for hire to Nirvana, Inc.  SUF 56.  Plaintiff's theory of exactly how it owns the '166

---

corrected by a supplemental registration? Or (2) Would the Register have rejected Reg. No. VA0000564166 if, at the time of application, it knew that the author, the copyright claimant, the work for hire designation and the date of publication were all incorrect?

1   Registration has morphed as Plaintiff has been faced with facts that make its earlier

2   positions untenable.  Despite these attempts at salvaging its claim of ownership,

3   there is no genuine issue of fact here – Plaintiff is not the owner.

4        *Theory 1*: Plaintiff's initial theory of ownership was that: (1) Kurt Cobain

5   created the Eyes Smiley Face, (2) Plaintiff's predecessor Nirvana, Inc. obtained Mr.

6   Cobain's rights as a work for hire, and (3) those rights were ultimately transferred

7   to Plaintiff through a series of assignments.  SUF 57. But there is no genuine issue

8   of material fact that the first step in this chain is missing – Mr. Cobain did not

9   create the Disputed Smiley.  SUF 58.  The record is devoid of any testimony from

10  anyone who claims to have first-hand knowledge that Mr. Cobain created the

11  Disputed Smiley.  SUF 59.  Every single person who was asked this question said

12  they had no first-hand knowledge supporting the unfounded position that Mr.

13  Cobain was the creator.  SUF 60.  The best Plaintiff has been able to do is proffer

14  declarations from several individuals that say, essentially, that they know Mr.

15  Cobain was a gifted artist.  SUF 61.  These statements do not create a genuine issue

16  of fact even in the absence of other evidence, but they certainly cannot create a

17  genuine issue of fact in the face of the sworn testimony and declaration of Robert

18  Fisher that he is the creator and owner.  SUF 62.  Indeed, Plaintiff's corporate

19  representative, testifying on behalf of Plaintiff at his 30(b)(6) deposition, said that

20  Plaintiff's assertion that Mr. Cobain was the creator of the Disputed Smiley was

21  based on "institutional knowledge."  SUF 63.  Institutional knowledge is not a

22  substitute for facts or evidence.

23        *Theory 2*: Once Robert Fisher made himself known, Plaintiff changed its

24  theory of ownership to argue that, even if Mr. Fisher is the creator, his rights were

25  transferred to his alleged employer at the time, Geffen Records. SUF 64.  Mr.

26  Fisher categorically denies this, and has submitted sworn statements and testimony

27  that he is the creator and owner of the Registered Work and its Disputed Smiley.

28  SUF 65.  He is the only person on record in this case with first-hand knowledge

1   about creation of this artwork. SUF 66. He has sworn that he did not give rights to

2   Plaintiff and that his rights did not transfer to Geffen or any other entity. SUF 67.

3       These facts, at the least, rebut the presumption of validity that Plaintiff is the

4   owner of the '166 Registration, but here, there is no evidence in the record that

5   Plaintiff can use to create a *genuine* issue of fact regarding ownership, so the

6   copyright claim should be dismissed on summary judgment outright for lack of

7   standing.

8       D.   The Court Should Dismiss Nirvana's Claims Predicated on the '166

9            Registration Because there is No Substantial Similarity Between the

10           Accused Products and the Registered Work

11      The final element of a copyright claim, copying, is established by showing:

12   (1) access to plaintiff's copyrighted work and (2) the works at issue are

13   substantially similar concerning the protected elements. *See Marcus v. ABC*

14   *Signature Studios, Inc.*, 279 F. Supp. 3d 1056, 1064 (C.D. Cal 2017).  In the Ninth

15   Circuit, substantial similarity requires a showing of intrinsic and extrinsic

16   similarity.  *Marcus*, 279 F. Supp. 3d at 1065.  "The intrinsic test is a subjective

17   comparison that focuses on 'whether the ordinary, reasonable audience' would find

18   the works substantially similar in the 'total concept and feel of the works.'"

19   *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002).  This test is

20   subjective and is best left to the jury.  *See Silas v. Home Box Office, Inc.* 201 F.

21   Supp 3d 1158, 1171 (C.D. Cal. 2016).

22      However, courts may dismiss a complaint for failure to satisfy the extrinsic

23   test, which is an objective comparison of "specific expressive elements."  *Id.*

24   "Courts must 'filter out and disregard [ ] non-protectible elements' of a plaintiff's

25   work and inquire only into 'whether the *protectible elements, standing alone*, are

26   substantially similar.'"  *Id.* (quoting *Cavalier*, 297 F.3d at 822) (emphasis in

27   original).  A plaintiff who cannot establish extrinsic similarity cannot proceed with

28

1    a claim, because both extrinsic and intrinsic similarity are necessary for a finding of

2    copyright infringement.  *Id.*

3        Here, there is no genuine issue of material fact regarding extrinsic similarity.

4    Plaintiff's copyright claim stems from the false premise that the Plaintiff owns a

5    U.S. copyright registration on a smiley face design, alone, when in fact, the

6    Disputed Smiley is a mere fraction of the full artwork covered by the '166

7    Registration.  SUF 72.  Plaintiff does not allege that Defendants have

8    misappropriated any other component of the '166 Registration's tee shirt design,

9    namely, the word NIRVANA placed above a smiley face or the phrase "Flower

10   Sniffin Kitty Pettin Baby Kissin Corporate Rock Whores" written on the back. SUF

11   73.  Defendants haven't even been accused of taking the entire Disputed Smiley

12   Face. SUF 74   Indeed, the only components of the '166 Registration's that

13   Defendants are accused of taking are:

14

15   

16   SUF 75.

17       "When similar features … are as a practical matter indispensable, or at least

18   standard, in the treatment of a given idea, they are treated like ideas and are

19   therefore not protected by copyright."  *DisputeSuite.com, LLC v. CreditUmbrella*

20   *Inc.*  2015 US Dist. LEXIS 187068, at *9 (C.D. Cal. Jan. 16, 2015).  Just as direct

21   copying of unprotected parts of a work does not constitute infringement, (*Harper*

22   *House, Inc. v. Thomas Nelson, Inc*., 889 F.2d 197, 208 (9th Cir. 1989) (vacating a

23   jury verdict and remanding for a new trial where the jury instructions permitted a

24   finding of infringement based on the direct copying of unprotected material)),

25   access plus substantial similarity does not constitute infringement if the substantial

26   similarity relates only to unprotected aspects of a work. *See Data East USA, Inc. v.*

27   *Epyx, Inc*., 862 F.2d 204, 207-08 (9th Cir. 1988) (citing *Aliotti v. R. Dakin & Co*.,

28   831 F.2d 898, 901 (9th Cir. 1987)) ("To determine whether similarities result from

unprotectable expression, analytic dissection of similarities may be performed. If this demonstrates that all similarities in expression arise from use of common ideas, then no substantial similarity can be found."). Although summary judgment on the substantial similarity issue is disfavored, it is permitted, and has frequently been affirmed. *See Corbello v. Devito*, 2015 U.S. Dist. LEXIS 132726, at *29-30 (D. Nev. Sep. 29, 2015).

A substantially circular outline for a face and a roughly half circle smile are standard features in the treatment of the idea of a smiley face on clothing. SUF 76. Thus, these features are not protectable, but they are the only elements that Defendants have been accused of taking from the Registered Work. SUF 77.  It may be that when these standard smiley face features are combined with X's for eyes, the name of a rock band, and a phrase about flowers, kittens, babies and corporate rock whores, that full arrangement of elements can be copyrighted. But Defendants have not been accused of misappropriating any of these elements of the Registered Work.  SUF 78.   Rather, Defendants have only been accused of "taking" a roughly circular outline of a smiley face and a squiggly line for the mouth; common elements of the idea of a smiley face.  SUF 79.  The outline of the face and the smile line is neither a majority of the Registered Work, nor the most creative features of the Registered Work.  SUF 80.  No matter how you cut it, any alleged "taking" of these elements cannot be viewed as "substantial."  And in any event, a finding of substantial similarity cannot be based on these unprotectable elements. *DisputeSuite.com,* 2015 US Dist. LEXIS 187068, at *9; *Harper House, Inc. v. Thomas Nelson, Inc*., 889 F.2d at 208.  Thus, because there is no genuine issue of fact regarding extrinsic similarity and this is an element essential to Plaintiff's case, summary judgement of no infringement is warranted.

