Inge De Bruyn (SBN 327912)
inge.debruyn@modo-law.com
MODO LAW, P.C.
4218 Via Padova
Claremont, CA 91711
Phone: 323-983-2188
Fax: 323-693-0881

*Attorney for Plaintiff-in-Intervention, Robert Fisher.*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NIRVANA L.L.C., a Washington Limited Liability Company,<br><br>　　Plaintiff and Counter-defendant,<br><br>　　v.<br><br>MARC JACOBS INTERNATIONAL L.L.C., a Delaware Limited Liability Company; SAKS INCORPORATED, d/b/a SAKS FIFTH AVENUE, a Tennessee Corporation; NEIMAN MARCUS GROUP LIMITED L.L.C., a Delaware Limited Liability Company; and Does 1 through 10,<br><br>　　Defendants and Counterclaimants.<br>_____<br><br>Robert FISHER,<br><br>　　Plaintiff-in-Intervention,<br><br>　　v.<br><br>NIRVANA L.L.C., a Washington Limited Liability Company,<br><br>　　Defendant-in-Intervention. | Case No. 2:18-cv-10743-JAK-JK<br><br>**PLAINTIFF-IN-INTERVENTION'S SUPPLEMENTAL BRIEF REGARDING MOTIONS FOR SUMMARY JUDGMENT [DKTS. 98, 125, 214]**<br><br>The Honorable John A. Kronstadt<br><br>Hearing Date: n/a<br>Hearing Time: n/a<br>Courtroom: 10B |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................1

II. LEGAL STANDARD .........................................................................................2

III. ARGUMENT .....................................................................................................2

    1) Copyright assignments can only operate prospectively. ............................2

    2) A written instrument that memorializes a prior oral grant is not a retroactive assignment; it is a type of writing that, in certain situations, may satisfy the requirements of 17 U.S.C. §204(a). ...................................5

    3) Nirvana cannot invoke work-for-hire when Geffen never did .....................7

IV. CONCLUSION ..................................................................................................7

## TABLE OF AUTHORITIES

**Cases**

*Barefoot Architect, Inc. v. Bunge*,
  632 F.3d 822, 828-829 (3d Cir. 2011)..............................................................4, 5

*Davis v. Blige*,
  505 F.3d 90 (2d Cir. 2007)..............................................................................3, 4

*Eden Toys, Inc. v. Florelee Undergarment Co.*,
  697 F.2d 27, 36 (2d Cir. 1982).............................................................................5

*Effects Associates, Inc. v. Cohen*,
  908 F.2d 555, 556 (9th Cir. 1990).........................................................................2

*Jordan Video, Inc. v. 144942 Canada Inc.*,
  617 F.3d 1146, 1157 (9th Cir. 2010)....................................................................7

*Konigsberg Int'l, Inc. v. Rice*,
  16 F.3d 355, 356 (9th Cir. 1994).........................................................................2

*Magnuson v. Video Yesteryear*,
  85 F.3d 1424, 1429 (9th Cir. 1996).....................................................................5

*N. Jersey Media Grp. Inc. v. Pirro*,
  13 Civ. 7153 (ER) (S.D.N.Y. Mar. 2, 2015) .......................................................4

*Palmer/Kane LLC v. Rosen Book Works LLC*,
  204 F. Supp. 3d 565, 576-78 (S.D.N.Y. 2016)....................................................4

*Radio Television Espanola S.A. v. New World Entertainment, Ltd.*,
  183 F.3d 922, 926-27 (9th Cir. 1999).................................................................2

*Valente-Kritzer Video v. Pinckney*,
  881 F.2d 772, 775 (9th Cir. 1989).......................................................................2

**Statutes**

17 U.S.C. §204(a)..................................................................................................2, 4

**TO THE HONORABLE JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE, AND ALL PARTIES IN INTEREST:**

Pursuant to this Court's Order of July 27, 2023 [Dkt. 230] ("Order"), Robert Fisher ("Fisher") submits this supplemental brief regarding the pending Motions for Summary Judgment [Dkts. 98, 125, 214], as follows:

## I. INTRODUCTION

In its Order, the Court requested the parties to address whether Geffen, if it owned the Smiley Face design (the "Design") at the time of its creation, could assign that interest to Plaintiff in January 2020 and whether that assignment would operate retroactively, considering a line of cases in this and other circuits involving the (in)validity of so-called retroactive transfers.

