UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-10743 JAK (SK) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Nirvana L.L.C. v. Marc Jacobs International L.L.C. et al. | | |

Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE NIRVANA L.L.C.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COPYRIGHT OWNERSHIP (DKT. 98);**

**MARC JACOBS INTERNATIONAL LLC AND SAKS INCORPORATED'S MOTION FOR SANCTIONS AS TO PLAINTIFF NIRVANA, L.L.C. AND COUNSEL (DKT. 121);**

**PLAINTIFF-IN-INTERVENTION'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. 122);**

**MARC JACOBS INTERNATIONAL LLC, NEIMAN MARCUS GROUP LIMITED, L.L.C., AND SAKS INCORPORATED'S MOTION FOR SUMMARY JUDGMENT (DKT. 125);**

**MARC JACOBS INTERNATIONAL LLC, NEIMAN MARCUS GROUP LIMITED, L.L.C., AND SAKS INCORPORATED'S MOTION FOR ENLARGEMENT OF TIME TO FILE DOCUMENTS (DKT. 130);**

**NIRVANA L.L.C.'S APPLICATION TO FILE DOCUMENT DESIGNATED BY ANOTHER AS CONFIDENTIAL UNDER SEAL (DKT. 158);**

**MARC JACOBS INTERNATIONAL LLC, NEIMAN MARCUS GROUP LIMITED, L.L.C., AND SAKS INCORPORATED'S MOTION TO STAY CASE PENDING RESOLUTION OF THE CO-PENDING ACTION BEFORE THIS COURT (DKT. 190); AND**

**MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO NIRVANA L.L.C.'S COUNTERCLAIM AND AFFIRMATIVE DEFENSES (DKT. 214)**

I.     <u>Introduction</u>

On December 28, 2018, Nirvana LLC ("Nirvana" or "Plaintiff") filed this action against Marc Jacobs International LLC ("Jacobs"), Saks Incorporated ("Saks"), and Neiman Marcus Group Limited, LLC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-10743 JAK (SK) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Nirvana L.L.C. v. Marc Jacobs International L.L.C. et al. | | |

("Neiman," or together with Jacobs and Saks, "Defendants"). Dkt. 1 (the "Complaint"). The Complaint advanced the following causes of action: (1) copyright infringement in violation of 17 U.S.C. §§ 101 *et seq.*; (2) false designation of origin under the Lanham Act in violation of 15 U.S.C. §§ 1125(a) *et seq.*; (3) trademark infringement under California common law; and (4) unfair competition under California common law. *Id.* Defendants moved to dismiss the Complaint, and that motion was denied. Dkt. 60. Defendants filed an answer to the Complaint on November 26, 2019. Dkt. 65. At that time, they also filed a counterclaim against Nirvana for declaratory relief. Dkt. 66.

On September 13, 2020, Robert Andres Fisher ("Fisher" or "Intervenor") moved to intervene in this action. Dkt. 95. Fisher proposed to assert the following causes of action: (1) declaratory relief against Plaintiff and Defendants concerning the ownership of the relevant copyright; (2) copyright infringement against Defendants; (3) a claim "for nominal and punitive damages" against Plaintiff; (4) injunctive relief against Plaintiff; and (5) cancellation of a federal trademark registration against Plaintiff. *Id.* On December 9, 2021, the motion to intervene was granted. Dkt. 201. On December 22, 2021, a stipulation was approved that permitted Fisher to file an amended intervenor complaint. Dkt. 205. That intervenor complaint, which is the operative one, advanced the following causes of action, which are alleged only against Plaintiff: (1) copyright infringement in violation of 17 U.S.C. § 501; (2) violation of the integrity of copyright management information in violation of 17 U.S.C. § 1202; (3) declaratory relief regarding copyright ownership, copyright registration invalidity, and slander of title under 28 U.S.C. §§ 2201, 2202; and (4) declaratory relief regarding trademark rights under 28 U.S.C. §§ 2201, 2202. Dkt. 206. On January 24, 2022, Nirvana filed a counterclaim for declaratory relief against Fisher. Dkt. 208.

The parties have filed several motions. On October 5, 2020, Nirvana moved for partial summary judgment as to the ownership of the relevant copyright. Dkt. 98 ("Nirvana's MSJ"). Fisher opposed that motion on October 26, 2020. Dkt. 114 ("Fisher's Opposition to Nirvana's MSJ"). Nirvana replied on November 9, 2020. Dkt. 135 ("Reply to Fisher's Opposition to Nirvana's MSJ"). Defendants opposed Nirvana's MJS on November 16, 2020. Dkt. 138 ("Defendants' Opposition to Nirvana's MSJ"). Nirvana did not reply.

On November 2, 2020, Defendants moved for sanctions against Nirvana. Dkt. 121 (the "Sanctions Motion"). Defendants opposed the Sanctions Motion on December 14, 2020. Dkt. 157 (the "Sanctions Opposition"). Defendants replied on January 11, 2021. Dkt. 170 (the "Sanctions Reply").

On November 2, 2020, Fisher filed a proposed motion for partial summary judgment. Dkt. 122 ("Fisher's Proposed MSJ"). Nirvana opposed Fisher's Proposed MSJ on November 23, 2020. Dkt. 143 ("Nirvana's Opposition to Fisher's Proposed MSJ"). Fisher replied on December 7, 2020. Dkt. 148 ("Reply to Nirvana's Opposition to Fisher's Proposed MSJ"). Defendants opposed Fisher's Proposed MSJ on December 9, 2020. Dkt. 151 ("Defendants' Opposition to Fisher's Proposed MSJ"). On January 8, 2021, Fisher replied. Dkt. 169 ("Reply to Defendants' Opposition to Fisher's Proposed MSJ").

On November 2, 2020, Defendants also moved for summary judgment. Dkt. 125 ("Defendants' MSJ"). Fisher opposed Defendants' MSJ on December 14, 2020. Dkt. 154 ("Fisher's Opposition to Defendants' MSJ"). Plaintiff also opposed Defendants' MSJ on December 14, 2020. Dkt. 161 ("Nirvana's Opposition to Defendants' MSJ"). On January 11, 2021, Defendants replied to Fisher's Opposition to Defendants' MSJ. Dkt. 172 ("Reply to Fisher's Opposition to Defendants' MSJ"). That same day, Defendants also replied to the other Opposition. Dkt. 174 ("Reply to Nirvana's Opposition to Defendants' MSJ").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-10743 JAK (SK) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Nirvana L.L.C. v. Marc Jacobs International L.L.C. et al. | | |

On November 4, 2020, Defendants filed a motion to allow the acceptance of certain documents that were filed approximately two hours late. Dkt. 130 (the "Extension Motion"). No party opposed the Extension Motion.

On December 14, 2020, Nirvana applied for leave to file certain documents designed by Defendants as confidential under seal. Dkt. 158 (the "Sealing Application"). No party opposed the Sealing Application. On December 18, 2020, Defendants filed a declaration in support of the Sealing Application. Dkt. 167 (the "Sealing Declaration"). The declaration itself was filed under seal.

On March 23, 2021, the cross-motions for summary judgment were taken under submission. Dkt. 187.

On May 26, 2021, Defendants moved to stay this action pending resolution of a related case to which Nirvana and Fisher were parties. Dkt. 190 (the "Stay Motion"). Nirvana opposed the Motion to Stay on June 16, 2021. Dkt. 192 (the "Stay Opposition"). Defendants replied on June 30, 2021. Dkt. 193 (the "Stay Reply"). Fisher did not oppose the Stay Motion.

On February 25, 2022, Nirvana filed a notice of supplemental authority. Dkt. 213. Defendants and Fisher responded to this notice. Dkts. 216, 217.

On February 27, 2022, Fisher moved for summary judgment as to Nirvana's counterclaim against Fisher as well as Nirvana's affirmative defenses to Fisher's claims. Dkt. 214 ("Fisher's MSJ"). Nirvana opposed Fisher's MSJ on March 18, 2022. Dkt. 218 ("Nirvana's Opposition to Fisher's MSJ"). Defendants opposed Fisher's MSJ on March 21, 2022. Dkt. 221 ("Defendants' Opposition to Fisher's MSJ"). Fisher replied to both Oppositions on April 4, 2022. Dkts. 224, 225 (respectively the "Reply to Defendants' Opposition to Fisher's MSJ" and the "Reply to Nirvana's Opposition to Fisher's MSJ").

On June 21, 2022, Fisher's MSJ was taken under submission. Dkt. 229.

On July 27, 2023, the Court called for supplemental briefing on certain issues. Dkt. 230. Thereafter, the parties provided that briefing and the cross-motions for summary judgment were again taken under submission. *See* Dkts. 231-37.

For the reasons stated in this Order, Nirvana's MSJ (Dkt. 98) is **GRANTED IN PART** and **DENIED IN PART**. It is established for purposes of trial that, assuming Fisher drew the Smiley, it was a work for hire for Geffen and, assuming Cobain drew the Smiley, Nirvana owns the rights to the Smiley. However, triable issues of fact remain with respect to the author of the Smiley and the ownership and validity of the Copyright. It is also established that the Design contains protectible expression. The Sanctions Motion (Dkt. 121) is **DENIED**. Defendants' MSJ (Dkt. 125) is **DENIED**. Fisher's MSJ (Dkts. 122, 214) is **DENIED**. The Extension Motion (Dkt. 130) is **GRANTED**. The Stay Motion (Dkt. 190) is **MOOT**. The Sealing Application (Dkt. 158) is **GRANTED IN PART**, **DENIED IN PART**, and **DEFERRED IN PART**.

Within 21 days of the issuance of this Order, the parties shall file a joint report stating the procedural status of their settlement discussions. In that report, the parties shall also state their collective and/or respective positions as to whether any further settlement proceedings should be scheduled in this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-10743 JAK (SK) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Nirvana L.L.C. v. Marc Jacobs International L.L.C. et al. | | |

action and whether a Trial Setting Conference should be scheduled, and if so a proposed date for that proceeding.

## II.    Factual Background

Nirvana was a musical group that performed and recorded during the late 1980s and 1990s. Its members formed a corporation called Nirvana, Inc. in January 1990 to handle their musical, touring and merchandising affairs. Dkt. 100, Novoselic Decl. ¶¶ 2–3, 6–7, 10; Dkt. 100, Draher Decl. ¶ 3, Ex. 1. Kurt Cobain ("Cobain") was a member of Nirvana, and was also the president of, a director of and "Employee No. 1" of Nirvana, Inc. Dkt. 100, Novoselic Decl. ¶¶ 7–8, 15–19, 25, Exs. 4 and 5; Johnson Decl. ¶¶ 2–3, Ex. 2; Lee Decl. ¶ 7; Dkt. 100, Ex. 15 at 50:2-20, 72:1-9, 105:24-106:8, 111:10-23; Dkt. 100, Exs. 7, 9, 11 and 12.

In April 1991, Nirvana members signed a recording agreement with the David Geffen Co. ("Geffen"), which is now owned by UMG Recordings ("UMG"). Dkt. 100, Novoselic Decl. ¶ 11. Shortly thereafter, the band used the so-called "Happy Face" t-shirt to promote its upcoming album, "Nevermind," because this design was more acceptable than a previous "Seven Circles of Hell" design. *Id.* ¶ 15; Dkt. 100, Silva Decl. ¶¶ 5–6, Ex. 3.



Dkt. 1 at 24. For purposes of this Order, the "Happy Face" design on the shirt above are referred to as the "Design," the "Happy Face" or the "Smiley."

Nirvana then entered into a merchandising agreement with Giant Merchandising, Inc. Giant began selling the "Happy Face" t-shirt design on or about November 1991, and since that time, Nirvana, Inc. and its successor, Nirvana, LLC, have continuously exploited the "Happy Face" design in a range of merchandise. Dkt. 100, Novoselic Decl. ¶ 21; Silva Decl. ¶ 9–10, Ex. 3. Fisher knew that Nirvana was exploiting the "Happy Face" logo in 1991 and 1992. Dkt. 100, Ex. 15 at 183:13-184:11, 184:16-185:3,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-10743 JAK (SK) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Nirvana L.L.C. v. Marc Jacobs International L.L.C. et al. | | |

218:12-16.

In 1993, Nirvana, Inc. filed the copyright registration (the "Copyright" or the "Registration") for the "Happy Face" t-shirt design, stating it was a work made for hire. Dkt. 100, Draher Decl. ¶ 12; Novoselic Decl. ¶¶ 23–25, Ex. 8; Dkt. 1, Ex. 1. Nirvana member Novoselic, Nirvana's lawyer (Draher) and Nirvana's manager (Silva), all of whom were personally involved with Nirvana in various capacities between 1991 and 1993, each declares that the 1993 Copyright Registration is true and correct to the best of their knowledge. Dkt. 100, Novoselic Decl. ¶¶ 23-25, Draher Decl. ¶¶ 7, 11; Silva Decl. ¶¶ 7–8, 11, 13–16. The registration is dated March 11, 1993 and states that the nature of the copyright is a "tee shirt," that the claimant and author is Nirvana, Inc., that the work was a "work made for hire," and that the work was completed in 1991 and first published Nov. 1, 1991. Dkt. 1, Ex. 1.