## IV.   The Alleged Trademark Is Not Valid or Protectable

Plaintiff describes its purported mark  interchangeably as a "Smiley Face logo" "Smiley Face design and logo" "Nirvana's design and logo mark" and refers to its use "both with and without" the term NIRVANA "adjacent to the [design]" (the "Disputed Smiley"). SUF ¶¶94, 98. Plaintiff owns no registration comprising or containing this designation under state or federal law. SUF ¶95. Accordingly, there is no presumption of validity accorded the Disputed Smiley, and Plaintiff "is left with the task of satisfying its burden of proof of establishing a valid mark absent application of the presumption." *Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc*., 419 F.3d 925, 928 (9th Cir. 2005); *Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788, 790 (9th Cir. 1981) ("Under section 43(a) of the Lanham Act…a claimant may prove the validity of an unregistered mark without the benefit of the presumption of validity that registration confers."). To establish trademark validity, Plaintiff must prove both ownership and protectability. *Reserve Media, Inc. v. Efficient Frontiers, Inc*., No. CV 15-05072, 2017 U.S. Dist. LEXIS 4878, *7 (C.D. Cal. January 11, 2017).[5]

A determination regarding a mark's validity is properly resolved as a matter of law, and Ninth Circuit courts routinely grant summary judgment when a plaintiff fails to establish that the mark it seeks to enforce is protectable. *See e.g. Surgicenters of Am., Inc. v. Med. Dental Surgeries, Co.*, 601 F.2d 1011, 1020 (9th Cir. 1979) (affirming registered mark is invalid); *Seal Shield, Ltd. Liab. Co. v. Otter Prods., Ltd. Liab. Co*., No. 13-cv-2736-CAB (NLS), 2014 U.S. Dist. LEXIS 185778 (S.D. Cal. Nov. 3, 2014) *aff'd* 680 Fed. Appx. 560, 563 (9th Cir. 2017) (defendant entitled to summary judgment where plaintiff "did not carry its burden of presenting evidence from which a reasonable jury could conclude that it had a

---

[5] Solely for purposes of summary judgment, Defendants do not challenge Plaintiff's asserted ownership of the Disputed Smiley.

16

1    distinctive, protectable trademark prior to defendant's entry into the market").[6]

2        A.    <u>The Disputed Smiley Is Not Protectable Because It Does Not Function</u>

3                <u>As a Trademark.</u>

4          The purported mark at issue here—an unregistered line drawing of a smiley

5    face authored by Robert Fisher—does not serve the trademark purpose of

6    identifying the source of the goods that bear it and distinguishing such goods from

7    others. SUF¶¶11-13, 114; *Mattel Inc. v. Walking Mt. Prods.*, 353 F.3d 792, 806

8    n.12 (9th Cir. 2003) (citation omitted) ("A trademark is a limited property right in

9    [a] particular word, phrase, or symbol, [ ], that is used to identify a manufacturer or

10   sponsor of a good or the provider of a service."). Legal protection of a mark hinges

11   on the designation functioning as a trademark—i.e. indicating source—and proof of

12   inherent or acquired distinctiveness. 1 McCarthy on Trademarks and Unfair

13   Competition § 3:4 (5th ed.) (hereinafter "McCarthy") (explaining issue of "use as a

14   trademark" is related but distinct from issues of inherent and acquired

15   distinctiveness); *Glass*, 2010 U.S. Dist. LEXIS 117598 at *22-*23 *quoting Two*

16   *Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767 (1992) ("To establish a valid

17   trademark, the plaintiff must establish that the mark is 'inherently distinctive' or

18   that it has 'acquired secondary meaning.'"); *Reserve Media, Inc. v. Efficient*

19   *Frontiers, Inc.*, No. CV 15-05072, 2017 U.S. Dist. LEXIS 4878, *7 (C.D. Cal.

20

---

21   [6] *See also Amusement Art, LLC v. Life Is Beautiful, LLC*, No. 2-14-cv-08290-DDP-
     JPR, 2016 WL 6998566, 2016 U.S. Dist. LEXIS 165429, *34-*35 (C.D. Cal. Nov.

22   29, 2016) (granting summary judgment to defendants where plaintiffs' "limited"
     and "sporadic" use of heart design did not "rise to the level of a protectable

23   trademark"); *Glass v. Sue*, CV 09-08570-RGK, 2010 WL 4274581, 2010 U.S.
     Dist. LEXIS 117598, *27 (C.D. Cal. October 22, 2010) (granting summary

24   judgment to defendants on false designation of origin claim where plaintiff failed
     to raise triable issue regarding validity of asserted mark); *Res. Media, Inc. v.*

25   *Efficient Frontiers, Inc.*, No. CV 15-05072, 2017 U.S. Dist. LEXIS 4878, *24-25
     (C.D. Cal. Jan. 11, 2017) (alleged infringer entitled to summary judgment where

26   marks found unenforceable as a matter of law); *Lee v. Mike's Novelties, Inc.*, No.
     CV 10-2225-VBF, 2011 U.S. Dist. LEXIS 161851, *5 (C.D. Cal. August 2, 2011);

27   *Milbank Tweed Hadley & McCloy LLP v. Milbank Holding Corp.*, 2007 U.S. Dist.
     LEXIS 97934, *9 (C.D. Cal. February 23, 2007) (summary judgment is proper

28   when no reasonable jury could find claimed mark has acquired secondary
     meaning).

January 11, 2017) ("Whether a mark is protectable depends upon whether the mark is distinctive."); Ninth Circuit Manual of Model Jury Instructions (Civil) § 15.10 Spectrum of Marks (2017) ("Trademarks that are not distinctive are not entitled to any trademark protection.").

A designation that does not function to "indicate the source of the goods" and to "distinguish" them from those of others does not meet the statutory definition of a trademark. *See* 15 U.S.C. § 1127 (defining trademark). Such a designation is not protectable, irrespective of claims of distinctiveness. McCarthy § 3:4 ("To create trademark…rights, a designation must perform the job of identification: to identify one source and distinguish it from other sources. If it does not do this, then it is not protectable as a trademark…"). To explain the interplay between actual trademark use and distinctiveness, McCarthy explains:

> For a designation which is not inherently distinctive and requires proof of secondary meaning, use as a trademark is always an essential gateway requirement. *If a designation is not used as a mark, then it cannot possibly achieve a secondary meaning and trademark status.*
>
> A word or design may be classified as 'inherently distinctive' and not in need of secondary meaning for trademark status. But even an 'inherently distinctive' word or design does not achieve trademark status *unless it is used as a trademark.*

McCarthy § 3:4. As such, the threshold question is whether, as actually used, the Disputed Smiley functions as an indicator of source for the goods or services of the Plaintiff. *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. July 11, 2002) ("A necessary concomitant to proving infringement is, of course, having a valid trademark; there can be no infringement of an invalid mark…validity [ ] is a threshold issue."); McCarthy § 3:4 ("The critical enquiry in determining whether a designation functions as a mark is how the designation would be perceived by the relevant public.") (citation omitted). The Disputed Smiley is not a source identifier.

1.   *Consumers Do Not Associate The Disputed Smiley With The Plaintiff or Any Other Single Anonymous Source.*

1  Speculation regarding consumer perception of the Disputed Smiley—the
2  critical inquiry in resolving the threshold question of whether it functions as a
3  mark—is not necessary here. Defendants conducted a consumer survey directed at
4  measuring the degree to which, if at all, consumers associate the Disputed Smiley
5  with Plaintiff or another single, anonymous source. SUF¶¶113-118; *see Seal Shield,*
6  *Ltd. Liab. Co. v. Otter Prods., Ltd. Liab. Co.*, 680 Fed. Appx. 560, 562 (9th Cir.
7  2017) (suggesting consumer survey is the only way "to say with confidence
8  precisely what consumers will understand the mark to mean."); *Black v. Irving*
9  *Materials, Inc.*, 398 F. Supp. 3d 592, 611 (N.D. Cal. 2019) *citing Vision Sports,*
10 *Inc. v. Melville Corp.*, 888 F.2d 609, 615 (9th Cir. 1989) ("[A] consumer survey
11 can provide persuasive evidence of distinctiveness.").
12  The undisputed survey evidence of Defendants' expert, Sarah Butler,
13 establishes an extraordinarily low level of recognition of the Disputed Smiley
14 among prospective purchasers of Plaintiff's clothing. SUF¶¶113-118. Four-hundred
15 forty-seven (447) consumers, more than 72% between the ages of 18-55, were
16 surveyed to determine whether they associate the Disputed Smiley with a single
17 source.[7] SUF ¶115-116. Only 10.8% of respondents viewed the Disputed Smiley as
18 associated with a single source, and only a mere 9% with the Plaintiff. SUF¶¶117-
19 118. It is well-settled that such "small percentage results at or less than 10%" are
20 "clearly" "not sufficient" to prove secondary meaning. McCarthy 15:45; *Yankee*
21 *Spirits, Inc. v. Gasbarro*, CIVIL NO.96-10967PBS, 1998 U.S. Dist. LEXIS 22159,
22 *30 (D. Mass. May 26, 1998) ("Often, consumer recognition below 25% fails to
23 establish secondary meaning."). Ms. Butler's survey is consistent with the other
24 evidence in the record demonstrating widespread use of iterations of a smiley face
25 design by numerous third parties, and Plaintiff's merely ornamental use of same.
26  Plaintiff has not engaged in any analysis regarding the perception of its

27
28 [7] The testimony of Plaintiff's 30(b)(6) witness, John Silva, confirms this was the
   appropriate population. SUF ¶116.