The Court's inquiry stems from the "Acknowledgment" made by UMG Recordings, Inc. ("UMG") on January 22, 2020 [Dkt. 100-12]—*i.e.,* after Nirvana had already filed suit against Defendants and after it had learned that Robert Fisher, not Kurt Cobain, created the Design. It states in relevant part:

> "*Geffen acknowledges and agrees that to the best of its knowledge, all copyright and related rights in the Nirvana 'Smiley Face' design and 'Happy Face' t-shirt design depicted and described above are now and at all times have been owned by Nirvana, Inc. or its successor Nirvana, L.L.C. For avoidance of doubt, to the extent necessary, Geffen retroactively grants and assigns all right, title and interest in and to the 'Smiley Face' design depicted above and the 'Happy Face' t-shirt whose design was registered for copyright in the name of Nirvana, Inc., Reg. No. VA 564-166, in 1993, and which includes the 'Smiley Face' design, to Nirvana, L.L.C. and its predecessors, effective as of the date that work was created in 1991.*"

Since there is no dispute that, in 2020, "Geffen"[1] had long ceased to exist, it would have been impossible, as a practical matter, for "Geffen" to grant any rights to anyone in 2020—whether retroactively or prospectively. Insofar as this is what the Acknowledgment *literally* purports to do, the assignment is, of course, invalid

---

[1] UMG purports to be the successor to the David Geffen Company. Yet, the record shows that there were at least two "Geffen" entities in existence [*see* Dkt. 226, SUF 238-239, 281, 436]. Nirvana provided no evidence as to what Geffen entity would have been Fisher's alleged employer, nor did it provide any evidence of the proper chain-of-title from *any* Geffen entity to UMG.

as a matter of law. However, Fisher infers from the Court's Order that it would be willing to look beyond the actual words of the Acknowledgment (despite it being drafted by two lawyers [Dkt. 226, SUF 26]), and entertain its validity as a copyright assignment from UMG to Nirvana. As such, Fisher understands the Court's inquiry to be whether UMG — *if* Plaintiff could establish both (i) copyright ownership of the Design by a Geffen entity at the time of its creation and (ii) UMG's status as a successor to that entity, *quod non* — could have assigned its ownership interest to Nirvana in 2020 and whether that assignment would have operated retroactively to 1991. As shown below, both questions need to be answered in the negative.

## II.      LEGAL STANDARD

17 U.S.C. §204(a) states: "A transfer of copyright ownership … is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed." Since the law is clear, the Ninth Circuit consistently finds copyright transfers invalid that do not comply with § 204(a). *Radio Television Espanola S.A. v. New World Entertainment, Ltd.*, 183 F.3d 922, 926-27 (9th Cir. 1999); *Konigsberg Int'l, Inc. v. Rice*, 16 F.3d 355, 356 (9th Cir. 1994); *Effects Associates, Inc. v. Cohen*, 908 F.2d 555, 556 (9th Cir. 1990); *Valente-Kritzer Video v. Pinckney*, 881 F.2d 772, 775 (9th Cir. 1989).

"[T]he writing must ensure that the author 'will not give away his copyright inadvertently' and 'forces a party who wants to use the copyrighted work to negotiate with the creator to determine precisely what rights are being transferred and at what price.'" *Konigsberg*, 16 F.3d at 356-57 (citing *Effects*, 908 F.2d at 557). "Section 204's writing requirement not only protects authors from fraudulent claims, but also 'enhances predictability and certainty of ownership—Congress's paramount goal when it revised the Act in 1976." *Id*.