During the 1990s, Cobain created at least some of the visual art used on merchandise the band sold at its concerts. Dkt. 100, Novoselic Decl. ¶¶ 4–5, Ex. 3; Silva Decl. ¶¶ 4–6, Ex. 3. Although band member Novoselic, attorney Draher and manager Silva did not see Cobain create the Design, they all declare that they believe that he was the creator because he was a talented visual artist who created the visual art for the band at the time, including artwork to be used on merchandise, and because the Design is consistent with Cobain's artistic style and similar to artwork on the so-called "Seven Circles of Hell" t-shirt created by Cobain. Dkt. 100, Novoselic Decl. ¶¶ 5, 15, Ex. 3; Draher Decl. ¶ 10; Silva Decl. ¶¶ 5–6. They also declare that Nirvana and Geffen always believed that Cobain created the "Happy Face" design and that he did so on a "work made for hire" basis as an employee of Nirvana, Inc. Dkt. 100, Novoselic Decl. ¶¶ 23–25; Draher Decl. ¶¶ 7, 11; Silva Decl. ¶¶ 7–8, 11, 13–16; Seibert Decl. ¶¶ 5–7. Further, Draher located an early Cobain drawing that he believes depicts an early version of the "Happy Face" design. Dkt. 100, Draher Decl. ¶ 10, Ex. 13.

Robert Fisher ("Fisher") provides competing evidence. He declares that he created the Smiley as a favor to Nirvana for it to use on merchandise. Dkt. 95-2, Fisher Decl. ¶ 3; Dkt. 117, De Bruyn Decl. ¶ 14, Ex. 10 at 43:7–8, 120:10-122;22, 185:4-10, 189:23. He declares that he is "99% sure [he] originally drew [the Happy Face] for the promo t-shirt" and claims to have in his possession "the original Xerox blowup of it." Dkt. 117-3 at 3–4. He also declares that he has used his Happy Face illustration in portfolios that he has sent out for business purposes throughout the years, is the only person who can describe in detail how the illustration and t-shirt were created, including how he drew it and what materials he used, and still has the first xerox copies of his original artwork. Dkt. 95-2, Fisher Decl. ¶ 2, Exs. 31 and 32; Dkt. 117, De Bruyn Decl. ¶¶ 3, 14, Ex. 10 at 43:14–45:18, 45:22–49:20.

Fisher also disputes whether Cobain created "virtually all" of the graphics and designs for the band. For example, prior to signing with Geffen in 1991, Nirvana had released one album, one EP and two singles, and none of the covers for these pieces was created by Cobain. The album cover for "Bleach" was designed by Lisa Orth with photographs by Tracy Marander, and the vinyl label was an illustration by C.W. Scott-Giles. Dkt. 117, De Bruyn Decl. ¶¶ 18–19, 25, Exs. 13, 14, 20. The EP cover was also designed by Lisa Orth with photographs by Tracy Marander. *Id.* ¶ 26, Ex. 21. The graphic art used with the two singles were designed by people other than Cobain with inspiration from outside sources. *Id.* ¶¶ 24, 30, Exs. 19 and 25.

Nirvana contends that Fisher did not create the Design. Robin Seibert, Fisher's supervisor in 1991, who was personally responsible for supervising the creation of graphic art at the label, declares that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-10743 JAK (SK) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Nirvana L.L.C. v. Marc Jacobs International L.L.C. et al. | | |

"virtually all of the ideas for all of the graphics and videos" used for Nirvana came from Cobain and that Seibert always credited the "Happy Face" design to Cobain given his involvement in the process. Dkt. 100, Seibert Decl. ¶¶ 6–7.

Nirvana contends that, even assuming that Fisher initially designed the "Happy Face" illustration, he did so within the course and scope of his employment at Geffen, and as such, any designs Fisher created were owned by Geffen on a work-made-for-hire basis. Indeed, Fisher worked as an art director at Geffen in 1991. Dkt. 100, Seibert Decl. ¶ 3. Further, as an art director, Fisher's duties included creating album and other graphic art to promote the label's various artists. Dkt. 100, Lee Decl. ¶ 7, Ex. 15 at 36:23-37:14, 152:13-20, 204:19-207:9. Fisher has also stated that, if management asked him to create graphic art for t-shirts, he would do so, although he disputes whether this was a "main" focus of his work. *Id.*, Ex. 15 at 75:6-8, 76:2-23, 164:16-20, 165:22-166:5; 204:19-207:9.

Fisher admits that, when he was told to make the "Happy Face" t-shirt, he understood it was to be used for promotional and retail purposes and that he was being paid for his work by the label at the time he designed it. *Id.* at 54:4-14, 61:25-62:2, 71:7-9, 166:7-167:3, 167:23-168:13, 169:3-8, 176-177, 182:4-8, 193:21-195:19, 217:13-218:11. Fisher also admits that the Design was used to promote Nirvana's upcoming album, "Nevermind," by placing the Design on shirts to send to radio stations, which contained the label's signature logo along with the Design. *Id.* at 50:2-20, 52:24-53:14, 72:1-9, 73:19-25, 105:24-106:8, 111:10-23, 153:23-154:9, 168:14-25 and Exs. 7, 9, 11, 12 and 13.

Fisher does not recall who asked him to create the "Happy Face" design, but speculates that Nirvana's manager, Silva, did. *Id.* at Ex. 15 at 70:23-26, 72:22-74:18, 159:10. However, Silva has stated that, if he did make such a request, it would have been at the request of the label, and the design would have been work commissioned and owned by the label. Dkt. 100, Silva Decl. ¶¶ 6, 13-15; Seibert Decl. ¶¶ 3-4, 6-7. Fisher admits that he used the equipment of the label to complete the design. *Id.*, Ex. 15 at 48:4-8, 49:1-3, 49:11-17, 68:16-69:7, 172:22173:9, 174:1-4, 175:6-13. Fisher knew Nirvana was exploiting the "Happy Face" logo, but never claimed during the time he worked at the label that he had a personal copyright interest in the design. *Id.*, Ex. 15 at 183:13-184:11, 184:16-185:3, 185:12-22, 205:10-207:1, 207:4-8, 216:9-217:9, 218:12-16.

Nirvana asserts that, whether Nirvana Inc. or Geffen originally owned the rights to the Design, Nirvana now owns the rights to the Design. It contends that its chain of title is evidenced by the original copyright registration filed by Nirvana, Inc. in 1993, which is presumed accurate. Dkt. 1, Ex. 1 at 17–24; Dkt. 100, Draher Decl. ¶ 12, Ex. 8. If Nirvana Inc. originally owned the rights, Nirvana contends that it obtained the rights through the 1997 written assignments of the Copyright from Nirvana, Inc. to Nirvana operating as a general partnership, and then ultimately to Nirvana, LLC, the entity that brought this lawsuit. Dkt. 100, Draher Decl. ¶ 14, Exs. 9 and 10; *see also* Dkt. 1 at 19–22, 23–25. Upon learning that Fisher and Defendants were disputing Nirvana's ownership of the Copyright, Geffen's successor-in-interest, UMG, claimed that it had no rights to the Design because Cobain created the Design, but out of an abundance of caution, UMG assigned any rights it had in the Copyright and the Design to Nirvana. Dkt. 100, Novoselic Decl. ¶ 29; Lee Decl. ¶ 5, Exs. 11 and 12.

The dispute between Nirvana and Defendants arises out of Marc Jacobs' release of its "Bootleg Redux Grunge" clothing collection. Dkt. 1 ¶ 17; Dkt. 126 ¶¶ 7-9. Specifically, Nirvana identifies a sweatshirt, tee shirt and socks that allegedly misappropriate the Copyright. *Id.* These items (the "Accused

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-10743 JAK (SK) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Nirvana L.L.C. v. Marc Jacobs International L.L.C. et al. | | |

Products") are shown in the following images:

  

*See* Dkt. 1 ¶ 17.

Nirvana contends that Marc Jacobs is liable for copyright infringement because he designed and sold these products, and that the other Defendants are liable for selling the infringing products on behalf of Jacobs. *Id.* ¶¶ 1, 18. Nirvana also claims that Jacobs infringed its Copyright by using the Design "more generally to promote" the overall collection "by making the Nirvana image the signature image used at promotional events." *Id.* ¶ 19.

As noted, Nirvana has also brought claims for trademark infringement against Defendants, alleging that it owns trademark rights in the Design under the Lanham Act and California common law. *See* Dkt. 1 ¶¶ 14, 29, 35; Dkt. 126 ¶ 10. Nirvana also asserts that Defendants have engaged in unfair competition under California common law as a result of the same conduct. *See* Dkt. 1 ¶¶ 28-40; Dkt. 126 ¶ 249.

### III.   Evidentiary Objections

The parties have submitted 821 pages of evidentiary objections and responses. Many of those objections are boilerplate. Where appropriate, these objections will be addressed below in connection with the evidence to which they apply. This Order relies only on admissible evidence. To the extent the parties have objected to evidence relied upon in this Order, those objections are **OVERRULED**. To the extent the parties objected to evidence not relied upon in this Order, those objections are **MOOT**.

### IV.   Sealing Application

Based on a review of the Sealing Application and the Sealing Declaration, sufficient good cause has been shown for certain of the requested relief. The Sealing Declaration was not made by a percipient witness with personal knowledge of the potential effects if the relief requested through the Sealing Application was denied. However, in some instances, the documents in question have already been

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-10743 JAK (SK) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Nirvana L.L.C. v. Marc Jacobs International L.L.C. et al. | | |

ordered sealed by Magistrate Judge Kim or the need to seal the documents is obvious.

As to the following documents, the Sealing Application is **GRANTED**:
- Page 135 to the Deposition of Marc Jacobs;
- Pages 325-27 of the Deposition of Marc Jacobs;
- Pages 334-38 of the Deposition of Marc Jacobs;
- Pages 343-45 of the Deposition of Marc Jacobs;
- Exhibit 13 to the Deposition of Marc Jacobs;
- Exhibit 14 to the Deposition of Marc Jacobs;
- Exhibit 15 to the Deposition of Marc Jacobs;
- Exhibit 30 to the Deposition of Marc Jacobs;
- Exhibit 33 to the Deposition of Marc Jacobs;
- Exhibit 36 to the Deposition of Marc Jacobs;
- Exhibit 13 to the Deposition of Michael Carney;
- Exhibit 14 to the Deposition of Michael Carney;
- Exhibit 15 to the Deposition of Michael Carney;
- Exhibit 13 to the Deposition of Nicholas Newbold;
- Exhibit 14 to the Deposition of Nicholas Newbold; and
- Exhibit 15 to the Deposition of Nicholas Newbold.

The Sealing Application is **DENIED** as to Exhibit 29 to the Deposition of Marc Jacobs because Defendants do not request either sealing or redactions with respect to this exhibit.

As to the remaining documents, a ruling on the Sealing Application is **DEFERRED**. Defendants may provide a declaration from a percipient witness containing more detail as to the need to seal the remaining material within 14 days of the issuance of this Order. Failure to do so may result in the denial of the Sealing Application and the filing of the documents on the public docket.

## V.     Extension Motion

The Extension Motion states that Defendants were unable to file Dkts. 126-29 prior to the end of the day on November 2, 2020. They were filed by 2:30 a.m. on November 3, 2020. Defendants state that the delay was caused by errors while filing exhibits. Because the delay was very short, and did not prejudice any party, and in light of the strong policy in favor of addressing the merits of every action based on a complete record, sufficient good cause has been shown for the requested relief. Therefore, the Extension Motion is **GRANTED**.

## VI.     Stay Motion

The Stay Motion urges that this action be stayed pending a related action between Nirvana and Fisher. However, that action has now been consolidated with this one. Therefore, the Stay Motion is **MOOT**.

## VII.     Motions for Summary Judgment

A.     Legal Standards

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-10743 JAK (SK) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Nirvana L.L.C. v. Marc Jacobs International L.L.C. et al. | | |

A motion for summary judgment will be granted where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations[,] . . . admissions, interrogatory answers, or other materials" show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

At the summary judgment stage, a court is not to weigh the evidence and determine the truth of any disputed matter, but it is simply to determine whether there is a genuine issue for trial. *Id.* at 249. The party seeking summary judgment bears the initial burden to show the basis for its motion and to identify those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 322. Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Where the nonmoving party will have the burden of proof on an issue, however, the movant need only demonstrate that there is an absence of evidence to support the claims of the nonmoving party. *See id.* If the moving party meets its initial burden, the nonmoving party must set forth "specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex*, 477 U.S. at 324).

Only admissible evidence may be considered in connection with a motion for summary judgment. Fed. R. Civ. P. 56(c)(2). However, in considering such a motion, a court is not to make any credibility determinations or weigh conflicting evidence. All inferences are to be drawn in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). However, conclusory, speculative testimony in declarations or other evidentiary materials is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

      B.     Nirvana's Copyright Claim

          1.    <u>Copyright Ownership</u>

A copyright infringement claim requires the plaintiff to show the following: (1) plaintiff's ownership of the copyright in the infringed work; and (2) the defendant copied protected elements of the copyrighted work. *Williams v. Gaye*, 895 F.3d 1106, 1119 (9th Cir. 2018) (citing *Swirsky v. Carey*, 376 F.3d 841, 844 (9th Cir. 2004)). That a design was registered for copyright within five years after first publication of the design is prima facie evidence that the copyright is valid, and "[a] certificate of registration, therefore, shifts to the defendant the burden to prove the invalidity of the plaintiff's copyrights." 17 U.S.C. § 410(c); *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997) (quoting *Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663, 668 (3rd Cir. 1990)).