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON
COPYRIGHT VALIDITY
4810-7493-9343v.8

purported mark by the consuming public, and has failed to put forth any survey of its own. SUF¶¶111-112. Despite bearing the burden of proving the protectability of the Disputed Smiley, the evidence in the record does not substantiate the claim that consumers recognize the goods offered in connection with this designation as originating with a single source, let alone with the Plaintiff.

2.    *Plaintiff Uses The Disputed Smiley, a Variation of a Ubiquitous and Commonly Understood Symbol, as Mere Ornamentation.*

According to Plaintiff, its mark "consists of a smiley face design with two x's representing the eyes, an upturned curve representing the mouth, and a small open circle with a dash representing the tongue sticking out of the mouth." SUF ¶96. The U.S. Patent and Trademark Office advises that the smiley face constitutes a "common expression[ ] and symbol[ ]" that is "normally not perceived as [a] mark[ ]." TMEP § 1202.03(a). The significance of such common symbols is the underlying informational message they convey, rather than identifying any one producer as the source of any goods or services. Indeed, the smiley face has been repeatedly labeled "ubiquitous" and lacking in source identifying function. *See Smith v. Wal-Mart Stores, Inc.*, 537 F. Supp. 2d 1302, 1315 (N.D. Ga. March 20, 2008) (granting summary judgment on Wal-Mart's claims pertaining to alleged common law mark in smiley face design due to failure to prove design is protectable).[8]

Like common symbols, it is axiomatic that matter that is merely ornamental or decorative does not identify and distinguish source, and thus, does not serve a trademark function. TMEP § 1202.03; McCarthy § 7:24 ("[I]f a design is solely or merely ornamental…then it cannot be given the status of a valid trademark.").

---

[8] *See also Wal-Mart Stores, Inc. v. Loufrani*, 2009 TTAB LEXIS 113, *15, *18 (TTAB Mar. 20, 2009) (smiling face is "ubiquitous" and "a common feature of American culture..."); *Nikon, Inc. v. Ikon Corp.*, 1992 U.S. Dist. LEXIS 6299, *13 (S.D.N.Y. May 1, 1992) (smiley face is "ubiquitous in commerce, appearing on items as diverse as wrapping paper and undershorts.").

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON COPYRIGHT VALIDITY
4810-7493-9343v.8

Whether a designation is merely ornamental is a question of "public perception." McCarthy § 7:24 (the merely ornamental determination "is a specialized application of the key enquiry as to whether a given design is or is not perceived by customers as a symbol of origin."). A design is "presumably" viewed as merely ornamental if it is "a mere refinement of a commonly-adopted and well-known form of ornamentation for a class of goods…" *In re Lululemon Athletica Can. Inc.*, 105 U.S.P.Q.2D (BNA) 1684, 1686 (T.T.A.B. Jan. 11, 2013). In addition, the "size, location, dominance and significance of the alleged mark as applied to the goods" are key factors in evaluating whether a designation is merely ornamental, as well as the size of the designation relative to the size of the goods to which it is applied, and whether the designation is used in conjunction with a symbol indicating a trademark claim, such as "TM." TMEP § 1202.03(a); *In re Greater Anchorage, Inc.*, 2011 TTAB LEXIS 42, *7 (T.T.A.B. Feb. 14, 2011) ("The larger the display relative to the size of the goods, the more likely it is that consumers will not view the ornamental matter as a mark.").

The evidence here establishes that the Disputed Smiley is a mere refinement or variation of a ubiquitous symbol in overwhelmingly common and pervasive use in the United States. SUF ¶¶119-126. In particular, the apparel market—including retailers of Plaintiff's products bearing the Disputed Smiley adjacent to the term NIRVANA—is saturated with goods of numerous companies bearing designs similar or nearly identical to Plaintiff's claimed mark. SUF ¶121; *In re Peace Love World Live, LLC*, 127 USPQ2d 1400, 1403-04 (T.T.A.B. 2018) (explaining third-party use of "similar, ornamental displays of I LOVE YOU" on jewelry "corroborate[s]" the "ornamental nature" of the proposed mark and that consumers will not perceive it "as pointing uniquely to applicant as a single source."). Plaintiff itself uses variations of the Disputed Smiley for its own products. SUF ¶120.

Element-by-element identity is not required to find that a designation fails to function as a mark due to its commonality and informational message. *See id.; In re*

4810-7493-9343v.8

1   *Gen. Tire & Rubber Co.*, 404 F.2d 1396, (C.C.P.A. 1969); *In re Melville Corp.*, 228

2   U.S.P.Q. (BNA) 970, 971-972 (T.T.A.B. Jan. 9, 1986) (explaining "[t]he fact that

3   applicant may convey similar information in a *slightly different* way than others is

4   not determinative. In an environment where consumers are accustomed to the use

5   by merchants of *similar* informational phrases, we believe that consumers are not

6   likely to view applicant's slogan as a service mark…"). The extensive third party

7   use of smiley face designs here establishes that combining the standard elements of

8   such a design with minor variations or non-distinctive changes to elements or

9   proportions thereof simply does not primarily denote a specific origin or source.

10  SUF ¶¶119-126.

11          Moreover, as with smiley face designs used by numerous third parties,

12  including MJI, Plaintiff uses the Disputed Smiley in such a way that the public

13  would perceive it *not* as an indicator of source, but as a decorative or ornamental

14  feature of Plaintiff's goods. McCarthy § 7:24. Plaintiff's licensees plaster the

15  Disputed Smiley adjacent or in close proximity to the term NIRVANA across

16  apparel and a host of other novelty merchandise. SUF ¶¶127-132. The Disputed

17  Smiley together with the term NIRVANA is overwhelmingly positioned on the

18  front and center of the garment or item, and takes up nearly the entirety of the

19  surface area of the product. SUF ¶129. The "TM" symbol is not displayed with the

20  Disputed Smiley. SUF ¶131. The emblazoning of the Disputed Smiley across goods

21  in this manner is analogous to use that has been found merely ornamental, and not

22  indicative of source. *See e.g. Ink v. Mga Entm't*, No. 04CV1035 J (BLM), 2004

23  U.S. Dist. LEXIS 33783, at *20 (S.D. Cal. Sep. 7, 2004) ("…ornamental and

24  inconsistent use of the term 'brat' on t-shirts is insufficient to demonstrate use in a

25  trademark sense…"); *In re Astro-Gods Inc.*, 223 USPQ 621, 624 (T.T.A.B. 1984)

26  (composite mark comprised of "ASTRO GODS" above images of deities

27  decorating front of shirts not likely to be perceived as anything other than

28  ornamentation); *In re Dimitri's Inc.*, 9 USPQ2d 1666 (T.T.A.B. 1988) (composite

1  mark comprised of "SUMO" and stylized representations of sumo wrestlers on t-
2  shirts and baseball caps is merely ornamental feature of the apparel); *see also*
3  *Grupke v. Linda Lori Sportswear, Inc*., 921 F. Supp. 987, 996 (E.D.N.Y. 1996)
4  (designs and drawings of cats on t-shirts are not source identifiers).