## III.     ARGUMENT

### 1)      Copyright assignments can only operate prospectively.

The Copyright Act of 1976 is silent on retroactive transfers. Thus, it became

the courts' duty to interpret the validity of a retroactive transfer.

*Davis v. Blige*, 505 F.3d 90 (2d Cir. 2007) is the first, and seemingly only, opinion from a federal court of appeals that has squarely addressed the validity of retroactive copyright transfers.[2]

The question in *Davis* was "whether a copyright co-owner … can convey his copyright interest to a third party retroactively, thereby defeating a claim of infringement against that third party by another co-owner." *Davis*, 505 F.3d at 101. After an extensive treatment of the issue, the Second Circuit found that it could not. In a unanimous panel decision, the Court broadly held that, under federal copyright law, "a license or assignment in copyright can only act prospectively*" (Id.* at 97-98) and that "retroactive transfers violate … basic principles of tort and contract law, and undermine the policies embodied by the Copyright Act" *(Id.* at 104).

While there are a few post-*Davis* decisions in which lower courts were reluctant to apply the *Davis* holding outside of a co-ownership context, the district court in *Palmer/Kane v. Rosen* rightly questioned its/their discretion to do so:

> "The Second Circuit 'made clear that its holding extended beyond the context of coownership.' … It did so by repeatedly casting its holding in broad terms, not limited to any one particular set of facts. *See Davis*, 505 F.3d at 103 ('Licenses ... are prospective ....'); *see id.* at 104 ('[W]e hold that a license or assignment in copyright can only act prospectively.'); *see id.* at 104 ('Licenses in patent and copyright function similarly ... and thus it is appropriate to consider copyright licensing, like patent licensing, prospective in nature.'); *see id.* at 104–05 ('There is little from a policy perspective to recommend a rule that allows retroactive licenses or assignments, and there are two strong reasons disfavoring them …') …
>
> As a threshold matter, this Court is not of the view that it has the discretion to narrow the scope of *Davis*'s holding on the basis that *Davis* was animated by a set of considerations that are arguably not relevant here. That, of course, begs the question whether what *Davis* described as its holding—"that a license or assignment in copyright can only act prospectively"—was truly its holding in the precedential sense … While the metaphysical line between dictum and holding 'is not always easy to draw,' 'where a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law

---

[2] As *Davis* makes clear, retroactive assignments are to be distinguished from both (a) written instruments that memorialize a prior oral grant (*Davis*, 505 F.3d at 108 (*see* below) and (b) negotiated settlements that recognize a past unauthorized use but waive a settling owner's accrued claims of liability, usually in return for the payment of liquidated damages (*Davis*, 505 F.3d at 102).

of the circuit, regardless of whether doing so is necessary in some strict logical sense.' … Such is the case here, where the principle established by the Second Circuit in *Davis* —and identified by that Court as its holding— is unambiguous and the result of full judicial consideration."

*Palmer/Kane LLC v. Rosen Book Works LLC*, 204 F. Supp. 3d 565, 576-78 (S.D.N.Y. 2016) (citations omitted). *See also N. Jersey Media Grp. Inc. v. Pirro*, 13 Civ. 7153 (ER), at *10 n.6 (S.D.N.Y. Mar. 2, 2015).

The *Davis* Court noted two policy reasons that counsel against retroactive copyright transfers and licenses: (1) permitting retroactivity would inject uncertainty and unpredictability into copyright ownership, and (2) it would encourage infringement by allowing it to be erased from history. *Davis*, 505 F.3d at 105-106. Similar policy concerns are present in this context.