Nirvana contends that there is a triable issue of fact as to whether Cobain or Fisher drew the Smiley. However, Nirvana's position is that it owns the rights to the Smiley irrespective of who drew it. To the extent Cobain drew the Smiley, Nirvana contends that Nirvana, Inc. began with the rights to the Smiley and that Nirvana, Inc. passed those rights through a chain of entities to Nirvana. To the extent Fisher

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-10743 JAK (SK) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Nirvana L.L.C. v. Marc Jacobs International L.L.C. et al. | | |

drew the Smiley, Nirvana contends that Geffen began with the rights to the Smiley, that UMG succeeded to those rights and validly assigned them to Nirvana. Fisher and Defendants all contend that Fisher drew the Smiley and that no reasonable jury could find that Cobain did so. Fisher and Defendants also contend that the Smiley was not a work made for hire for Geffen. In the alternative, Defendants dispute the validity of the assignments to Nirvana.

a)      Whether Cobain or Fisher Drew the Smiley

A genuine issue of fact is presented as whether Cobain or Fisher drew the Smiley. As to Fisher, he attests that he created the Smiley. Dkt. 95-2, Fisher Decl. ¶ 3; Dkt. 117, De Bruyn Decl. ¶ 14, Ex. 10 at 43:7–8, 120:10-122;22, 185:4-10, 189:23. He declares that he is "99% sure [he] originally drew [the Happy Face] for the promo t-shirt" and claims to have in his possession "the original Xerox blowup of it." Dkt. 117-3 at 3–4. He declares that he has used his Happy Face illustration in portfolios that he has sent out for business purposes for many years, is the only person who can describe in detail how the illustration and t-shirt were created, including how he drew the illustration and what materials he used, and still has the first xerox copies of his original artwork. Dkt. 95-2, Fisher Decl. ¶ 2, Exs. 31 and 32; Dkt. 117, De Bruyn Decl. ¶¶ 3, 14, Ex. 10 at 43:14–45:18, 45:22–49:20. Nirvana does not dispute, for present purposes, that Fisher has raised a triable issue of fact. *See* Dkt. 98 at 16.

For several reasons, a triable issue of fact has also been raised with respect to whether Cobain, as opposed to Fisher, drew the Smiley. *First*, Novoselic and Silva testified that Cobain typically drew whatever artwork was needed to promote the band at the time the Smiley was created. Dkt. 100, Novoselic Decl. ¶ 14; Silva Decl. ¶ 7. *Second*, Novoselic and Draher testified that they were familiar with Cobain's artistic style and that the Smiley is consistent with that style. Dkt. 100, Novoselic Decl. ¶ 14; Draher Decl. ¶¶ 7, 11. *Third*, Draher testified that he had one of Cobain's old notebooks, in which a somewhat similar Smiley appears. Dkt. 100, Draher Decl. ¶ 10; Dkt. 100-13. *Fourth*, Silva testified that the Smiley was created for a tee shirt design that was intended to mimic one previously created by Cobain. Dkt. 100, Silva Decl. ¶ 6. *Finally*, Nirvana possesses a copyright registration stating that the Design was created as a work-for-hire for Nirvana, Inc. Because Cobain was employed by Nirvana Inc. and Fisher was not, this position is consistent with the theory that Cobain drew the Smiley and is evidence that conflicts with the position that Fisher drew the Smiley. *See* Dkt. 100-8.[1] No party disputes that this registration was obtained within five years of the date the Design was first published. Such a copyright registration is "prima facie evidence of the validity of the copyright and the facts stated in the certificate." 17 U.S.C. § 410(c); *see United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011) (same). Coupled with the presumption that Nirvana's copyright is valid and accurate, a reasonable fact-finder could infer from the evidence proffered by Nirvana's witnesses that Cobain drew the Smiley.

Fisher and Defendants challenge the testimony of Nirvana's witnesses as speculative and without foundation through personal knowledge because none of these witnesses saw Cobain draw the Smiley. They also contend that when a witness states a mere belief in a fact, that is insufficient to raise a triable issue. The testimony presented by Nirvana is different. The witnesses have explained their respective

---

[1] With respect to any evidentiary objections to this material, certificates bearing the seal of the U.S. Copyright Office and signed by the Register of Copyrights are self-authenticating documents pursuant to Fed. R. Evid. 902. *Classical Silk, Inc. v. Dolan Grp., Inc.*, No. CV 14-09224-AB (MRWx), 2016 WL 7638113, at *1 n.2 (C.D. Cal. Feb. 2, 2016).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-10743 JAK (SK) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Nirvana L.L.C. v. Marc Jacobs International L.L.C. et al. | | |

familiarity with Cobain's artistic style and Nirvana's practices at the relevant time. This provides a sufficient foundation of personal knowledge to support the proffered   testimony. Fisher has presented other evidence that Cobain did not draw some of the prior designs attributed to him by a witness offered by Nirvana. Although this evidence raises triable issues about whether Cobain drew those prior designs, it does not compel the conclusion that they were not prepared by Cobain. Moreover, this evidence does not address the testimony that the Smiley matched Cobain's artistic style. Fisher also contends that Nirvana's copyright registration does not mention Cobain. However, because the statements in the registration could not be accurate if Fisher drew the Smiley, the presumption that the Copyright is valid still weighs in favor of the theory that Cobain drew the Smiley.

   b)  Whether, Assuming Fisher Drew the Smiley, the Smiley Was a Work Made for Hire for Geffen

Under § 201(a) of the Copyright Act, copyright ownership "vests initially in the author or authors of the work," which is generally the creator of the copyrighted work. *See Cmty. for Creative Non–Violence v. Reid,* 490 U.S. 730, 737 (1989). However, if a work is made for hire, "the employer or other person for whom the work was prepared is considered the author" and owns the copyright "unless the parties have expressly agreed otherwise in a written instrument signed by them." 17 U.S.C § 201(b). A "work made for hire" is defined as "a work prepared [1] by an employee [2] within the scope of his or her employment." *Id.* § 101.

Because the Copyright Act does not define "employee" or "scope of employment," the Supreme Court instructed that these terms must be "understood in light of the general common law of agency." *Reid,* 490 U.S. at 739–41 (citing section 228 of the Restatement (Second) of Agency to apply agency principles and concluded that an artist, commissioned by a non-profit to create a sculpture, was not an "employee" who had created the work within the "scope of his employment").

When determining whether a hired party is an "employee" under the work-made-for-hire exception, courts apply common law agency principles, which identify the following factors: 1) the hiring party's right to control the manner and means by which the product is accomplished; 2) the skill required to complete the task; 3) the source of the instruments and tools used; 4) the location of the work; 5) the duration of the relationship between the parties; 6) the extent to which the hiring party has the right to assign additional projects; 7) the extent of the hired party's discretion over when and how long to work; 8) the method of payment; 9) the hired party's role in hiring and paying assistants; 10) whether the work is part of the regular business of the hiring party; 11) whether the hiring party is in business; 12) the provision of employee benefits; and 13) the tax treatment of the hired party. *Reid,* 490 U.S. 730, 751–52; *see also Numbers Licensing, LLC v. bVisual USA, Inc.*, 643 F. Supp. 2d 1245, 1251 (E.D. Wash. 2009) "No one of these factors is determinative." *Id.*

The Ninth Circuit and others have adopted the three-prong test under section 228 in determining when a work is made by an employee "within the scope" of employment, That test is as follows: "(a) it is of the kind [the employee] is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the [employer]." *Avtec Sys., Inc. v. Peiffer,* 21 F.3d 568, 571 (4th Cir.1994) (quoting Restatement § 228); *see also U.S. Auto Parts Network, Inc. v. Parts Geek, LLC,* 692 F.3d 1009, 1015 (9th Cir. 2012) ("We join our sister circuits in adopting this approach.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-10743 JAK (SK) | Date | December 21, 2023 |
|----------|------------------------|------|-------------------|
| Title | Nirvana L.L.C. v. Marc Jacobs International L.L.C. et al. | | |

Because there are no relevant, triable issues of fact, Nirvana is entitled to summary judgment with respect to its contention that, assuming Fisher drew the Smiley, the Smiley was a work made for hire for Geffen. Fisher first argues that Nirvana lacks standing to invoke the "work-for-hire" doctrine because it is a third party to the relationship between Fisher and Geffen. The statute establishing this doctrine "is designed to establish ownership of a work as between a commissioning party or employer on the one hand and the commissioned party or employee on the other." *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1157 (9th Cir. 2010). Thus, "[i]t would be unusual and unwarranted to permit third parties . . . to invoke [that doctrine] to avoid a suit for infringement when there is no dispute between the two potential owners, and both are plaintiffs to the lawsuit." *Id.*

Nirvana is not a "third party." Rather, it is the assignee of the successor-in-interest to Fisher's employer. *See* Dkts. 100-11, 100-12. UMG, Geffen's successor-in-interest,[2] has agreed that "all copyright and trademark rights" in the Design "have at all times been owned by Nirvana, Inc. or Nirvana, L.L.C.," and that "all written grants and assignments needed to perfect Nirvana, L.L.C.'s ownership of said rights have been made, and, to the extent necessary, are made by this acknowledgment and agreement . . . ." *Id.* Thus, Nirvana stands in Geffen's shoes with respect to its rights in the Design, and Nirvana has standing to argue that the work-for-hire doctrine applies.

Fisher argues that there has never been any dispute between Fisher and Geffen about the ownership of the rights to the Design, and that Geffen has never claimed that the Design was a work made for hire on its behalf. Fisher also argues that, because UMG contends that Cobain drew the Smiley, it has waived its right to assert that the work-for-hire doctrine applies. These arguments are unpersuasive. Geffen and UMG have always taken the position that Cobain drew the Smiley, and that the rights to the Design belong to Nirvana. *See, e.g.*, Dkt. 100, Siebert Decl. ¶¶ 5-7. Fisher has not identified any contrary statement that Geffen or UMG believed that Fisher held the rights to the Design. Nor is it material that Geffen and UMG have not expressly claimed that Fisher drew the Smiley as a work for hire. If their position is that Nirvana owns the rights to the Design because Cobain drew the Smiley, they would not have had a reason to invoke the work-for-hire doctrine prior to the initiation of this litigation. Because Nirvana is a potential owner of the copyright through Geffen, it is entitled to assert the work-for-hire doctrine.

Fisher next argues that any claim that the Smiley was a work for hire is time-barred. "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). "For ordinary claims of copyright infringement, each new infringing act causes a new claim to accrue; thus, [the Ninth Circuit has] held that 'an action may be brought for all acts that accrued within the three years preceding the filing of the suit.'" *Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Roley v. New World Pictures, Ltd.,* 19 F.3d 479, 481–82 (9th Cir.1994)). In contrast, " 'claims of co-ownership, as distinct from claims of infringement,' accrue only once, 'when plain and express repudiation of co-ownership is communicated to the claimant, and are barred three years from the time of repudiation." *Id.* (quoting

---

[2] Fisher and Defendants do not present evidence to dispute that UMG is Geffen's successor-in-interest, but they deny that Nirvana has made an adequate evidentiary showing on this issue. Nirvana has proffered admissible evidence in support of the position that UMG is Geffen's successor-in-interest. Michael Ostroff, a former employee of UMG, testified that ownership of Geffen passed to UMG. Dkt. 100, Ostroff Decl. ¶ 2; *see also* Dkt. 100, Silva Decl. ¶ 16 (noting UMG was Geffen's "successor").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-10743 JAK (SK) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Nirvana L.L.C. v. Marc Jacobs International L.L.C. et al. | | |

*Zuill v. Shanahan*, 80 F.3d 1366 ,1369 (9th Cir. 1996)). The same rule applies to "a claim for copyright infringement in which ownership is the disputed issue," as for example, when the complaint alleges that the plaintiff owned the copyrights and the defendant improperly paid royalties to third parties. *See id.* at 1254-55. Fisher has not identified any occasion more than three years prior to Nirvana's claim for declaratory judgment when Fisher communicated to Geffen, UMG or Nirvana that he repudiated their ownership interest in the Smiley. *See, e.g.*, Dkt. 122 at 20-21; Dkt. 214 at 19. Nor has Fisher presented evidence that any such disavowal was plain and express.

Nirvana has met its burden of showing that Fisher was employed by Geffen at the relevant time. Fisher testified that he was working at Geffen when the Design was created. Dkt. 100-15 at 75:6-8. Siebert, Fisher's supervisor and Geffen's Creative Director at the relevant time, also testified that Fisher was an employee of Geffen during 1991, when the Design was created. Dkt. 100, Siebert Decl. ¶ 3. Although Fisher was working on various side projects at that time, there is no evidence that any of his other work related to the Design. Dkt. 100-15 at 75:9-22.[3] It is undisputed that Fisher's relationship with Geffen extended over 11 years, i.e., from 1989 to 2000. *Id.* at 164:24-165:15. It was not limited to one project, or a handful of discrete ones. *Id.* It is also undisputed that Geffen had the right to control those bands with which Fisher worked. Fisher conceded that he was required to obtain permission from Geffen before he was permitted to work with a band. *Id.* at 36:2-12. Fisher also testified that he had to put together a budget and seek approval from Geffen before providing services to bands associated with Geffen. *Id.* at 193:11-19. Fisher testified that his work for Nirvana was generally subject to Geffen's approval, although his supervisor did not approve everything he did. *Id.* at 153:24-154:9.