5      The Disputed Smiley carries no distinctive message of origin to consumers
6  and is incapable of carrying such a message given the smiley face's widespread use
7  as decoration for any number of products, including clothing, offered by numerous
8  different entities. SUF ¶¶119-126. The consuming public is accustomed to
9  encountering smiley face designs on clothing, and simply does not regard the
10 Disputed Smiley as an indicia of origin for goods originating *exclusively* with the
11 Plaintiff. This is confirmed by the consumer survey conducted by Ms. Butler. SUF
12 ¶¶113-118. Any unsubstantiated, sporadic use of the Disputed Smiley on hangtags
13 in an unspecified geographic territory *after* MJI products entered the market does
14 not alter this result. *See D.C. One Wholesaler, Inc. v. Chien*, 120 U.S.P.Q.2D
15 (BNA) 1710, 1716 (T.T.A.B. Oct. 4, 2016) (purported mark "I ♥ DC" "does not
16 create the commercial impression of a source indicator, even when displayed on a
17 hangtag or label" in light of "ubiquity" and "widespread ornamental use" of similar
18 expressions on apparel and other products); *Amusement Art, LLC v. Life Is*
19 *Beautiful, LLC*, 2016 U.S. Dist. LEXIS 165429, *34-*35 (C.D. Cal. Nov. 29, 2016)
20 (plaintiffs' "limited" and "sporadic" use of design did not "rise to the level of a
21 protectable trademark and granting summary judgment to defendants). The use of
22 the Disputed Smiley here, if any, is merely ornamental and without trademark
23 significance.

24      B.    The Disputed Smiley Is Not Inherently Distinctive and Has Not
25            Acquired Distinctiveness Among Consumers.

26      The spectrum of distinctiveness ranging from generic to fanciful "was
27 created to categorize word marks." McCarthy § 15:9. Where, as here, the mark at
28 issue is a non-word designation, the question of whether such mark is inherently

distinctive or requires secondary meaning "must be judged by guidelines appropriate to the world of images and shapes." *Id.* McCarthy instructs that in the case of non-word designations:

> The issue of inherent distinctiveness is whether the design, shape or combination of elements is so unique, unusual or unexpected in [the] market that one can assume without proof that it will automatically be perceived by customers as an indicator of origin—a trademark.

McCarthy § 15:9. As detailed above, smiley face designs are in overwhelmingly common and pervasive use by numerous third parties in the clothing and apparel market. SUF ¶¶119-126. As a result, the Disputed Smiley is not "so unique, unusual or unexpected" in the field of clothing that one can assume without proof that consumers will perceive it as a source indicator for Plaintiff. *In re Soccer Sport Supply Co.,* 507 F.2d 1400, 1403 (C.C.P.A. 1975*)* (mark consisting of colored pentagons used with soccer balls is not inherently distinctive due to use of "similar" designs on third party soccer balls). Such a conclusion would contravene undisputed survey evidence that the consuming public does not perceive the Disputed Smiley as denoting source. SUF ¶¶113-118.

Even if the spectrum of distinctiveness for word marks was employed to initially categorize the Disputed Smiley as arbitrary or fanciful, the widespread third party use of similar designs on clothing establishes that the design has become generic in the field of clothing. SUF ¶¶119-126. In *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, the Ninth Circuit explained that while the "use of a grape leaf as a mark for wine would normally be inherently distinctive" the widespread use of similar designs by third parties rendered the design "generic." 150 F.3d 1042, 1049 (9th Cir. 1998) ("Because the grape leaf is used widely in the industry, it has lost the power to differentiate brands…there is nothing inherently distinctive in the use of a grape leaf as a mark for wine."). The Disputed Smiley is therefore not inherently distinctive.

24

With respect to acquired distinctiveness, as detailed above, the Disputed Smiley does not function as a trademark, and is not used as a source indicator by Plaintiff. Therefore, achieving secondary meaning is impossible. McCarthy § 15:1 ("[I]f a designation is not used as a mark to identify and distinguish source, it cannot possibly achieve a secondary meaning.").

Proof of secondary meaning "entails vigorous evidentiary requirements." *Express, LLC v. Forever 21, Inc.*, No. CV 09-4514 ODW (VBKx), 2010 U.S. Dist. LEXIS 91705, at *22 (C.D. Cal. Sep. 2, 2010) (citation omitted). A consumer survey measuring actual perceptions of relevant consumers is the best form of direct evidence of secondary meaning. *Levi Strauss & Co. v. Blue Bell*, Inc., 778 F.2d 1352, 1358 (9th Cir. 1985) ("An expert survey of purchasers can provide the most persuasive evidence on secondary meaning.").

Here, despite the necessity of proving acquired distinctiveness to establish its trademark claims, Plaintiff conducted neither its own affirmative survey to measure consumers' recognition of the Disputed Smiley, nor any survey to rebut Defendants' secondary meaning survey. SUF ¶¶111-112. Thus, the only direct evidence of consumer association—Defendants' survey—proves that there is a complete lack of recognition of the Disputed Smiley with any single company among consumers. SUF ¶¶113-118.

While a survey is not required to prove secondary meaning, the absence of a survey regarding this key issue on which Plaintiff bears the burden of proof is notable and, together with the adverse results of Defendants' survey, cuts strongly against a finding that the Disputed Smiley has achieved secondary meaning. *See Echo Drain v. Newsted*, 307 F. Supp. 2d 1116, 1122 (C.D. Cal. 2003) (lack of expert reports or surveys regarding secondary meaning resulted in granting of summary judgment to defendants on Section 43(a) claim because mark was not protectable); *Network Automation, Inc. v. Hewlett-Packard Co.*, No. 08-cv-4675-JFW, 2009 WL 5908719, 2009 U.S. Dist. LEXIS 125835, *20 (C.D. Cal. Sept. 14,

2009) (noting Plaintiff's failure to offer any expert reports or surveys to prove alleged mark had secondary meaning in granting summary judgment to defendants on Section 43 claim); *MZ Wallace Inc. v. Fuller*, No. 18cv2265(DLC), 2018 U.S. Dist. LEXIS 214754, at *32 (S.D.N.Y. Dec. 20, 2018) (finding plaintiff's failure to introduce survey "noteworthy" and this absence, together with defendant's "very unfavorable survey evidence" cut "strongly against" a finding of secondary meaning in disputed trade dress).

The indirect evidence produced in discovery likewise demonstrates that the Disputed Smiley is not a distinctive source indicator. *See Lee v. Mike's Novelties, Inc.*, No. CV 10-2225-VBF, 2011 U.S. Dist. LEXIS 161851, *6, *9 (C.D. Cal. August 2, 2011) (granting summary judgment to defendants where plaintiff failed to produce sufficient evidence of "(1) whether actual purchasers of the product bearing the claimed trademark associate [it] with the producer, (2) the degree and manner of advertising under the claimed trademark, (3) the length and manner of use of the claimed trademark, and (4) whether use of the claimed trademark has been exclusive.").[9] Here, Plaintiff's documents, and the witnesses produced to testify pursuant to Rule 30(b)(6) as to any indirect evidence of secondary meaning, provided little clarity on this key element.

Plaintiff does not run advertising featuring the Disputed Smiley standing alone without the term NIRVANA, and there is no evidence of the type of "look for" advertising directed at educating consumers as to the affiliation of the Disputed Smiley with Plaintiff's business. SUF ¶136. Plaintiff's 30(b)(6) designee claims that apart from the website Nirvana.com, shirts bearing the Disputed Smiley are advertised among several other musical artists by sub-licensees to a "limited

---

[9] *See also Milbank Tweed Hadley & McCloy LLP v. Milbank Holding Corp.*, No. CV 06-187-RGK, 2007 U.S. Dist. LEXIS 97934, *6 (C.D. Cal. Feb. 23, 2007) ("meager" indirect evidence of "established place in the market, amount and manner of advertising, and amount of sales and number of customers" rendered it such that no reasonable jury could find that disputed mark acquired secondary meaning).

4810-7493-9343v.8

audience" in "music magazines." SUF ¶¶137, 143. The only documentary evidence of this alleged advertising is Live Nation catalogues directed to wholesalers from 2016 and 2017. SUF ¶143.