First, Section 204(a) of the Copyright Act requires a valid transfer of copyright to be in writing. Section 204(a) was enacted in 1978 to serve (at least)[3] the same goals as any state statute of frauds: "Just as requiring a written contract prevents enforcement of a nonexistent obligation through the exclusion of fraudulent, perjured, or misremembered evidence, requiring a writing for enforcement of a copyright assignment 'enhances predictability and certainty of ownership' by preventing litigants from enforcing fictitious 'agreements' through perjury or the testimony of someone with a faulty memory." *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 828-829 (3d Cir. 2011) (citation omitted).

While courts may differ on the question of whether an oral transfer can be given legal effect by a subsequent signed writing and, if so, whether that writing needs to be contemporaneous,[4] **all courts do agree that, in any event, "the past**

---

[3] The Ninth Circuit finds Section 204(a) to be even broader: "Although section 204 is often referred to as the 'copyright statute of frauds,' it actually differs materially from state statutes of frauds. While the latter may be satisfied by a writing not intended as a memorandum of contract, not communicated to the other party, and even made in pleadings or testimony years after the alleged agreement, … section 204 may not. State statutes of frauds serve a purely evidentiary function—to prevent enforcement through fraud or perjury of fictitious agreements. … Thus, agreements subject to statutes of frauds may be perfectly valid, yet unenforceable without evidence of a writing. By contrast, a transfer of copyright is simply 'not valid' without a writing." *Konigsberg*, 16 F.3d at 357.

[4] *See, e.g., Konigsberg*, 16 F.3d at 357 (holding that to satisfy Section 204(a)

**transfer must have actually occurred**." *Barefoot Architect*, 632 F.3d at 830-831. *See also Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1429 (9th Cir. 1996); *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 36 (2d Cir. 1982).

**Here, no oral transfer ever took place**. To this day, Nirvana and UMG maintain that Kurt Cobain created the Design and that all copyright is now and "*at all times*" has been owned by Nirvana [Dkts. 100-11, 100-12]. Evidently, for a prior oral grant to have occurred, Geffen would have needed to be the copyright owner, at least at some point. Yet, on the record, UMG flatly denies it ever was.

Moreover, UMG's "retroactive grant" illustrates why the Second Circuit was correct in holding that *nunc pro tunc* assignments are invalid as a matter of law and why other circuits should follow suit. There are, indeed, no good policy considerations to allow a plaintiff to cure glaring issues of standing mid-litigation[5] (and shield itself from Rule 11 sanctions for failing to conduct a proper pre-litigation inquiry), by pressuring a business partner into "acknowledging" that "to the extent necessary" it "retroactively grants" whatever rights Nirvana now needs to maintain its suit—*much less rights that it admittedly never had.*

**2)  A written instrument that memorializes a prior oral grant is not a retroactive assignment; it is a type of writing that, in certain situations, may satisfy the requirements of 17 U.S.C. §204(a).**

Cases such as *Eden Toys* and *Magnuson*, where courts have upheld the validity of a prior oral transfer when that transfer was later—in some cases years later—"memorialized" in writing, are inapposite here. As the Court in *Davis*

---

"the writing … must, at the very least, be executed more or less contemporaneously with the agreement and must be a product of the parties' negotiations.").

[5] In fact, such tactics have been explicitly disallowed. Courts generally find that an assignment made after the action was filed cannot retroactively solve a standing problem that existed at the time of filing. *See, e.g.*, *Triple Tee Golf, Inc. v. Nike, Inc.*, 511 F. Supp. 2d 676, 699 (N.D. Tex. 2007); *Prof'l Led Lighting, Ltd. v. Aadyn Tech., LLC*, 88 F. Supp. 3d 1356, 1371 (S.D. Fla. 2015); *Gaia Technologies, Inc. v. Reconversion Technologies, Inc.*, 93 F.3d 774, 779-80 (Fed. Cir. 1996) ("Permitting non-owners … the right to sue, so long as they eventually obtain the rights they seek to have redressed, would enmesh the judiciary in abstract disputes, risk multiple litigation, and provide incentives for parties to obtain assignments in order to expand their arsenal and the scope of litigation).

correctly noted (*see* fn. 2), those cases do not involve a "retroactive assignment." In those cases, the record showed that an actual assignment did, in fact, take place at the time of the oral grant but that it was only later committed to writing.