It is also undisputed that Geffen was the source of the instrumentalities and tools, including the Xerox machine Fisher used, necessary to prepare the Design. *Id.* at 172:22-173:9.[4] Fisher once stated that he could not recall whether he created the Design at his home. *Id.* at 49:1-3. However, an inability to remember is not sufficient to create a genuine factual dispute. Moreover, Fisher provided testimony that he made copies of the Design while working in Geffen's offices. *See id.* at 172:22-173:9.

It is also undisputed that Geffen had the right to assign Fisher to complete tasks, including preparing graphic art for T-shirts. *Id.* at 165:22-166:5. It is also undisputed that Fisher did not receive separate payment for the creation of the Design, and did not consider asking for separate payment. *Id.* at 193:21-194:6, 218:8-11. Fisher conceded that he was being paid for his work by Geffen because he "was working for them" and he was not "just simply located" there. *Id.* at 191:7-9. It is also undisputed that Fisher received regular, periodic paychecks from Geffen; he was not paid on a piecework basis. *Id.*

---

[3] Fisher argues that one of his side projects involved the creation of a shirt for another band, Aerosmith, that had signed with Geffen. However, the cited testimony does not state that Aerosmith was signed with Geffen. Dkt. 214-21 at 39:22-40:1. Even if there had been some relationship between Aerosmith and Geffen, this evidence would not establish that Fisher's work for Nirvana was a similar side project, especially given Fisher's testimony that the creation of the Design was not linked to any of his side projects.

[4] Fisher also testified that he used a fine-tip felt pen in creating the Design. Dkt. 214-21 at 45:23. He stated that the pen "was probably left over from my art supplies from school." *Id.* at 46:12-15. This testimony is not material, both because Fisher could only state from where the pen "probably" came, and because a pen has minimal value. Thus, even assuming that Fisher brought his own pen to Geffen's offices would not support an inference that Fisher was an independent contractor. Fisher also contends that he brought his own paper to work, but the deposition testimony cited by Fisher does not include this statement. Nor would this statement be material given the minimal value of paper.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-10743 JAK (SK) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Nirvana L.L.C. v. Marc Jacobs International L.L.C. et al. | | |

at 195:7-19. Finally, it is undisputed that graphic design was part of Geffen's regular business. Seibert declared that one of Geffen's functions was to "[s]upervis[e] the art associated with producing and marketing the albums and singles Geffen released." Dkt. 100, Seibert Decl. ¶ 2. Nirvana also proffered testimony that Fisher worked in Geffen's "art department." *See, e.g.*, *id.* No party has offered contrary testimony.[5]

Fisher's arguments are unpersuasive. He contends that he was not an employee of Geffen, and that this is confirmed because no one has produced an employment agreement between him and Geffen. This is not material. An individual may be employed without a written agreement. Indeed, § 101(2) requires a signed writing to establish that a work is for hire, but this does not apply to § 101(1), the portion on which Nirvana relies. It is also not material that Geffen has not been able to locate Fisher's payroll records. Fisher has cited no authority that an employer cannot prove agency without such records, especially when the relevant employment relationship ended more than 20 years earlier.

Fisher next argues that Geffen has not provided evidence of how Fisher was treated for tax and benefit purposes. Fisher has not provided evidence on this point. Further, it is not appropriate to elevate this factor above the others discussed earlier. Fisher argues that he cannot recall whether he was working for Geffen Records, Inc. or the David Geffen Company when he started at Geffen. This is not material. *First*, Fisher testified at his deposition that he was working for "Geffen Records" when the Design was created. Dkt. 100-15 at 75:6-8. *Second*, Fisher also testified that the two entities were "combined," so the combined entity would still have the rights to the Design. Dkt. 214-21 at 29:12-30:15. Fisher's inability to recall the Geffen entity for which he was working for in 1989, is not material and does not create a triable issue of fact. Other courts have granted summary judgment on the "work-for-hire" doctrine even when there was uncertainty about the identity of the employer. *See, e.g.*, *Whyte Monkee Prods., LLC v. Netflix, Inc.*, 601 F. Supp. 3d 1117, 1134 n.8 (W.D. Okla. 2022).

Fisher also testified that there was a period during his first three years at Geffen where he was a "freelancer[]." Dkt. 214-21 at 148:8-16. However, he could not recall whether he was a freelancer at the time the Design was created. Dkt. 214-21 at 196:3-5. Fisher's inability to recall this fact is not sufficient to create a genuine dispute about it, especially because Fisher elsewhere testified that he did work for Geffen when the Design was created. Finally, Fisher objects to the testimony of Seibert with regard to his work at Geffen because she does not state the precise basis for her knowledge about Fisher's employment status. This objection lacks merit. Siebert has personal knowledge of Fisher's employment at Geffen because she oversaw his work at the relevant time. She is not required to state precisely how she became aware of each corresponding fact to support the admissibility of the statements in her declaration.

Nirvana has also met its burden to show that Fisher, if he created the Design, did so within the scope of his employment. *First*, development of the Design is the type of work Fisher was employed to perform. Fisher conceded that, when Geffen instructed him to do so, he would design shirts for bands associated with Geffen. Dkt. 100-15 at 165:22-166:5. Fisher recalled a few other instances where he performed similar services for Geffen. *Id.* at 204:19-207:9. Fisher argues that this was not the "main" part of his duties. *Id.* at 76:2-5. This is not material. So long as Fisher created the Design within the

---

[5] Neither party has made any argument as to several of the factors the Ninth Circuit has recognized as relevant: the skills required to create the work; Fisher's control over his work times; whether Fisher hired and paid his own assistants; and whether Geffen is a business.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-10743 JAK (SK) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Nirvana L.L.C. v. Marc Jacobs International L.L.C. et al. | | |

scope of his employment, it is not material whether he had other duties or that those other duties were more significant. Fisher also argues that Geffen sometimes hired illustrators to perform work for Nirvana. Dkt. 214-21 at 201:22-202:18. Again, this is not material. Assuming that Geffen occasionally used other individuals to design art, that would not support an inference that designing art was not the type of work Fisher performed for Geffen.

*Second*, any work performed by Fisher on the Design occurred substantially within the authorized work hours and space limits. Fisher conceded that the Design had nothing to do with any of his side projects or other work. Dkt. 100-15 at 75:9-22. As already noted, although Fisher once stated he could not recall where he created the Design, an inability to recall does not create a genuine dispute, and Fisher testified that he did at least part of the work to prepare the Design at Geffen's offices. *Id.* at 70:4-7, 172:22-173:9.

*Third*, Fisher's work, to the extent it occurred, was caused, at least in part, by a purpose to serve Geffen. Fisher acknowledged that the Design was used on promotional T shirts by Geffen, and Fisher, acting at Geffen's behest, added Geffen's logo to some of those shirts. *Id.* at 166:16-168:25; *see also id.* at 50:6-19, 52:25-53:15. Fisher testified that his understanding at the time he was instructed to create the Design was that the shirts were to be used for both promotion and retail. *Id.* at 54:6-13, 168:8-13. Again, it is undisputed that providing design services to Nirvana was part of Geffen's regular business. Seibert declared that one of Geffen's functions was to "[s]upervise the art associated with producing and marketing the albums and singles Geffen released." Dkt. 100, Seibert Decl. ¶ 2. Nirvana also proffered testimony that Fisher worked in Geffen's "art department." *See, e.g., id.* ¶ 3. No party has offered contrary testimony.

Fisher next argues that Nirvana, not Geffen, commissioned the shirt for use on merchandise and that Fisher created the Design for this purpose. This is not material for several reasons. *First*, the "work-for-hire" analysis only requires that serving Geffen be *part* of the Design's purpose. Creating the Design would have advanced Geffen's interests, both because Geffen could use the Design itself and because it was in Geffen's interests to promote Nirvana. To the extent the Design helped Nirvana build a more "consumer-friendly" image, this also would have advanced Geffen's interests. It is irrelevant that the creation of the shirt benefited both Nirvana and Geffen. *Second*, Fisher testified that the first time he saw the Design used was when it was printed by Geffen, which ordered shirts bearing the Design for radio stations to promote Nirvana's songs. *See* Dkt. 100-15 at 50:6-19, 52:25-53:15, 53:19-23, 71:7-15. *Third*, as noted, although Geffen gave Fisher a regular paycheck for his work, Nirvana never paid for Fisher to create the Design. *Fourth*, the basis for Fisher's position that the Design was created to serve Nirvana is that Silva, Nirvana's manager, approached Fisher about creating the shirt. *See, e.g.*, Dkt. 214-21 at 159:10-162:25. Indeed, Fisher testified that Silva was his point of contact while he was working on the design. *See, e.g.*, Dkt. 100-15 at 72:21-73:18. However, Silva has provided uncontroverted testimony that it was not unusual for him to collaborate with the various departments at Geffen and that Geffen wanted Nirvana to use a new shirt because it deemed some of the language on the shirt inappropriate. Therefore, Silva states that if he did direct Fisher to create the shirt, it would have been on behalf of Geffen. Dkt. 100, Silva Decl. ¶ 13. It is not material that Silva does not recall directing Fisher to create the shirt. Although Silva believes Cobain drew the Smiley, his testimony about the purpose of the Design is still relevant. *Finally*, it is significant that, at various times, Fisher stated that he could only "guess" and "assume" that he worked with Nirvana's management to create the original version of the Design. *See* Dkt. 100-15 at 54:15-21, 70:23-71:6, 72:21-25, 73:15-18.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-10743 JAK (SK) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Nirvana L.L.C. v. Marc Jacobs International L.L.C. et al. | | |

Defendants argue that the "work-for-hire" doctrine does not apply because Fisher denies transferring his rights to the Design to Nirvana. However, the "work-for-hire" doctrine does not require that employees consent to the transfer of their rights. Instead, work within the course and scope of their employment becomes the property of their employer without an agreement to the contrary. "[I]f the work is made for hire, 'the employer or other person for whom the work was prepared is considered the author . . . , and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all the rights in the copyright.' " *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003) (quoting 17 U.S.C. § 201(b)). Certain works are only works for hire "if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire," but this principle does not apply to "a work prepared by an employee within the scope of his or her employment." *Id.* (quoting 17 U.S.C. § 101; *see also id.* at 1140 n.4. No party has presented evidence that Fisher and Geffen agreed that Fisher would own the copyright to his works made for hire.

> c)  Whether, Assuming Fisher Drew the Smiley as a Work for Hire for Geffen,
>     Geffen's Rights Were Validly Assigned to Nirvana

Assuming Fisher drew the Smiley as a work for hire for Geffen, there is a triable issue of fact whether Geffen's rights were validly assigned to Nirvana. The parties have raised several related issues.

*First*, Nirvana disputes that Defendants have standing to challenge the validity of the assignments from Geffen to Nirvana. "Although a third party may not raise noncompliance with 17 U.S.C. § 204(a)'s writing requirement as a defense to a copyright transfer where the parties to the transfer do not dispute its existence, a third party is not foreclosed from challenging a plaintiff's ownership for purposes of standing." *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 986 (9th Cir. 2017) (internal citations omitted). Thus, Defendants may challenge Nirvana's ownership of the Copyright in a manner consistent with this standard.

*Second*, Defendants contend that Nirvana is precluded from arguing that, even if Fisher drew the Smiley, it still owns the rights to that Design. Defendants' position is that this argument contradicts the judicial admissions made in the Complaint. "Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them." *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988). Nirvana's Complaint states that the Design was "created by Kurt Cobain in about 1991 . . . ." Dkt. 1 ¶ 13. This statement does not preclude Nirvana from making the current argument. Nirvana still contends that Cobain drew the Smiley; there is no contradiction within its positions. Nirvana merely denies the materiality of this fact. Thus, assuming Fisher drew the Smiley, Nirvana claims it still owns the Copyright. This alternative argument is not foreclosed by Nirvana's pleadings.