Despite claiming that Plaintiff "sometimes" engages in efforts to evaluate the efficacy of advertising efforts, critical evidence as to whether any such efforts were in fact successful is likewise absent from the record. SUF ¶142. Should Plaintiff attempt to create a triable issue of fact by pointing to generalized sales figures and promotional efforts, this will fail. *See Res. Media, Inc. v. Efficient Frontiers, Inc.*, No. CV 15-05072 DDP (AGRx), 2017 U.S. Dist. LEXIS 4878, at *24 (C.D. Cal. Jan. 11, 2017) (record reflecting that plaintiff "expended efforts to generally promote" products under disputed marks, without evidence as to the efficacy of those efforts, does not substantiate claims regarding consumer perception of disputed marks); *Rubber Stamp Mgmt. v. Kalmbach Publ'g Co.*, No. C06-0277RSM, 2007 U.S. Dist. LEXIS 33367, *12 (W.D. Wash. May 4, 2007) (evidence of ad campaign and expenditures does not create triable issue of fact on secondary meaning in absence of evidence of consumer association of disputed mark with plaintiff's product and look for ads directing consumers to make the desired association).

Plaintiff has proffered no specific facts regarding the length and nature of its use of the Disputed Smiley in the United States in connection with clothing. The evidence in the record suggests that such use has not been substantially continuous or exclusive. SUF ¶135. Even if it had, sales data showing the popularity of products "is not probative evidence of secondary meaning in the trademark for that product." McCarthy § 15:47 (noting "large sales…may be due to dozens of factors" and that "causation between the trademark and the popularity [of a product] must be proved" to make evidence relevant for secondary meaning analysis). Moreover, the overwhelming majority of items bearing the Disputed Smiley contain the term "NIRVANA" adjacent to the Disputed Smiley or in close proximity thereto. SUF

1  ¶¶127-130. Plaintiff's only sales documentation does not distinguish sales of

2  products bearing the Disputed Smiley conjoined with the term "NIRVANA" from

3  sales of products bearing the Disputed Smiley standing alone (if any), rendering

4  any sales data unpersuasive evidence of secondary meaning, as it is equally likely

5  that consumers purchasing product were doing so due to the term NIRVANA. SUF

6  ¶133; *see Johnson & Johnson v. Actavis Group HF*, No. 06 CV 8209-DLC, 2008

7  WL 228061, *2 (S.D.N.Y. Feb. 21, 2008).

8      Moreover, as detailed above, Plaintiff's use of the Disputed Smiley is far

9  from substantially exclusive, as evidenced by the widespread third party use of

10 similar designations with many or all of the elements of the Disputed Smiley. SUF

11 ¶¶119-126. Plaintiff's 30(b)(6) witnesses admittedly lacked any awareness of

12 multiple third party uses uncovered by Defendants' counsel by way of a simple

13 Google search. SUF ¶¶123-125.  Plaintiff acknowledged several of these coexisting

14 third party uses would be "high priority" for enforcement more than three months

15 ago and numerous such uses remain available for sale today, suggesting that

16 Plaintiff either failed to or was rebuffed in enforcing its purported mark. *Id*. Such

17 efforts do not approach the nature and extent of enforcement efforts some courts

18 have found to support a finding of secondary meaning.

19      Finally, Defendants' use of a smiley face design in conjunction with its well-

20 known house marks "MARC JACOBS" and "MJ'' does not demonstrate that the

21 Disputed Smiley has acquired distinctiveness. *Skechers U.S.A., Inc. v. Vans, Inc*.,

22 2007 U.S. Dist. LEXIS 88635, *22 (C.D. Cal. November 20, 2007) ("although

23 [counterclaim defendant] does not deny that it knew of the [counterclaimant's]

24 design when it designed its shoes, the clear labeling of the accused shoes with

25 [defendant's] brand negates any inference of intent to trade on [counterclaimant's]

26 mark."); *Cont'l Lab. Prods. v. Medax Int'l, Inc.*, 114 F. Supp. 2d 992, 1009-10 (S.D.

27 Cal. 2000) ("[D]ecisions have recognized that reasons unrelated to the exploitation

28 of existing secondary meaning often drive" design similarities within a shared field

1   and this may occur for purposes of "exploit[ing] public demand" without

2   "knowledge of [any] secondary meaning and no intention of deceiving

3   consumers.").

4       In sum, the lack of inherent or acquired distinctiveness is a second independent

5   reason why the Plaintiff cannot establish its trademark claims as a matter of law. As

6   things presently stand, there is nothing in the record to demonstrate that the

7   Disputed Smiley is sufficiently distinctive to warrant trademark protection under

8   any theory. Undisputed survey evidence establishes that the consuming public does

9   not associate the Disputed Smiley with a single, anonymous source, let alone with

10  Nirvana. Because no reasonable trier of fact could find that the purchasing public

11  associates the Disputed Smiley with Nirvana or a single anonymous source,

12  Defendants are entitled to adjudication in their favor as a matter of law on the

13  second, third, and fourth causes of action in the Complaint.

14  **V.**     **<u>Even If Plaintiff's Alleged Trademark Was Protectable, There Is No</u>**

15        **<u>Evidence of Consumer Confusion, and Therefore No Infringement</u>**

16      Because the Plaintiff does not own a protectable trademark, the issue of

17  likelihood of confusion need not be reached by the Court. *See e.g. Glass v. Sue*,

18  2010 U.S. Dist. LEXIS 117598, *27 (C.D. Cal. Oct. 22, 2010) (explaining "court

19  need not address whether there is a likelihood of confusion" where plaintiff failed

20  to raise a triable issue regarding validity of asserted mark, and granting summary

21  judgment to defendants on false designation of origin and common law

22  infringement claims). Nevertheless, the absence of sufficient evidence regarding

23  likelihood of confusion provides a third, independent basis on which to grant

24  summary judgment in Defendants' favor.

25      To prevail on Counts II-IV of its Complaint arising under the Lanham Act

26  and California common law, Plaintiff must prove a likelihood of consumer

27  confusion. *Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788, 790 (9th Cir. 1981);

28  *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1080 (9th Cir. 2005). The test

for likelihood of confusion is "whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Reeves v. Gen. Nutrition Ctrs.*, No. SA CV10-01653 JAK (FFMx), 2012 WL 13018362, 2012 U.S. Dist. LEXIS 200682, *5 (C.D. Cal. Apr. 2, 2012); *Rock & Roll Religion, Inc. v. Cels Enters., Inc.*, No. CV09-5258 R (PLAX), 2010 U.S. Dist. LEXIS 147627, *13 (C.D. Cal. Apr. 20, 2010) ("The inquiry re: false designation of origin under 15 U.S.C. §1125(a) is the same likelihood of confusion inquiry as is used for determining trademark infringement" under § 1114). To resist summary judgment, Plaintiff must show "that confusion is probable not merely possible." *M2 Software*, 421 F.3d at 1085 (affirming summary judgment to defendant where plaintiff failed to raise a triable issue as to likelihood of confusion); *Oculu, LLC v. Oculus VR, Inc.*, No. SACV 14-0196 DOC(JPRx), 2015 U.S. Dist. LEXIS 74666, *24 (C.D. Cal. June 8, 2015) ("To avoid summary judgment on a forward confusion claim, a plaintiff must raise a material question of fact regarding whether the buying public is likely to believe that the plaintiff was either the source or sponsor of defendant's product."). The non-exhaustive list of eight factors considered by Ninth Circuit courts evaluating likelihood of confusion are set forth in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979) (the "*Sleekcraft* factors").[10] Applying the eight *Sleekcraft* factors to the present case, it is clear there is no likelihood of confusion.

As a preliminary matter, Plaintiff has failed to present a consumer survey of likelihood of confusion despite having nearly two years and significant financial resources to do so. SUF ¶¶171-173.[11] This "warrants a presumption that the results

---

[10] The factors are: (1) strength of the mark; (2) proximity or relatedness of goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels; (6) type of goods and degree of purchaser care; (7) [defendant's] intent in selecting the mark; and (8) likelihood of expansion [of product lines]. *Walter v. Mattel, Inc.*, 210 F.3d 1108, 1111 (9th Cir. 2000).