Here, Nirvana does not even allege that a prior oral grant ever took place, and all evidence refutes it. In fact, based on UMG's unreserved acknowledgment that Nirvana "*at all times*" owned the copyright in the Design (and, thus, that Geffen never did), no reasonable juror could even find that it must have been a work-for-hire for Geffen. To summarize, there is no genuine dispute that:

1) In September 2019, Nirvana members Grohl and Novoselic testified that they did not know who created the Design or who owned the rights to it [Dkt. 226, SUF 14-15]—they made no mention of any ownership or transfer by Geffen.

2) In October 2019, Grohl and Novoselic suddenly "recall" that Cobain created the Design and that all rights were always owned by Nirvana [Dkt. 226, SUF 16; Dkt. 100-11]—again, no mention is made of any ownership or transfer by Geffen.

3) In August 2020, John Silva—deposed as both Nirvana's manager in 1991 and its 30(b)(6) witness now—makes no mention either of any ownership or transfer by Geffen. In fact, both here and in a later declaration, Silva skillfully avoids the issue of his actual knowledge as to who created the Design and who owned the rights to it in 1991 [Dkt. 226, SUF 58-60, 197, 205, 214, 285-289].

4) In 1993, an IP lawyer, presumably instructed by Silva, filed a copyright registration for a t-shirt incorporating the Design. The application identified Nirvana Inc. as the copyright owner based on "work for hire"; it makes no mention of prior ownership/transfer by Geffen. [Dkt. 226, SUF 308, 310-312, 319-320, 458].

5) At no point during discovery did Nirvana identify Geffen as a party with knowledge about the creation or ownership of the Design, nor did it identify a single former employee that named Geffen as its author or owner [Dkt. 226 SUF 290-291].

6) Not even Fisher's direct supervisor at Geffen knew he had created the Design and confirmed that she did not commission it for Geffen. [Dkt. 226, SUF 450-451].

7) While all art commissioned by Geffen would have been owned by Geffen, Geffen never claimed copyright ownership of this Design [Dkt. 226, SUF 452-454, 457], and out of the 1,000+ copyright registrations Geffen filed during its existence, none involved the smiley face. [Dkt. 226, SUF 455-456].

**3)     Nirvana cannot invoke work-for-hire when Geffen never did.**

Lastly, the Ninth Circuit has held that Section 101 of the Copyright Act was designed to establish ownership between an employer and its employee and that it would be "unusual and unwarranted to permit third parties" to invoke this section to claim ownership of a work on behalf of an alleged employer when that employer never did. *Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1157 (9th Cir. 2010). Here, it is undisputed that Geffen never claimed ownership of the Design [Dkt. 226, SUF 452]. In fact, UMG denies that Geffen ever had any interest in it, "acknowledging" instead that, to the best of its knowledge, the copyright has always belonged to Nirvana. Evidently, UMG cannot transfer rights it admittedly never had, and Nirvana cannot invoke work-for-hire for Geffen when Geffen never did.

**IV.    CONCLUSION**

There is no evidence that Geffen ever owned the copyright in the Design, nor is there any evidence of a prior oral grant of ownership from Geffen to Nirvana. As such, the UMG Acknowledgment cannot possibly serve as a valid assignment of any copyrights from UMG to Nirvana, retroactively or prospectively. Since Nirvana does not raise any triable issues of fact as to copyright ownership or transfer, Fisher is entitled to summary judgment as requested.

DATED: September 25, 2023        MODO LAW, P.C.

                                 By:   */s/ Inge De Bruyn*

                                       Inge De Bruyn
                                       MODO LAW, P.C.
                                       4218 Via Padova
                                       Claremont, CA 91711
                                       Phone: 323-983-2188
                                       *Attorney for Robert Fisher*