*Third*, Defendants argue that UMG is not the successor-in-interest of Geffen and has no ability to assign Geffen's rights to the Smiley. The evidence cited by Defendants is a statement by their counsel that Plaintiff has not established the relationship, if any, between Geffen and UMG. *See* Dkt. 141, Zinna Decl. ¶ 30(v). The arguments of counsel are not evidence. Nirvana has proffered admissible evidence that UMG is Geffen's successor-in-interest. Michael Ostroff, an employee of UMG at the relevant time, testified that ownership of Geffen passed to UMG. Dkt. 100, Ostroff Decl. ¶ 2; *see also* Dkt. 100, Silva Decl. ¶ 16 (Nirvana's manager stated UMG was Geffen's "successor").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-10743 JAK (SK) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Nirvana L.L.C. v. Marc Jacobs International L.L.C. et al. | | |

*Fourth*, Fisher and Defendants argue that the assignment from UMG to Nirvana is invalid because assignments cannot be retroactive. "[A]n earlier oral assignment can be confirmed later in a writing." *Jules Jordan*, 617 F.3d at 1156 (holding the infringer lacked standing to challenge the earlier oral assignment because it was not written); *see also Valente-Kritzer Video v. Pinckney*, 881 F.2d 772, 775 (9th Cir. 1989) ("If an oral transfer of a copyright license is later confirmed in writing, the transfer is valid."); *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1428 (9th Cir. 1996) ("[U]nder some circumstances a prior oral grant that is confirmed by a later writing becomes valid as of the time of the oral grant, even if the writing is subsequent to the initiation of litigation on the copyright infringement."). "For a writing to 'validate' a past transfer, the past transfer must have actually occurred." *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 830 (3d Cir. 2011).[6] This transfer may be effected "by oral statement, by writing, or by conduct." *Marya v. Warner/Chappell Music, Inc.*, 131 F. Supp. 3d 975, 1002 (C.D. Cal. 2015); *see also Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 833 n.4 (3d Cir. 2011) (holding, in dicta, "it is likely possible for a copyright transfer to be implied from conduct and then later validated in writing").[7]

The evidence permits an inference that there was an oral agreement between Geffen and Nirvana predating this litigation that Nirvana owned the rights to the Design. Dkt. 231 at 8. Nirvana has offered testimony from individuals at Geffen stating that Geffen believed Nirvana owned the rights to the Design. Dkt. 100, Seibert Decl. ¶ 7. Nirvana has offered testimony that Nirvana obtained a copyright registration claiming ownership of the Design, and there is no evidence that Geffen objected to this registration. Dkt. 100, Draher Decl. ¶ 12; Novoselic Decl. ¶¶ 23-25. Nirvana also offered testimony that it began commercially exploiting shirts with the Design more than 30 years ago, that its exploitation was

---

[6] The parties have cited several other cases stating similar propositions. *See, e.g.*, *Studio S Imports, LLC v. Deutsch Imports, LLC*, No. CV1910666CJCRAOX, 2021 WL 3598571, at *3 (C.D. Cal. June 21, 2021) ("[A] writing signed after litigation began cannot confer standing unless it merely confirms an earlier agreement to grant a copyright ownership right to the plaintiff[.]"); *Study Edge, LLC v. Skoolers Tutoring Ctr., LLC*, No. 1:17CV76-MW/GRJ, 2017 WL 6994563, at *3 (N.D. Fla. Dec. 8, 2017) ("Allowing a subsequent assignment to automatically cure a standing defect would unjustifiably expand the number of people who are statutorily authorized to sue.") (quoting *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 780 (Fed. Cir. 1996)); *Princeton Payment Sols., LLC v. ACI Worldwide, Inc.*, No. 1:13-CV-852, 2014 WL 4104170, at *5 (E.D. Va. Aug. 15, 2014) (rejecting argument that "a *nunc pro tunc* agreement alone can retroactively confer rights when an earlier agreement did not"); *cf. Wave 3 Learning, Inc. v. AVKO Educ. Res. Found., Inc.*, No. 14 C 1948, 2015 WL 780091, at *3 (N.D. Ill. Feb. 23, 2015) ("Nothing existed as of the date Wave 3 filed suit that conceivably—let alone plausibly—could have transferred the copyrights in the Works to Wave 3."). The parties also cite a holding from the Second Circuit "that a license or assignment in copyright can only act prospectively. *Davis v. Blige*, 505 F.3d 90, 104 (2d Cir. 2007). However, *Davis* did not disturb the principle that "a later writing could memorialize or confirm an earlier oral agreement." *Id.* at 101.Therefore, it is unnecessary to determine whether, as some courts have held, *Davis* is limited to cases where the assignment is made by only one co-owner of the copyright. *See, e.g.*, *Young-Wolff v. John Wiley & Sons, Inc.*, No. 12-CV-5230 (JPO), 2016 WL 154115, at *3 (S.D.N.Y. Jan. 12, 2016).

[7] No party has cited authority that a past transfer may not be effected, and evidenced, by conduct as well as an oral communication. Moreover, the reasoning of *Bunge* is persuasive. The Copyright Act states that copyrights "may be transferred in whole or in part *by any means of conveyance* or by operation of law." 17 U.S.C. § 201(d)(1) (emphasis added). Copyrights, then, like any other form of property, can be transferred by conduct. *See* Restatement (Second) of Contracts § 19(1) ("The manifestation of assent may be made wholly or partly by written or spoken words *or by other acts or by failure to act*.") (emphasis added); 6 Am. Jur. 2d Assignments § 83 ("Under the appropriate circumstances, a right may even be assigned without the execution of a formal assignment.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-10743 JAK (SK) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Nirvana L.L.C. v. Marc Jacobs International L.L.C. et al. | | |

continuous, and that the shirts were very popular. Dkt. 100, Novoselic Decl. ¶ 21. There is no evidence
that Geffen ever objected to this conduct. It is also material that, after Fisher claimed authorship of the
Smiley, Geffen's successor disclaimed ownership of the Design and, out of an abundance of caution,
prepared a signed writing transferring any rights it did have to Nirvana. However, because no witness
can detail any precise occasion before the assignment in 2020 on which Geffen transferred its rights in
the Design to Nirvana, the facts do not compel the inference that Geffen agreed to transfer its rights
prior to this litigation.

Contrary to the argument made by Defendants and Fisher, it is not material that UMG and Geffen
presently believe that Cobain drew the Smiley and that Geffen did not need to assign any rights to
Nirvana. Based on the evidence already discussed, a reasonable factfinder could conclude that, if
Fisher drew the Smiley for Geffen, the conduct of Nirvana and Geffen suggests that Geffen agreed
Nirvana would own the Design.

Finally, contrary to Defendants' argument, the recording agreement between the members of Nirvana
and Geffen does not preclude a finding that Geffen agreed that Nirvana owned the rights to the Design.
That agreement stated that Geffen would be "the sole, exclusive and perpetual owner" of certain
artwork. Dkt. 141-20 at 3. However, that provision only applied to "artwork created for use in connection
with the Masters" delivered or recorded under the agreement. *Id.* Defendants and Fisher do not identify
with which Master or Masters the Design was associated, and there is no evidence that the Design was
created for use in connection with one or more of the Masters that fall within the scope of the
agreement. Indeed, the Design includes the name of the band, but does not reference any song or
album. Similarly, there is no evidence that any portion of the Design was used as album art or in a
music video for any of the songs covered by the agreement. There has been no showing that Geffen
needed the rights to the Design to record Nirvana's music and market it to the public, which was the
purpose of the parties' agreement. The witnesses' testimony was that the Design was intended to
promote Nirvana and/or its upcoming album, but there was no testimony that it was intended for use
with any specific Master or group. *See, e.g.*, Dkt. 100, Novoselic Decl. ¶ 15. Defendants and Fisher
have offered no evidence to warrant a different interpretation of the contract. Moreover, the agreement
cited by Defendants originated in 1991, it does not expressly preclude assignment of the covered
artwork, and it does not expressly require that the rights to the artwork be transferred only in writing.
*See* Dkt. 141-20. Therefore, even if the Smiley was covered by the agreement, the rights to the Smiley
could be transferred by the parties' subsequent oral statements and conduct.

*Fifth*, Defendants argue that the assignment from UMG to Nirvana did not transfer existing causes of
action and is, therefore, ineffective. "A grant of copyright, even if it purports to convey 'all right, title and
interest,' is generally construed not to assign existing causes of action unless such causes of action are
expressly included in the grant." *Oskar Sys., LLC v. Club Speed, Inc.*, 745 F. Supp. 2d 1155, 1159
(C.D. Cal. 2010) (quoting *Lanard Toys Ltd. v. Novelty Inc.*, 511 F. Supp. 2d 1020, 1033 (C.D. Cal.
2007)). Here, UMG, as successor-in-interest to Geffen, made the following statement on January 22,
2020:

> Geffen acknowledges and agrees that to the best of its knowledge, all copyright and
> related rights in the Nirvana 'Smiley Face' design and 'Happy Face' t-shirt design . . . are
> now and at all times have been owned by Nirvana, Inc. or its successor Nirvana, L.L.C.
> For the avoidance of doubt, to the extent necessary, Geffen retroactively grants and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-10743 JAK (SK) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Nirvana L.L.C. v. Marc Jacobs International L.L.C. et al. | | |

assigns all right, title and interest in and to the 'Smiley Face' design . . . and the 'Happy Face' t-shirt . . . to Nirvana, L.L.C. and its predecessors, effective as of the date that work was created in 1991.

Dkt. 100-12.

The language does not expressly assign any existing cause of action for copyright infringement. Standing alone, the assignment does not provide Nirvana with standing to challenge any infringing conduct by Defendants prior to the date of the assignment. However, "[f]or ordinary claims of copyright infringement, each new infringing act causes a new claim to accrue . . . ." *Seven Arts*, 733 F.3d at 1254. No party disputes that copyright assignments may operate prospectively. Thus, the assignment provides Nirvana with standing to sue for allegedly infringing conduct by the Defendants after the date of the assignment. Moreover, to the extent the assignment merely confirms a prior oral assignment that took place before the sale of the Accused Products began, Nirvana would also have standing to challenge Defendants' pre-2020 conduct, which occurred after the oral assignment.

> d) Whether, Assuming Cobain Drew the Smiley, Nirvana Owns the Rights to the Smiley

Assuming that Cobain drew the Smiley, Nirvana owns the rights to it. It is not genuinely disputed that Cobain was the president, a director, and an employee of Nirvana, Inc. *See* Dkt. 100, Novoselic Decl. ¶¶ 7–8, 25; Johnson Decl. ¶¶ 2–3, Ex. 2; Lee Decl. ¶ 7; Dkt. 100, Ex. 15 at 50:2-20, 72:1-9, 105:24-106:8, 111:10-23.[8] Nor is it genuinely disputed that, if Cobain drew the Smiley, it was in the course and scope of his work with the band. Nirvana has proffered a document, which was recorded with the Copyright Office, assigning the Registration from Nirvana, Inc., a Washington corporation, to Nirvana, a Washington general partnership, on November 15, 1997. Dkt. 100-9. Nirvana has also proffered a document recorded with the Copyright Office assigning the Registration from the Nirvana general partnership to Nirvana, L.L.C., which is the plaintiff in this action, on July 29, 1998. Dkt. 100-10.

Defendants have raised several issues, which have been reorganized to streamline the discussion of them. Defendants first argue that neither of the assignments is effective because neither refers to the conveyance of any of the exclusive rights in § 106 of the Copyright Act. This argument is unpersuasive. "No magic words must be included in a document to satisfy § 204(a)." *Radio Television Espanola S.A. v. New World Ent., Ltd.*, 183 F.3d 922, 927 (9th Cir. 1999). "Rather, the parties' intent as evidenced by the writing must demonstrate a transfer of the copyright." *Id.* Thus, "[i]t doesn't have to be the Magna Carta; a one-line pro forma statement will do." *Id.* (quoting *Effects Assocs., Inc. v. Cohen*, 908 F.2d

---

[8] Defendants argue that Cobain was not an employee of Nirvana, Inc. because the witness designated by Nirvana pursuant to Fed. R. Civ. P. 30(b)(6) could not recall who hired Cobain or whether Cobain presided over meetings of the board of directors or stockholders of Nirvana, Inc. Dkt. 139 ¶ 13; Dkt. 141-7 at 96:15-99:19, 101:6-12. Defendants also argue that there was no written employment agreement between Cobain and Nirvana, Inc., that Cobain did not have a supervisor and that no one had the ability to fire him. *Id.* None of these facts is material to any of the factors that are relevant in determining whether Cobain was an employee of Nirvana, Inc. This is confirmed because Nirvana, Inc. was a small, closely held corporation and Cobain was one of the founders. Defendants also argue that there was no written agreement between Cobain and Nirvana, Inc. stating that the Smiley was a work for hire. Dkt. 141-7 at 54:1-56:22. However, because it is not genuinely disputed that Cobain was an employee of Nirvana, Inc., this is not a material fact.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-10743 JAK (SK) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Nirvana L.L.C. v. Marc Jacobs International L.L.C. et al. | | |

555, 557 (9th Cir. 1990)). Here, each assignment stated that the assignor "[a]ssigns, transfers, and conveys to [the] [a]ssignee, [the] [a]ssignor's entire right, title, and interest in and to the Copyright, together with the goodwill and business symbolized thereby, and said Copyright listed above." *See* Dkts. 100-9, 100-10. These assignments are sufficient.

Defendants next argue that the recording agreement between Nirvana and Geffen provided that all of Nirvana's artwork belonged to Geffen. For the reasons already stated, there has not been a showing that the recording agreement covers the Copyright at issue.

Defendants also argue that the assignments are invalid because Nirvana Inc. dissolved before it assigned its rights and because the Nirvana general partnership either never existed or also dissolved before the date of its assignment to Nirvana, L.L.C. Neither argument is persuasive. Defendants contend that Nirvana Inc. was dissolved on November 14, 1997, but it did not assign its ownership of the Copyright to the Nirvana general partnership until November 15, 1997. Dkt. 139 ¶¶ 17-18. Even assuming these facts as correct, Nirvana Inc. had the power to make the assignment at issue.