[11] Plaintiff self-describes as "one of the best-selling rock bands of all time, with more than 75 million records sold worldwide…" Compl. ¶12. It has retained no

4810-7493-9343v.8

[of such a survey] would have been unfavorable" to Plaintiff. *See e.g. Playboy Eters, Inc. v. Netscape Comm's Corp.*, 55 F. Supp.2d 1070, 1084 (C.D. Cal. 1999) *aff'd* 202 F.3d 278 (9th Cir. 1999); *James R. Glidewell Dental Ceramics v. Keating Dental Arts, Inc.*, No. 11-cv-1309, 2013 WL 655314, 2013 U.S. Dist. LEXIS 24824, *26 (C.D. Cal. Feb. 21, 2013) (same).[12]

A.   <u>Nirvana's Alleged Mark is Weak</u>

The first *Sleekcraft* factor is directed at the conceptual and commercial strength of a mark. *Reeves v. Gen. Nutrition Ctrs.*, No. SA CV10-01653 JAK (FFMx), 2012 WL 13018362, 2012 U.S. Dist. LEXIS 200682, *6 (C.D. Cal. Apr. 2, 2012) (Kronstadt, J.). Here, the conceptual and commercial strength of the unregistered Disputed Smiley designation, if any, is minimal, and no consumer would be confused into believing that Plaintiff, a holding company for the assets of a former rock band, produces MJI luxury womenswear, or that promotional apparel of the band Nirvana is a MJI luxury product. *JL Bev. CO. LLC v. Beam, Inc.*, 318 F. Supp. 3d 1188, (D. Nev. 2018) (explaining assessment of strength factor in context of forward confusion cases).

The Disputed Smiley is a mere variation of a generic symbol used ornamentally, and is conceptually weak due to widespread use of similar designs on clothing by third parties. SUF ¶¶199-206; *see Moose Creek, Inc. v. Abercrombie & Fitch Co.*, 331 F. Supp. 2d 1214, 1225 (C.D. Cal. 2004) (plaintiff's marks

---

less than five attorneys at two different law firms to prosecute this case on its behalf since 2018. *See generally* Dkt. 2:18-cv-10743-JAK-SK.

[12] *See also Allstate Ins. Co. v. Kia Motors Am., Inc.*, No. CV 16-6108 SJO (AGRx), 2017 U.S. Dist. LEXIS 211399, *40 (C.D. Cal. Dec. 22, 2017) ("When a plaintiff fails to perform a survey despite having ample opportunity and resources to do so, the Court may infer that the survey's results would be unfavorable."); *Cairns v. Franklin Mint Co.*, 24 F. Supp.2d 1013, 1041-42 (C.D. Cal. 1998) (plaintiff's failure to conduct a consumer survey when it possessed the financial resources to do so "undermine[d]" its position that disputed advertisements were likely to confuse consumers); *Novadaq Techs. v. Karl Storz GMBH & Co. K.G.*, No. 14-cv-04853-PSG, 2015 U.S. Dist. LEXIS 170423, *11 (N.D. Cal. Dec. 18, 2015) ("[A] trier of fact may be entitled to presume that one party's failure to conduct a survey concedes that the survey evidence would be unfavorable to it.") (citation omitted).

31

consisting of pictures of moose "conceptually weak" in "crowded field" where "moose very similar in appearance to the moose depicted in Plaintiffs' marks" used on "many different brands of clothing…").

With respect to commercial strength, directed at measuring "actual marketplace recognition" *Reeves*, 2012 U.S. Dist. LEXIS at *7, undisputed survey evidence establishes an extraordinarily low level of recognition among prospective purchasers of Nirvana products. SUF¶¶113-118. Plaintiff has not engaged in any analysis regarding the strength of its purported mark—either with or without the conjoined term "NIRVANA"—and has failed to put forth any survey of its own. SUF ¶¶111-112. As discussed *supra*, the Disputed Smiley lacks inherent or acquired distinctiveness.

For years, the smiley face symbol, and refinements or variations of this commonly-adopted and well-known form of ornamentation for goods, have been in overwhelmingly common and pervasive use in the United States in connection with goods and services identical or related to those of Plaintiff. SUF ¶¶199-206; *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1088 (9th Cir. 2005) ("Use of similar marks by third-party companies in the relevant industry weakens the mark at issue."). The apparel market in particular is saturated with products of numerous companies bearing designs similar or nearly identical to the Disputed Smiley. SUF ¶¶199-206. This extensive third party use establishes the weakness of the claimed mark, and shows that consumers do not view the Disputed Smiley or similar designs as source identifiers for Plaintiff or any one company. *See Miss World (UK), Ltd. v. Mrs. Am. Pageants, Inc.*, 856 F.2d 1445, 1449 (9th Cir. 1988) *abrog. on other grounds by Eclipse Assocs. Ltd. v. Data Gen. Corp.*, 894 F.2d 1114, 1116 n.1 (9th Cir. 1990) *quoting* McCarthy § 11:85 ("A mark that is hemmed in on all sides by similar marks on similar goods or services cannot be very "distinctive." It is merely one of a crowd of similar marks. In such a crowd, customers will not

4810-7493-9343v.8

likely be confused between any two of the crowd and may have learned to carefully pick out one from the other.").

Plaintiff's rights in the Disputed Smiley, if any, are weak and narrowly circumscribed, and certainly do not encompass all variants of a smiley face design with a tongue sticking out. *See* McCarthy § 7:25 ("Even if a design qualifies for trademark protection, because of extensive third party use of similar designs, the scope of exclusivity may be narrow."); *Rock & Roll Religion, Inc. v. Cels Enters., Inc.*, No. CV09-5258 R (PLAX), 2010 U.S. Dist. LEXIS 147627, *9-*10 (C.D. Cal. Apr. 20, 2010) (widespread use of "laundry" formative marks in clothing industry rendered it such that "each member of the crowd is relatively weak in its ability to prevent use by others."); McCarthy § 11:85 (explaining, e.g., in the field of athletic shoes "widespread use by different firms of a plethora of similar stripe designs has narrowed the breadth of protection afforded each mark such that any one such design on sports shoes is limited to substantially that identical design…mean[ing] that competitors…may come closer to such weak marks without violating the owner's rights…"). Therefore, this factor favors Defendants. *Lipoplus, Inc. v. Kohan*, No. CV 18-10220 PSG (AGRx), 2019 U.S. Dist. LEXIS 229382, *12 (C.D. Cal. Dec. 19, 2019) (strength factor favors Defendants where similar marks in widespread use on similar goods and "Plaintiff has made no showing of secondary meaning that could fortify its argument for more protection.").

   B.   <u>Marc Jacobs and Nirvana Goods Are Not Sold in Proximity in the Marketplace.</u>

The second *Sleekcraft* factor requires the Court to evaluate whether the parties' respective products are: "(1) complementary; (2) sold to the same class of purchasers; and (3) similar in use and function." *Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1150 (9th Cir. 2011). Here, while both

1   parties sell clothing—albeit at extremely divergent price points, and to different

2   consumers in different outlets—there is no overlap between their offerings.

3        MJI is a luxury fashion brand designed by Mr. Marc Jacobs, a much heralded

4   American fashion designer. SUF ¶148. It is part of the world's leading luxury

5   goods conglomerate, the LVMH Group. *Id*. The brand creates, promotes, and sells

6   womenswear, shoes, handbags, accessories, cosmetics, and fragrances throughout

7   the world. SUF ¶149. MJI luxury ready-to-wear, the Redux Grunge Collection and

8   the Accused Products at issue here, are sold via its MJI-branded brick and mortar

9   retail stores, its e-commerce website located at www.marcjacobs.com, and high-end

10   third party retailers such as Bergdorf Goodman, Saks Fifth Avenue, Neiman

11   Marcus, Net-A-Porter, SSense, Dover Street Market, and Corso Como. SUF ¶150-

12   151. MJI' goods are labeled with MJI's famous trademarks, including, among

13   others, the MARC JACOBS house mark. MJI brand indicia appears all over the

14   Accused Products, including the famous "MARC JACOBS" house mark and "MJ"

15   on the outside of the apparel, and "MJI" on the inner tag, hangtag, and hangtag

16   fastener. SUF ¶153, 163. The Accused Products were offered at retail at the

17   following price points: (i) $195.00 (sweatshirt); (ii) $115.00 (t-shirt); and (iii)

18   $45.00 (socks). SUF ¶¶164-166. Items in the Redux Grunge Collection retailed for

19   up to $2,400.00. SUF ¶150. MJI customers seek out MJI products for fashion. SUF

20   ¶154. As with all MJI collections, great care went into marketing and

21   merchandising the Redux Grunge Collection with meticulous attention to detail,

22   including providing its retail partners with the detailed origin story of the collection

23   steeped in Marc Jacobs history, along with directives on which particular buttons of

24   a garment are to be buttoned  SUF ¶155.