Under Washington law, "[a] dissolved corporation continues its corporate existence" and may act "to wind up and liquidate its business and affairs . . . ." Wash. Rev. Code § 23B.14.050.[9] Distributing assets to a successor entity falls within the scope of that provision. Defendants contend that the Nirvana general partnership never existed because there was no written partnership agreement and there is insufficient evidence of the shared business undertakings of the partners. Under Washington law, a partnership is "an association of two or more persons to carry on as co-owners a business for profit . . . ." Wash. Rev. Code § 25.05.005(6). "For the purpose of establishing a partnership . . . no formal contract is necessary," and "[s]uch a partnership may be made by oral or written agreement, and may result from the acts or conduct of the parties." *Roediger v. Reid*, 133 Wash. 608, 610–11, *on reh'g*, 133 Wash. 608 (1925). A review of the testimony cited by Defendants shows that it is not material to whether the members of the partnership carried on as co-owners of a business for profit. Dkt. 141-2 at 49:11-50:15; Dkt. 141-4 at 25:25-26:8, 60:12-61:23, 80:23-81:5, 102:22-104:13, 105:3-9; Dkt. 141-7 at 105:12-22, 121:1-8. Certain witnesses' inability to recall various details of the partnership is not sufficient to raise a triable issue with respect to the partnership's existence. None of the witnesses identified by Defendants stated or implied that the partnership did not exist. Indeed, there was other testimony that the partnership existed, contained the members of the band Nirvana (and Cobain's estate), and was used for the non-touring operations of Nirvana. *See, e.g.*, Dkt. 141-4 at 61:3-23, 83:18-25; Dkt. 141-7 at 120:22-25. Further, the existence of the partnership is reflected in several of the documents that have been submitted. *See, e.g.*, Dkt. 100-9; Dkt. 100-10; Dkt. 100-14 at 8.

Defendants contend, that even assuming the Nirvana general partnership existed, it terminated on April 5, 1994, but the general partnership's Copyright was not transferred to Nirvana, L.L.C. until 1998. Dkt. 139 ¶¶ 20, 23.[10] Even accepting these statements as true, under Washington law, "a partnership continues after dissolution," albeit "only for the purpose of winding up its business." Wash. Rev. Code § 25.05.305. Moreover, "[t]he partnership is [not] terminated [until] the winding up of its business is completed." *Id.* There is uncontroverted testimony from Nirvana's manager that, while he could not

---

[9]  Based on a review of the history of the statutes cited, it has not been shown that Washington has materially changed the powers of a dissolved corporation or partnership between 1991 and the present.
[10]  It is argued that the Copyright was transferred to Nirvana, L.L.C. twice: once on January 9, 1998 and again on July 19, 1998. Dkt. 139 ¶ 23.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-10743 JAK (SK) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Nirvana L.L.C. v. Marc Jacobs International L.L.C. et al. | | |

remember precisely when the partnership terminated, the Nirvana general partnership was winding down at the time of the assignments. Dkt. 141-4 at 80:2-82:24. When the Nirvana general partnership acquired the Copyright, it merely accepted property related to its pre-termination business from a related entity that was also being dissolved. The Nirvana general partnership paid only nominal consideration for this assignment. Similarly, when it assigned the Copyright to Nirvana, L.L.C., it was liquidating its assets. Although it had been dissolved, the Nirvana general partnership had the power to engage in the conduct at issue.[11]

Defendants also argue that, assuming the Nirvana general partnership existed, it is "equally likely" that any artwork created by Cobain was in furtherance of the partnership, and not Nirvana Inc. *See* Dkt. 138 at 24. Defendants next argue that, if Cobain drew the Smiley, he owned it as an individual and the Smiley was never held by Nirvana Inc. Neither argument is persuasive. Nirvana possesses a copyright registration, which is presumed to be valid and accurate, that identifies the claimant as Nirvana Inc., rather than the Nirvana general partnership or Cobain as an individual. Speculation about the entity for which Cobain might have been working is insufficient to raise a triable issue of fact. Defendants argue that, because the individual Nirvana members signed the recording agreement with Geffen, the intellectual property associated with Nirvana was held by the individual band members rather than Nirvana, Inc. Again, there has been no showing that the recording agreement covers the Design.

2.    Copyright Validity

A certificate of registration is valid "regardless of whether the certificate contains any inaccurate information, unless – (A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1). "The scope of an inaccuracy's materiality is determined by making a statutorily mandated request of 'the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register . . . to refuse registration.' " *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.* ("*Unicolors II*"), 52 F.4th 1054, 1064 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 2583 (2023) (quoting 17 U.S.C. § 411(b)(2)). "Before making such a request, a court must first establish whether the registrant had the proper 'knowledge' of the inaccuracy under § 411(b)(1)(A)." *Id.* The requisite knowledge may be either factual knowledge or legal knowledge. *Id.* at 1067. "[W]illful blindness may support a finding of actual knowledge." *Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.* ("*Unicolors I*"), 595 U.S. 178, 187 (2022). "Circumstantial evidence, including the significance of the legal error, the complexity of the relevant rule, the applicant's experience with copyright law, and other such matters" can sustain a finding of willful blindness. Therefore, "a party seeking to invalidate a copyright registration under § 411(b) must demonstrate that (1) the registrant submitted a registration application containing inaccuracies, (2) the registrant knew that the application failed to comply with the requisite legal requirements, and (3) the inaccuracies in question were material to the registration decision by the Register of Copyrights. *Unicolors II*, 52 F.4th at 1067. "Put differently, a registration is invalid under § 411(b) if the registrant perpetrated fraud on the Copyright Office by knowingly misrepresenting material facts." *Id.*

---

[11] Defendants also cite authority that a corporation cannot acquire ownership of a copyright while it is suspended. *Blackthorne Publ'g, Inc. v. Black*, 210 F.3d 381, at *2 (9th Cir. 2000) (unpublished disposition). This authority is inapposite: there has been no showing that the any of the entities at issue has been suspended.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-10743 JAK (SK) | Date | December 21, 2023 |
|----------|------------------------|------|-------------------|
| Title | Nirvana L.L.C. v. Marc Jacobs International L.L.C. et al. | | |

a)      Whether the '166 Registration Is Invalid Because the Designation of the Author, the Claimant, and Whether the Design Was a "Work for Hire" Is Inaccurate

There are triable issues of fact as to the validity of the '166 Registration. The statement in the Registration that the design was a "work for hire" was accurate because, for the reasons already stated, the Smiley was either a work for hire completed by Cobain for Nirvana Inc. or by Fisher for Geffen. Similarly, if it is determined that Cobain drew the Smiley, the Registration has no error as to either the author or the claimant. "If the work is for hire, 'the employer or other person for whom the work was prepared is considered the author' and owns the copyright, unless there is a written agreement to the contrary." *Reid*, 490 U.S. at 737 (quoting 17 U.S.C. § 201(b)). However, if Fisher drew the Smiley, the author and claimant should have been Geffen. Thus, there is a triable issue of fact as to whether there was an error in the '166 Registration.

Assuming Fisher drew the Smiley, the evidence would permit, but not compel, the inference that Nirvana knowingly misrepresented the Design's author and claimant to the Copyright Office. Assuming again that Fisher drew the Smiley, Cobain necessarily knew that he did not draw it. No party has identified evidence that Cobain was involved in the preparation of the Registration, but because Nirvana concedes that Cobain was involved in preparing artwork for the band, a reasonable factfinder could infer that Cobain participated in preparing the Registration or communicated with those who did so. Moreover, Fisher testified that he provided a copy of the Design to someone at Nirvana after he created it. Dkt. 141-3 at 73:1-25. This is sufficient to raise a triable issue as to whether Nirvana knew Fisher created the Design. Assuming, again, that Fisher drew the Smiley, there is also sufficient circumstantial evidence to create a triable issue as to whether Nirvana knew its application failed to comply with the applicable legal requirements. The alleged inaccuracy, assuming it occurred, was a significant one. Nor is the underlying fact -- whether Cobain or Fisher authored the Design by drawing the Smiley -- complex. Similarly, Nirvana used the assistance of legal and business professionals to prepare the Registration. Dkt. 100, Novoselic Decl. ¶ 23. However, because there is little evidence presented as to how the Registration was prepared, and how those individuals may have learned about the facts and law at issue, as to the issue of knowledge, summary judgment is not appropriate as to either Nirvana or Defendants.

Because there are triable issues as to both the presence of the error, and whether it represents a knowing misstatement, it is not presently appropriate to ask the Register of Copyrights to state whether the potential inaccuracy was material.

b)      Whether the '166 Registration Is Invalid Because the Date of First Publication Is Inaccurate or Because the Design Is an Unacknowledged Derivative Work

Nirvana seeks summary judgment on the issue whether the Registration is invalid due to any alleged inaccuracy in the publication date or because the Registration failed to state that the Design is a derivative work. Dkt. 98 at 27-29. Both of these disputes are premised on Defendants' contention that the Smiley was published prior to November 1991. Triable issues of fact remain with respect to this alleged inaccuracy.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-10743 JAK (SK) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Nirvana L.L.C. v. Marc Jacobs International L.L.C. et al. | | |

As a preliminary matter, Defendants claim Nirvana cannot move for summary judgment on these issues because they do not relate to Nirvana's request that the Court determine that it owns the Copyright. Dkt. 138 at 29. However, a party may move for summary judgment on multiple claims or defenses or on multiple parts of those claims or defenses. *See* Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense -- or the part of each claim or defense -- on which summary judgment is sought."). Therefore, Nirvana may raise these issues.

There is a triable issue whether the Design was first published prior to the date in the Registration. Defendants have proffered testimony that a T-shirt bearing the Smiley was distributed or given away prior to November 1991. Dkt. 141-7 at 72:9-23. There was also testimony that the Smiley was used on a flyer on or before August 1991. *Id.* at 62:23-63:23. Defendants also proffered testimony that the Smiley was used on an invitation to a release party in September 1991. *Id.* at 66:25-69:12. Nirvana argues that this conduct cannot constitute publication because the Design was not released to the general public. However, drawing every reasonable inference in favor of Defendants, this evidence is sufficient to create a triable issue.

Assuming the Registration was inaccurate, there is a triable issue whether Nirvana made a knowing misstatement. Defendants contend that Nirvana made a knowing misstatement because it conceded that the Design was a derivative work. Nirvana did not make that concession. *See* Dkt. 32 at 11-14. However, Defendants' other evidence is sufficient as to a triable issue. The facts at issue are Nirvana's own conduct. Given all the testimony that has been proffered about the organization of Nirvana, there is a triable issue whether it knew when it filed its copyright application about the T-shirts, flyer, and invitation described above. As to knowledge of the law, the term "publication" has a specific meaning under copyright law that is subtle. However, taking as true Defendant's contention that the Design was made widely available without restriction on its dissemination, the alleged error was a significant one. As noted, Nirvana was a sophisticated entity that used the services of legal and business advisors. Drawing every reasonable inference in favor of Defendants, a factfinder could determine there was sufficient circumstantial evidence of willful blindness.

Again, because there is a triable issue whether the Registration is inaccurate and whether the alleged inaccuracy represents a knowing misstatement, it is not presently appropriate to ask the Register of Copyrights to state whether the potential inaccuracy was material.

> c)   Whether the '166 Registration Is Invalid Because the Design Lacks Protectable Expression

Nirvana has moved for summary judgment with respect to whether the Design contains protectable expression. Defendants' responsive arguments are unpersuasive. Defendants first contend that whether the Design is original is irrelevant to the issue of copyright ownership. Again, as noted, Nirvana may move for summary judgment on several issues. The only other argument offered by Defendants is the contention that originality is a question of fact. This is not a per se rule. *See Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 344 (1991) (determining, on appeal from grant of summary judgment, because a telephone directory was not original, it was not copyrightable). Nor do Defendants do not explain or present evidence to support the position that a factfinder could determine that the Design is not original. Nirvana claims that the Smiley contains original expression in the distinctive, slightly asymmetrical "circle" shape of the face, the large and relatively wide-set placement of the eyes,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-10743 JAK (SK) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Nirvana L.L.C. v. Marc Jacobs International L.L.C. et al. | | |

the distinctive "squiggle" of the mouth and the use, placement and shape of the tongue that sticks out from the right side of the mouth. Dkt. 98 at 30. Nirvana also relies on the presumption of validity. *Id.*

"Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Feist*, 499 U.S. at 345. "Although copyright protects only original expression, it is not difficult to meet the famously low bar for originality." *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1069 (9th Cir. 2020). "Even in the face of this low threshold, copyright *does* require at least a modicum of creativity and does not protect every aspect of a work; ideas, concepts, and common elements are excluded." *Id.* "Authors borrow from predecessors' works to create new ones, so giving exclusive rights to the first author who incorporated an idea, concept, or common element would frustrate the purpose of the copyright law and curtail the creation of new works." *Id.*

Each of the features identified by Nirvana in support of the motion distinguishes the Smiley from the generic idea of a smiling face. The Design is depicted in the following image:



Dkt. 1 at 24. It is also noteworthy that Defendants do not contend that Cobain or Fisher copied the Smiley from any previous smiling face. There is also no evidence that any of the features identified by Nirvana is a common feature of smiley faces. *See generally* Dkt. 138. Nor is there evidence that the features identified by Nirvana are broad and simply reflect ideas or concepts. Because Nirvana's copyright is presumed valid, Defendants must present some evidence to rebut its validity. They have not done so; accordingly, it is established for purposes of trial that the '166 Registration is not invalid for lack of protectable expression.

  3.  <u>Substantial Similarity</u>

"Absent direct evidence of copying, proof of infringement involves fact-based showings that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-10743 JAK (SK) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Nirvana L.L.C. v. Marc Jacobs International L.L.C. et al. | | |

defendant had 'access' to the plaintiff's work and that the two works are 'substantially similar.' " *Antonick v. Elec. Arts, Inc.*, 841 F.3d 1062, 1065 (9th Cir. 2016) (quoting *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000)). "The Ninth Circuit employs a two-part test for determining whether one work is substantially similar to another." *Id.* (quoting *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 624 (9th Cir. 2010)). The two parts of the test are as follows:

> [A plaintiff] must prove *both* substantial similarity under the "extrinsic test" and substantial similarity under the "intrinsic test." The "extrinsic test" is an objective comparison of specific expressive elements. The "intrinsic test" is a subjective comparison that focuses on whether the ordinary, reasonable audience would find the works substantially similar in the total concept and feel of the works.