25        Plaintiff is not a fashion brand and does not design clothing. SUF ¶174, 181.

26   Plaintiff is a holding company for the purported assets of the performing rock band

27   formerly known as Nirvana. *Id*. It licenses the use of "NIRVANA" to third parties,

28   such as Live Nation, the ticket sales and concert producer, to sell Nirvana-branded

promotional merchandise to fans of the band. SUF ¶179-180. Nirvana band merchandise is sold at budget and mass-market retailers such as Target, Wal-Mart, Kohl's, H&M, J.C. Penny, Hot Topic, and Forever 21. SUF ¶183. The average price point of Plaintiff's branded merchandise is $15-$75. SUF ¶185. The retail price of the t-shirt, sweatshirt, and socks bearing the Disputed Smiley adjacent to NIRVANA are as follows: (i) $44.99 (sweatshirt); (ii) $24.99 (t-shirt); and (iii) $15.00 (socks). SUF ¶¶186-189. Nirvana merchandise is consumed by fans of Nirvana music seeking to communicate that they are fans of the band. SUF ¶179.

In sum, MJI and Nirvana products are directed to distinct classes of consumers, at different outlets. The price points of MJI and Nirvana products diverge significantly, with the MJI sweatshirt and t-shirt nearly five times the price of the Nirvana sweatshirt and t-shirt, and the MJI socks three times the price of Nirvana socks. MJI customers seek out MJI products for fashion whereas consumers of Nirvana goods are fans of the band simply want merchandise reflecting that. As a result, consumers will not encounter both MJI and Nirvana products at the same time. This factor favors Defendants. Moreover, even if the parties' goods were proximate, this would not preclude summary judgment in Defendants' favor. *See e.g. Lipoplus, Inc. v. Kohan*, No. CV 18-10220 PSG (AGRx), 2019 U.S. Dist. LEXIS 229382, *13, *20 (C.D. Cal. Dec. 19, 2019) (granting summary judgment to Defendants on false designation and other Lanham Act claims despite fact that both parties offer plastic surgery services).

C.    The Parties' Respective Designations Are Not Similar

Evaluation of the third *Sleekcraft* factor requires consideration of marks, not in isolation, but in their entireties "in light of the way the marks are encountered in the marketplace and the circumstances surrounding the purchase of the [products bearing the marks]." *Lindy Pen Co. v. Bic Pen Corp.*, 725 F.2d 1240, 1245 (9th Cir. 1984) (differences in appearance of marks in marketplace including "dominance" of parties' house marks on products themselves and "all packaging and promotional

material" made defendant's "Auditor's fine point" mark "readily distinguishable" from plaintiff's "Auditor's" mark and not confusingly similar).

The designations at issue here plainly are not identical. SUF ¶¶175, ¶¶164-166. Any similarities between the parties' respective designs are explained by the generic placement of quintessential elements of the commonplace smiley face design, namely, a line for an upturned mouth with a tongue, situated within a non-distinctive geometric circle. *Lipoplus, Inc. v. Kohan*, No. CV 18-10220 PSG (AGRx), 2019 U.S. Dist. LEXIS 229382, *14 (C.D. Cal. Dec. 19, 2019) (similarity factor favors defendants where common element of marks is one descriptive term). These shared elements are merely an aesthetic feature of the MJI Accused Products that would not be perceived as indicating source.

Critically, as in *Lindy*, the marks here are readily distinguishable when considered in the context in which the marks are encountered in the marketplace and in view of the circumstances surrounding the purchase of products bearing the marks. Here, the term NIRVANA is conjoined with the Disputed Smiley, emblazoned across the front of apparel products bearing the Disputed Smiley. SUF ¶207-210.  Nirvana products bearing the Disputed Smiley are encountered exclusively in marketplaces permitting visual examination of the products themselves—either on Nirvana's branded e-commerce site www.nirvana.com, retailer e-commerce sites that visually depict the products offered for sale, or in brick and mortar retail store settings. SUF ¶183. Similarly, MJI brand indicia appears all over the Accused Products, including the famous "MARC JACOBS" house mark and "MJ" on the outside of the apparel, and "MJI" on the inner tag, hangtag, and hangtag fastener. SUF ¶163. MJI Smiley Products are encountered exclusively in marketplaces permitting visual examination of the apparel itself. SUF ¶150. This factor favors Defendants.

D.    There is No Evidence of Actual Consumer Confusion

The Ninth Circuit has advised that "lack of evidence about actual confusion after an ample opportunity for confusion can be a powerful indication that the junior trademark does not cause a meaningful likelihood of confusion." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 843 (9th Cir. 2002) *quoting Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 228 (2d Cir. 1999) (affirming summary judgment for defendant due to the absence of likelihood of confusion); *Sleekcraft*, 599 F.2d at 353 (absence of confusion factor weighs heavily "when the particular circumstances indicate such evidence should have been available.").

Here, despite two years of coexistence, there has been no actual confusion among consumers. SUF ¶¶171-173. To date, Nirvana has produced no consumer survey, nor any other evidence that consumers have actually been confused by MJI products in the marketplace. *Id*. Accordingly, this factor "heavily" favors Defendants. *Rock & Roll Religion, Inc. v. Cels Enters., Inc.*, No. CV09-5258 R (PLAX), 2010 U.S. Dist. LEXIS 147627, at *11-12 (C.D. Cal. Apr. 20, 2010) ("The absence of evidence of actual confusion can be weighed heavily when the particular circumstances indicate that such evidence should have been available."); *Icebreaker Ltd. v. Gilmar S.P.A.*, 911 F.Supp.2d 1099, 1107 (D. Or. 2012) (factor favors alleged infringer where counterclaim plaintiff failed to "point to any evidence on the record of consumer confusion either through survey evidence or anecdotal evidence.").

E.  The Parties' Respective Marketing Channels Differ

Under the fifth *Sleekcraft* factor "the Court considers the location of where the goods or services are sold as well as the sales and marketing methods employed." *Oculu, LLC v. Oculus VR, Inc.*, No. SACV 14-0196 DOC(JPRx), 2015 U.S. Dist. LEXIS 74666, at *45 (C.D. Cal. June 8, 2015). The fact that both parties sell goods online and at a retail level "does not establish convergent marketing channels." *Rise Basketball Skill Dev., LLC v. K Mart Corp.*, No. 16-cv-04895-WHO, 2017 U.S. Dist. LEXIS 179695, *16-*17 (N.D. Cal. Oct. 27, 2017).

Here, the parties sell their goods through different channels and employ different marketing strategies. MJI sells its clothing at MJI-branded stores, through high-end retailers, and online direct to consumer via its branded e-commerce website marcjacobs.com. SUF ¶150. MJI goods, and the Redux Grunge Collection in particular, was marketed via digital media (including Instagram), in-store installations, on billboards, wall murals and taxi tops, and in fashion magazines, among other outlets. SUF ¶160. Intricate and thoughtful brand stories regarding the collection are communicated in order to market the products. SUF ¶155.

In contrast, the Plaintiff itself does not design or sell any products. SUF ¶174. It licenses unidentified indicia to its exclusive licensee Live Nation, who in turn manufactures products that are offered for sale at mass-market and budget retailers like Target, Wal-Mart, Primark, Kohl's, H&M, J.C. Penny, Hot Topic, and Forever 21 and online at nirvana.com. Products bearing the Disputed Smiley are advertised exclusively on the Nirvana-branded website nirvana.com, and in music magazines. SUF ¶¶216-223. MJI clothing is not sold at mass-retailers that sell Nirvana-branded clothing. SUF ¶183. The MJI e-commerce site does not offer Plaintiff's products, nor does Plaintiff's website offer products of MJI. SUF ¶151. The fact that both parties sell products online and at a retail level does not constitute evidence of marketing channel overlap. *Rise Basketball Skill Dev., LLC v. K Mart Corp.*, No. 16-cv-04895-WHO, 2017 U.S. Dist. LEXIS 179695, *16-*17 (N.D. Cal. Oct. 27, 2017). This factor favors Defendants.