*Id.* at 1065-66 (quoting same).

"Both tests must be satisfied for the works to be deemed substantially similar." *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020). "Crucially, because only substantial similarity in protectable expression may constitute actionable copying that results in infringement liability, 'it is essential to distinguish between the protected and unprotected material in a plaintiff's work.' " *Id.* (quoting *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004)). "Although [the Ninth Circuit has] not . . . provide[d] an exhaustive list of relevant factors for evaluating art work, the subject matter, shapes, colors, materials, and arrangement of the representations may be considered in determining objective similarity in appearance." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 826 (9th Cir. 2002).

A visual comparison confirms that a reasonable factfinder could conclude that there is substantial similarity between Nirvana's shirt and Defendants' products. Nirvana's shirt is shown in the following images:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-10743 JAK (SK) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Nirvana L.L.C. v. Marc Jacobs International L.L.C. et al. | | |



*See* Dkt. 1 at 24. Defendants' products are shown in the following images:

  

*See* Dkt. 1 ¶ 17.

A triable issue is raised whether the expressive elements, viewed objectively, are protectable and reflect a substantial similarity between Nirvana's shirt and Defendants' products. Both designs contain a face with a specific, slightly asymmetrical circle shape. Although many faces are comprised of asymmetrical circles, the faces at issue here use the same asymmetrical circle. Specifically, there is a bulge towards the lower left and a somewhat smaller bulge to the right and there are portions of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-10743 JAK (SK) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Nirvana L.L.C. v. Marc Jacobs International L.L.C. et al. | | |

circle on the left side and towards the bottom that are nearly straight. In both designs, the eyes are placed in the same spots, which are relatively high up on the face and set relatively far apart. In both designs, the eye on the right side of the image (as viewed), is slightly higher on the face than the left. In both designs, the mouth and tongue are both depicted in almost identical ways. With respect to the mouth, it curves in exactly the same way in both designs and is more erratic on the left than on the right. Each end of the mouth ends in a short, approximately straight line. The tongue is in the same location in both designs and is the same size in both designs. The two tongues appear identical.

Defendants argue that they have only been accused of misappropriating part of the design. Thus, they contend that their products do not use the word Nirvana, do not use X's for eyes, and do not use the phrase "Flower Sniffin Kitty Pettin Baby Kissin Corporate Rock Whores." Dkt. 174 at 8. However, "[i]t is entirely immaterial that, in many respects, plaintiff's and defendant's works are dissimilar, if in other respects, similarity as to a substantial element of plaintiff's work can be shown." 4 Nimmer on Copyright § 13.03 (2019). Thus, "[n]o plagiarist can excuse the wrong by showing how much of his work he did not pirate." *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936). Consequently, it is immaterial that it is not alleged that Defendants misappropriated certain portions of Nirvana's Design because the other portions are sufficient to show substantial similarity. Moreover, even with respect to the elements identified by Defendants, there are similarities. Although the "eyes" of the smileys on Defendants' products use the letters "M" and "J" instead of the letter "X," both letters are the same color, have the same font, are the same size, and are placed in the same spot. Notwithstanding that Defendants' products do not contain the word "Nirvana," they use the word "Heaven," which some sources state is a synonym of "Nirvana." *See, e.g.*, *Nirvana*, Merriam-Webster Thesaurus, https://www.merriam-webster.com/thesaurus/nirvana (last accessed Dec. 4, 2023). Also, the relevant text is the same color, is written in approximately the same font, is the same size, and is placed in the same spot on both Nirvana's shirt and Defendants' products.

Defendants also argue that a substantially circular outline for a face and a half circle smile are standard features in the treatment of the idea of a smiley face on clothing. Dkt. 126 ¶ 76. Defendants have proffered evidence of a large number of smiley faces containing these two features. *See* Dkts. 129-11, 129-25. Because there are many more similarities between Nirvana's shirt and Defendants' products other than these two, this evidence does not warrant summary judgment for Defendants.

C.      Fisher's Copyright Claim

Fisher's copyright claim is premised on his contention that he drew the Smiley, and that the Design was not a work made for hire for Geffen. *See generally* Dkt. 214. Although Fisher has raised a triable issue whether he drew the Smiley, there is no triable issue whether Fisher owns the Design. Assuming he drew the Smiley, no reasonable factfinder could find that Fisher was not an employee of Geffen when he drew the work or that Fisher did the drawing while acting outside the scope of his employment. For these reasons, it is appropriate to grant the motion for summary judgment against Fisher on his claim.

D.      Nirvana's Lanham Act Claim

Nirvana's Lanham Act claim is based upon its contention that it uses the Smiley as a trademark. Defendants challenge both the validity of that Mark and the contention that Defendants' products infringe that Mark.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV18-10743 JAK (SK) | Date | December 21, 2023 |
| Title | Nirvana L.L.C. v. Marc Jacobs International L.L.C. et al. | | |

    1.    <u>Trademark Validity</u>

        a)    Legal Standards

"A trademark is a limited property right in particular word, phrase, or symbol, that 'is used to identify a manufacturer or sponsor of a good or the provider of a service.' " *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 806 n.12 (9th Cir. 2003) (internal citation omitted (quoting *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 900 (9th Cir. 2002), *cert. denied*, 537 U.S. 1171 (2003)). "Implicit in the concept of a trade mark 'is a requirement that there be direct association between the mark . . . and the services specified in the application, i.e. that it be used in such a manner that it would be readily perceived as identifying such services.' " *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902, 906 (9th Cir. 1995) (quoting *In re Moody's Investor Serv., Inc.,* 13 U.S.P.Q.2d 2043, 2047 (T.T.A.B.1989)). "The mark need not be the name of the brand; it need not even be a word; it can be a slogan, a symbol, a combination of words and symbols, an ornamental feature, a distinctive shape, or something else intended to remind the consumer of the brand." *Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604, 609 (7th Cir. 1986). However, "[t]he manner in which a symbol or design is used . . . is relevant to the likelihood that it will be perceived as an indication of source. In some instances a design is likely to be viewed as mere ornamentation rather than as a symbol of identification." *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 541 (5th Cir. 2015) (quoting Restatement (Third) of Unfair Competition § 13 cmt. d). "If customers perceive a design only as pleasing ornamentation, then the design does not serve as a trademark." 1 McCarthy on Trademarks and Unfair Competition § 3:4 (5th ed. 2023). "If customers perceive a design as not only visually attractive, but also as an indicator of source, then it serves as a trademark and as protectable trade dress." *Id.*

"While the issue of use as a trademark is similar to the issues of inherent distinctiveness and secondary meaning, it is a separate question." 1 McCarthy on Trademarks and Unfair Competition § 3:4 (5th ed. 2023). "Usually, the proponent of exclusive rights in an ornamental design satisfies its burden of proof by pointing out that it has used the design in such a size, placement and manner that both customers and competitors are likely to recognize it as an indication of origin." *Id.* § 7:24. "But in a borderline case where it is not at all obvious that the designation has been used as a mark, other evidence (such as secondary meaning-type circumstantial evidence or a survey) may be necessary to prove trademark perception." *Id.* "While in theory, there are two separate issues of whether a decorative design is also a mark and whether a design mark is inherently distinctive, in practice, the two issues often compress into one." *Id.*

With respect to distinctiveness, a plaintiff making a trademark claim must demonstrate that "the public recognizes [its] symbol as identifying [its] good or services and distinguishing them from those of others." *Comedy III Prods., Inc. v. New Line Cinema*, 200 F.3d 593, 595 (9th Cir. 2000), *as amended on denial of reh'g and reh'g en banc* (Feb. 4, 2000) (quoting 1 McCarthy on Trademarks § 15:1 (4th ed.1998)). This can be established "by claiming either that (a) [the] 'symbol' is inherently distinctive, or (b) that even if not inherently distinctive, the symbol has become distinctive through the acquisition of 'secondary meaning.'" *Id.* (quoting same). "[A]lmost any symbol can serve as a trade name and be protected from infringement if it has acquired that degree of consumer association and recognition characterized as secondary meaning, and can show likelihood of confusion with a competitor." *Am. Sci.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-10743 JAK (SK) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Nirvana L.L.C. v. Marc Jacobs International L.L.C. et al. | | |

*Chem., Inc. v. Am. Hosp. Supply Corp.*, 690 F.2d 791, 792 (9th Cir. 1982). Secondary meaning can be established with "direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant." *P & P Imports LLC v. Johnson Enterprises, LLC*, 46 F.4th 953, 961 (9th Cir. 2022).

"When words or designs are used on T-shirts, it is a highly fact-intensive determination of whether these symbols are solely decorative ornamentation, or in addition serve as a trademark indicating a 'secondary source.' " 1 McCarthy on Trademarks and Unfair Competition § 7:24. The following discussion is explains the application of these standards:

> It is a matter of common knowledge that T-shirts are "ornamented" with various insignia, including college insignias, or "ornamented" with various sayings such as "Swallow Your Leader[.]" In that sense what is sought to be registered could be construed to be ornamental. If such ornamentation is without any meaning other than as mere ornamentation it is apparent that the ornamentation could not and would not serve as an indicia of source. Thus, to use our own example, "Swallow Your Leader" probably would not be considered as an indication of source.

> The "ornamentation" of a T-shirt can be of a special nature which inherently tells the purchasing public the source of the T-shirt, not the source of manufacture but the secondary source. Thus, the name "New York University" and an illustration of the Hall of Fame, albeit it will serve as ornamentation on a T-shirt will also advise the purchaser that the university is the secondary source of that shirt. It is not imaginable that Columbia University will be the source of an N.Y.U. T-shirt. Where the shirt is distributed by other than the university the university's name on the shirt will indicate the sponsorship or authorization by the university.

> In the case before us, the T-shirt is ornamented with applicant's trademarks, and considering the nature of T-shirts, that particular ornamentation can serve as an indication of a secondary source of origin. The matter sought to be registered is an arbitrary symbol and can and does function as a trademark. As used on the T-shirts, we conclude that the mark serves as an identifier of a secondary source and as such is registrable.

*In Re Olin Corp.*, 181 U.S.P.Q. (BNA) ¶ 182 (T.T.A.B. Nov. 19, 1973). When "an alleged mark serves as part of the aesthetic ornamentation of goods, the size, location, dominance, and significance of the alleged mark as applied to the goods are all factors which figure prominently in the determination of whether it also serves as an indication of origin." *In Re Astro-Gods Inc.*, 223 U.S.P.Q. (BNA) ¶ 621 (T.T.A.B. Aug. 10, 1984).

        b)      Application

Nirvana has raised triable issues whether the Design is used as a trademark and whether it has acquired secondary meaning. The evidence proffered by Nirvana supports an inference that consumers associate the Mark with a single source, and that the Mark is not entirely ornamental.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-10743 JAK (SK) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Nirvana L.L.C. v. Marc Jacobs International L.L.C. et al. | | |

Defendants object that Nirvana has not responded separately to their arguments regarding use as a trademark and distinctiveness. Nirvana has not waived its right to contest Defendants' arguments regarding use as a trademark. Although the inquiries are distinct, they often overlap and correspond in practice. Thus, the evidence used to prove secondary meaning is routinely presented to support a claim of use as a trademark. However, because Nirvana only argues that the Mark has acquired distinctiveness, and not that it is inherently distinctive, only the former argument is evaluated here. *See* Dkt. 161 at 29-34.

Defendants also object to the admission of Bruce Fingeret's declaration and the exhibits it proffers. Dkt. 174 at 9-10. Defendants' position is that the declaration is inadmissible because Mr. Fingeret was not identified in Nirvana's Rule 26 disclosures or interrogatory responses. Defendants also object that Mr. Fingeret's testimony concerns matters about which Nirvana's 30(b)(6) representative lacked knowledge. Further, Defendants contend that there is an insufficient foundation for the testimony advanced in the declaration. Based on a review of Mr. Fingeret's declaration and the other materials in the record, at this time, the merit of Defendants' objections cannot be evaluated. Nirvana's Rule 26 disclosures and interrogatory responses were not provided. Therefore, it cannot be determined whether Mr. Fingeret was, or should have been disclosed. In addition, there is insufficient evidence to determine whether any failure to disclose his testimony was substantially justified or caused prejudice to Defendants. Similarly, there is insufficient evidence of the topics with respect to which Defendants sought testimony from the Rule 30(b)(6) witness, so it cannot be determined whether the testimony by Nirvana's representative was insufficient, and as well as prejudicial. At the present time, it is also not determined whether Mr. Fingeret's testimony could "be deemed as clarifying or simply providing full context for the Rule 30(b)(6) deposition." *See Snapp v. United Transportation Union*, 889 F.3d 1088, 1103 (9th Cir. 2018). Finally, it cannot presently be determined the extent to which the statements by Mr. Fingeret are ones for which there is a sufficient foundation*, e.g,* based on his personal knowledge. These issues may be renewed through a motion in limine. Because Mr. Fingeret's declaration, and the exhibits cited therein, are not necessary to the disposition of the motion, they are not considered here.