F.   Customers of Marc Jacobs Products Are Highly Sophisticated and Exercise a High Degree of Care in Making Purchasing Decisions

MJI products—luxury women's ready-to-wear—are the relevant products for purposes of evaluating consumer sophistication and purchaser care. *See Rise Basketball Skill Dev., LLC v. K Mart Corp.*, No. 16-cv-04895-WHO, 2017 U.S. Dist. LEXIS 179695, *17 (N.D. Cal. Oct. 27, 2017) (in forward confusion cases, allegedly infringing products are "the relevant products" for purposes of evaluating

sixth *Sleekcraft* factor). The Ninth Circuit has repeatedly held that consumers of expensive products can be expected to exercise a high degree of care in making purchasing decisions. *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 353 (9th Cir. 1979) ("[W]hen the goods are expensive, the buyer can be expected to exercise greater care in his purchases.").[13] In particular, purchasers of clothing are often found to exercise a high degree of care in their buying decisions, especially where luxury goods are concerned. *See e.g. Icebreaker Ltd. v. Gilmar S.P.A.*, 911 F. Supp.2d 1099, 1107 (D. Or. 2012) (finding consumers likely to exercise higher degree of care when purchasing expensive designer clothing ranging in price from approximately $180-$3,000); *Rock & Roll Religion, Inc. v. Cels Enters., Inc.*, No. CV09-5258 R (PLAX), 2010 U.S. Dist. LEXIS 147627, at *12 (C.D. Cal. Apr. 20, 2010) ("[P]ersons purchasing clothing and apparel products generally exercise a relatively high degree of care."); *Saks & Co. v. Hill*, 843 F. Supp. 620, 624 (S.D. Cal. 1993) (same); *Kookai, S.A., v. Shabo*, 950 F.Supp. 605, 609 (S.D.N.Y. 1997) ("…fashion-conscious" consumers "are likely to exercise a significant degree of care in purchasing their clothing, since the name of the particular designer is important in the fashion world.").

MJI offers collections of designer clothing to fashion and brand conscious consumers. SUF ¶154. The intricate story behind each collection is communicated from MJI to its retailers for purposes of providing its clientele with the brand story and understanding they desire. SUF ¶155. MJI clothing is generally quite expensive in price, going up to as much as $2,400 per item. SUF ¶¶159, 164-166. Indeed, the MJI t-shirt at issue was more than four more expensive than a Nirvana t-shirt, the sweatshirt was more than four times more expensive that a Nirvana sweatshirt, and

---

[13] *See also E&J Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1293 (9th Cir. 1992) ("When goods are expensive, it is assumed that buyers will exercise greater care in their purchases."); *Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 937 (9th Cir. 2015) (finding it "undisputed" that watches costing several hundred dollars are expensive)

1   the socks were three times more expensive than Nirvana socks. As in *Icebreaker*,

2   this clothing is the type for which consumers would exercise a high degree of care

3   due to the price and the designer. 911 F. Supp.2d at 1110. Finally, given the

4   conspicuous brand indicia emblazoned on the products (SUF ¶163), a consumer

5   using *any* degree of care is easily positioned to determine that MJI goods originate

6   with MJI, as opposed to some other source. Accordingly, this factor favors

7   Defendants.

8        G.      There Is No Evidence of Intent to Profit By Confusing Consumers

9        MJI did not utilize two non-distinctive elements of a generic smiley face

10  design—a geometric circle, and an upturned mouth with its tongue extended—with

11  knowledge that it was a trademark belonging to Nirvana, or with the intent to profit

12  by confusing consumers. "In order to raise the inference of a likelihood of

13  confusion, a plaintiff must show that the defendant intended to profit by confusing

14  consumers." *Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788, 791 n.2 (9th Cir.

15  1981) (noting intent to capitalize is insufficient and finding "the contention that

16  [defendant] intend[ed] to confuse consumers [ ] implausible" where defendant used

17  BAGZILLA with its house mark "only to make a pun" referencing plaintiff's

18  GODZILLA mark).

19      Nirvana's trademark is not registered at the state or federal level. SUF ¶177.

20  The MJI house marks appeared no less than four times on the products at issue.

21  SUF ¶163 ; *Lindy Pen Co. v. Bic Pen Corp.*, 725 F.2d 1240, 1245 (9th Cir. 1984)

22  (finding use of "prominent house marks and logos" weighed against likelihood of

23  confusion). MJI is a world famous and widely respected fashion house, with no

24  intention of trading on mass-market retail clothing of lower quality and price. *M2*

25  *Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1085 (9th Cir. 2005) (intent factor

26  favors defendant where defendant had decades of experience and expertise

27  producing the relevant goods such that no trier of fact could find it had any

28  intention of capitalizing on plaintiff's federally registered mark). As set forth

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ON
COPYRIGHT VALIDITY

4810-7493-9343v.8

above, the consuming public does not associate the Disputed Smiley—a mere variation on a commonplace symbol in widespread commercial use in connection with clothing and other products—with Plaintiff. It necessarily follows that MJI did not use an iteration of that design for purposes of profiting from any goodwill of Nirvana. Put simply, Nirvana has no brand recognition in the Disputed Smiley to appropriate. This factor favors Defendants.

> H.   There Is No Evidence That The Parties Will Expand to Compete in the Same Market

The final *Sleekcraft* factor examines whether either party may expand its business to compete with the other. 599 F.2d at 354. MJI, a luxury brand, does not intend to license its name in connection with the offering of inexpensive clothing at mass-market retailers. There is nothing in the record to suggest that Nirvana intends to enter the luxury fashion market. SUF ¶248. Therefore, this factor favors Defendants. *Rise Basketball Skill Dev., LLC v. K Mart Corp.*, No. 16-cv-04895-WHO, 2017 U.S. Dist. LEXIS 179695, *21 (N.D. Cal. Oct. 27, 2017).

In sum, there is no evidence in the record that consumers are likely to associate the products of MJI and Nirvana, or conclude that such products originate with the same source. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, (9th Cir. 2005).

## VI.   Nirvana's Claims Under California Common Law Similarly Fail

The absence of a valid, protectable trademark is dispositive of Plaintiff's remaining claims for trademark infringement and unfair competition under California common law. *Amusement Art, LLC v. Life Is Beautiful, LLC*, 2016 U.S. Dist. LEXIS 165429, *23 (C.D. Cal. November 29, 2016) (granting summary judgment to defendants on Lanham Act and common law infringement and unfair competition claims where plaintiff's asserted mark "is not actually a source identifier…"). The lack of likelihood of confusion is similarly dispositive. *Rock & Roll Religion, Inc. v. Cels Enters., Inc.*, No. CV09-5258 R (PLAX), 2010 U.S. Dist.

LEXIS 147627, at *14 (C.D. Cal. Apr. 20, 2010) ("The test for trademark infringement and unfair competition under state, federal, and common law is whether there will be a likelihood of confusion…Because the Court finds no likelihood of confusion…[counterclaim defendant] is entitled to judgment on all Common Law Trademark Infringement and Unfair Competition claims.").

As the foregoing demonstrates, Plaintiff has failed to satisfy its burden of presenting the Court with evidence supporting the following two key elements of its trademark claims: (1) the existence of a valid, protectable trademark; and (2) likelihood of consumer confusion. As such, Defendants are entitled to adjudication in their favor as a matter of law on the second, third, and fourth causes of action in the Complaint.

## VII.   This Is an Exceptional Case Under the Lanham Act, and Defendants Should Be Awarded Their Attorneys' Fees

The matter of Robert Fisher's ownership of the designation in which Plaintiff claims trademark rights is currently pending. Should the Court rule in Defendants' favor on the instant Motion, Defendants respectfully seek additional briefing to demonstrate to the Court why this case is exceptional so as to qualify Defendants for an award of their attorneys' fees.

## VIII.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant the present motion for summary judgment, dismissing all of Plaintiff's claims with prejudice, in their entirety, as a matter of law, and granting Defendants' counterclaim for declaratory relief, in its entirety, as a matter of law.

4810-7493-9343v.8

1    DATED:  November 2, 2020        KELLEY DRYE & WARREN LLP
                                     Michael J. Zinna (*pro hac vice*)
2                                    Whitney M. Smith (*pro hac vice*)
                                     Kerianne Losier (*pro hac vice*)
3                                    Stephanie A. Grob (*pro hac vice*)
                                     Andrew W. Homer
4                                    Tahir L. Boykins

5                                    By   */s/ Michael J. Zinna*
                                          Michael J. Zinna
6
                                     *Attorneys for Defendants Marc Jacobs*
7                                    *International, LLC; Saks Incorporated, d/b/a*
                                     *Saks Fifth Avenue; and Neiman Marcus*
8                                    *Group Limited, LLC*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4810-7493-9343v.8