Evidence of Nirvana's sales and the duration of its use of the Mark supports its position that there is secondary meaning. Nirvana has proffered testimony that it has continuously used the Mark on merchandise since 1991. Dkt. 100, Novoselic Decl. ¶ 21, Silva Decl. ¶¶ 9-10. Nirvana also proffered testimony that it has sold tens of millions of dollars' worth of merchandise bearing the Mark, including more than $8.5 million in 2019 and the first half of 2020. *Id.* at Silva Decl. ¶ 10. Defendants object that no precise sales figure has been provided, no evidence has been presented about the proportion of the sales at issue that occurred in the United States, and no evidence has been presented about the proportion of the sales at issue that occurred prior to Defendants' first alleged use of the Mark. These arguments are significant, but they do not preclude the admissibility of the evidence in determining whether there is a genuine dispute of material fact. Further, Nirvana's sales figure, if credited, is significantly higher than that necessary to support a finding of secondary meaning. Thus, it is not determinative that the figure is not precise, that some of the relevant sales may have been made outside the United States or were made after Defendants began using the Mark. It is also material that all parties, including Nirvana, are based in the United States. In addition, Defendants allegedly began using the Mark in late 2018 and Nirvana proffered testimony that only $8.5 million in sales occurred after that period. There is sufficient evidence that substantial sales were made prior to late 2018, especially given the testimony that the Mark was in continuous use for 30 years.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-10743 JAK (SK) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Nirvana L.L.C. v. Marc Jacobs International L.L.C. et al. | | |

Testimony by Defendants' employees also supports Nirvana's position regarding secondary meaning. Marc Jacobs testified that "the smiley face with the crooked tongue" was associated in his mind with Nirvana, albeit not exclusively. Dkt. 159-1 at 104:7-16. Jacobs also stated that he recognized the Nirvana t-shirt. *Id.* at 130:20-131:24. Jacobs conceded that the image and name of Nirvana was widely known in the 1990s. *Id.* at 133:9-11. Shown the Smiley, Jacobs stated that it was "[a]n iconic image" and a "[f]amous image" because it was "[w]idely known." *Id.* at 135:5-15. Another employee of Defendants testified that they associated a version of a smiley face with the band Nirvana. Dkt. 159-2 at 10:3-6. The same individual also testified that "the smiley face with the two X's with the word 'Nirvana'" was "an iconic image[.]" *Id.* at 87:1-10. A third employee of Defendants also testified that they knew the smiley face logo "was an image associated with Nirvana[.]" Dkt. 159-3 at 84:4-13.

"When words or designs are used on T-shirts, it is a highly fact-intensive determination of whether these symbols are solely decorative ornamentation, or in addition serve as a trademark indicating a 'secondary source.' " 1 McCarthy Trademarks and Unfair Competition § 7:24 (5th ed. 2023). Nirvana has sold a significant number of shirts bearing the Mark over a significant time period. Even some of Defendants' employees concede that they associate the Mark with Nirvana, which is relevant both because these individuals are in the fashion industry and knowledgeable and consumer reactions, and because they have no reason to overstate consumer association of the Mark with Nirvana. *See Atari Interactive, Inc. v. Hyperkin Inc.*, No. 219CV00608CASAFMX, 2020 WL 4287584, at *13 (C.D. Cal. July 27, 2020) (finding genuine dispute of material fact on secondary meaning where, among other things, employee of defendant stated that consumers would recognize the plaintiff's product). After considering this evidence, as well as evidence as to the size, location, dominance and significance of the Mark on Nirvana's shirts, it is determined that there is a triable issue of fact as to whether the Mark has acquired distinctiveness.

Defendants argue that summary judgment is warranted based on the results of a survey conducted by Sarah Butler. "[D]irect survey evidence of purchaser perception is not required" to successfully demonstrate secondary meaning. *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009); *see Adidas Am., Inc. v. Skechers USA, Inc.*, No. 3:15-CV-01741-HZ, 2017 WL 3319190, at *10 (D. Or. Aug. 3, 2017) (denying summary judgment even though defendant submitted unrebutted survey conducted by Sarah Butler because plaintiff offered relevant testimony from witnesses and plaintiff raised a factual dispute as to whether survey was deficient). As in *Adidas*, Nirvana has provided sufficient testimony to raise a triable issue as to secondary meaning. And, as in *Adidas*, Nirvana has raised a triable issue as to the weight of the survey results by using "control stimuli that artificially reduced secondary meaning results." *Adidas*, 2017 WL 3319190, at *10; *cf.* Dkt. 161 at 33 (comparing Ms. Butler's test image and her control image). For these reasons, it is determined that the survey does not warrant summary judgment. Therefore, it is unnecessary to consider Nirvana's alternate argument that the survey is inadmissible. This challenge may be renewed through a motion in limine.

2. <u>Trademark Infringement</u>

Nirvana has raised a triable issue whether Defendants have infringed the Mark. "The core element of trademark infringement is the likelihood of confusion, *i.e.,* whether the similarity of the marks is likely to confuse customers about the source of the products." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992). The relevant "factors include: (1) strength of the allegedly infringed mark;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-10743 JAK (SK) | Date | December 21, 2023 |
|----------|------------------------|------|-------------------|
| Title | Nirvana L.L.C. v. Marc Jacobs International L.L.C. et al. | | |

(2) proximity or relatedness of the goods; (3) similarity of the sight, sound, and meaning of the marks; (4) evidence of actual confusion; (5) degree to which the marketing channels converge; (6) type of the goods and degree of care consumers are likely to exercise in purchasing them; (7) intent of the defendant in selecting the allegedly infringing mark; and (8) likelihood that the parties will expand their product lines." *Id.* "The presence or absence of a particular factor does not necessarily drive the determination of a likelihood of confusion." *Id.* at 1291.

Two of these factors overlap substantially with determinations that have already been made. With respect to the similarity of the Marks, it "is best adjudged by appearance, sound, and meaning"; "the marks must be considered in their entirety and as they appear in the marketplace"; and "similarities are weighed more heavily than differences." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1032 (9th Cir. 2010). Here, there are numerous similarities in the appearance of the two Marks. Although the "substantial similarity" analysis is distinct from the one for "likelihood of confusion," the visual features considered in determining that the parties' products were substantially similar also support the conclusion that their Marks are confusingly similar.

With respect to the strength of the Mark, "[t]o measure commercial strength, courts typically look at the same factors used in a 'secondary meaning' analysis, including sales activities, advertising expenses, and unsolicited media mentions." *JL Beverage Co., LLC v. Beam, Inc.*, 318 F. Supp. 3d 1188, 1205 (D. Nev. 2018), *aff'd sub nom. JL Beverage Co., LLC v. Jim Beam Brands Co.*, 815 F. App'x 110 (9th Cir. 2020). The evidence already discussed in determining that there was a triable issue as to secondary meaning also support the conclusion that there is a triable issue as to commercial strength.

Next, "[a] mark's conceptual strength 'depends largely on the obviousness of its connection to the good or service to which it refers.' " *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1107 (9th Cir. 2016) (quoting *Fortune Dynamic*, 618 F.3d at 1032-33). "Arbitrary and fanciful marks, which employ words and phrases with no commonly understood connection to the product, are the two strongest categories, and 'trigger the highest degree of trademark protection.' " *Id.* (quoting *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631 (9th Cir. 2005)). Because there is no natural connection between a smiley face and a rock band, the Mark has a high degree of conceptual strength. Although smiley faces are quite common, Nirvana has identified sufficient differences between their Mark and a generic smiley face to raise a triable issue as to its Mark's conceptual strength.

The proximity and relatedness of the goods also weigh in favor of Nirvana. "Related goods are those products which would be reasonably thought by the buying public to come from the same source if sold under the same mark." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1147 (9th Cir. 2002) (*AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 n.10 (9th Cir. 1979)). Here, both sides sell clothing, which includes very similar shirts. Although products are not related merely because they fall into the same general category, a reasonable factfinder could conclude that the public would expect shirts bearing the same trademark to come from the same source. Defendants argue that the goods are not related because Marc Jacobs International is a luxury fashion brand that produces designer clothing and sells it at high-end retail stores, while Nirvana band merchandise is sold at budget and mass-market retailers. Dkt. 125 at 47-48. Even taking this evidence as true, it would not prevent a factfinder from determining that the goods are related. Although the goods are sold in different places at different prices, Nirvana has proffered evidence that Defendants' products are sold together with Nirvana's products on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-10743 JAK (SK) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Nirvana L.L.C. v. Marc Jacobs International L.L.C. et al. | | |

Amazon. *See, e.g.*, Dkt. 161-17.[12] In connection with considering a motion for summary judgment, every reasonable inference must be drawn in favor of the non-moving party. Applying this principle, there is a triable issue of fact as to this factor.

"When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *New Flyer Indus. Canada ULC v. Rugby Aviation, LLC*, 405 F. Supp. 3d 886, 904 (W.D. Wash. 2019) (quoting *Sleekcraft*, 599 F.2d at 354). Marc Jacobs acknowledged that the face on Defendants' shirts looked like a Nirvana shirt he had seen during the 1990's. Dkt. 159-1 at 130:20-131:24. Thus, there is evidence that Defendants were aware of Nirvana's Mark when they designed their own products. As already stated, the parties' Marks and their goods are quite similar. Although Nirvana has presented no direct evidence that Defendants intended to confuse the public, the similarities between the parties' Marks and their goods are sufficient to raise a triable issue of fact as to whether Defendants intended to derive benefit from the reputation of Nirvana's Mark.

The remaining factors favor Defendants. Nirvana argues that there is actual confusion because certain individuals stated to Defendants that they felt Defendants' design was too similar to Nirvana's. However, the individuals making this statement were not themselves confused as to the source or origin of Defendants' products. Nirvana also argues that the parties use similar marketing channels because both parties market their products over the Internet, including on Amazon. However, "the "shared use[ ] of the internet as a marketing channel is ubiquitous and, thus, does not shed much light on the likelihood of consumer confusion." *San Diego Comic Convention v. Dan Farr Prods.*, 336 F. Supp. 3d 1172, 1188 (S.D. Cal. 2018) (quoting *Groupion, LLC v. Groupon, Inc.*, 859 F.Supp.2d 1067, 1077 (N.D. Cal. 2012)). Nirvana has not argued that the "likelihood of expansion" factor supports its position. Similarly, Nirvana's argument with respect to the degree of consumer care is a one-sentence *ipse dixit*, which is insufficient to raise a triable issue with respect to this factor. However, although these factors favor Defendants, the *Sleekcraft* factors are to be viewed collectively. Viewed in this manner, because a reasonable factfinder could find that Nirvana's Mark is conceptually and commercially strong, the parties use very similar Marks on very similar goods, and Defendants intended to derive benefit from the reputation of Nirvana's Mark, a reasonable factfinder could also determine that consumers were likely confused by Defendants' products.

       E.     Nirvana's California Common Law Claims

Defendants argue that summary judgment is appropriate as to Nirvana's California common law claims because each of them depends on the existence of a valid, protectable trademark and likelihood of consumer confusion. Dkt. 125 at 54-55. Nirvana does not identify any difference between the analysis as to its Lanham Act claim and its California common law claims. *See* Dkt. 161 at 29-41. Therefore, it is determined that, for present purposes, these claims are linked for purposes of considering the motion for summary judgment. Because Nirvana has raised a triable issue with respect to its Lanham Act claim, triable issues are also raised with respect to these claims.

---

[12]  Defendants objected to this evidence only on the basis that it has not been authenticated and that it is not relevant. These objections are **OVERRULED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-10743 JAK (SK) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Nirvana L.L.C. v. Marc Jacobs International L.L.C. et al. | | |

**VIII.**   **Sanctions Motion**

In support of the Sanctions Motion, Defendants contend that Nirvana filed a frivolous claim for copyright infringement without performing a reasonable and competent inquiry into whether Fisher drew the Smiley. *See* Dkt. 121-1 at 23-26. They also contend that Nirvana has continued to maintain its allegedly frivolous claim despite evidence that shows it is baseless. *See id.* at 26-28. Because a triable issue has been raised with respect to the authorship of the Smiley, it has not been shown that Nirvana's copyright claim is frivolous. Therefore, the Sanctions Motion is **DENIED**.

**IX.**   **Conclusion**

For the reasons stated in this Order, Nirvana's MSJ (Dkt. 98) is **GRANTED IN PART** and **DENIED IN PART**. It is established for purposes of trial that, assuming Fisher drew the Smiley, it was a work for hire for Geffen and, assuming Cobain drew the Smiley, Nirvana owns the rights to the Smiley. However, triable issues of fact remain with respect to the author of the Smiley and, the ownership and validity of the Copyright. It is also established that the Design contains protectible expression. The Sanctions Motion (Dkt. 121) is **DENIED**. Defendants' MSJ (Dkt. 125) is **DENIED**. Fisher's MSJ (Dkts. 122, 214) is **DENIED**. The Extension Motion (Dkt. 130) is **GRANTED**. The Stay Motion (Dkt. 190) is **MOOT**. The Sealing Application (Dkt. 158) is **GRANTED IN PART**, **DENIED IN PART**, and **DEFERRED IN PART**.

Within 21 days of the issuance of this Order, the parties shall file a joint report stating the procedural status of their settlement discussions. In that report, the parties shall also state their collective and/or respective positions as to whether any further settlement proceedings should be scheduled in this action and whether a Trial Setting Conference should be scheduled, and if so a proposed date for that proceeding.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | tj |